1

2

3

4

UNITED STATES DISTRICT COURT

5

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

6

7

RICHARD B. EDMONDS, derivatively on behalf of Nominal Defendant GETTY IMAGES, INC.,

No. _____

8

9

Plaintiff,

10

v.

**SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT**

11

MARK H. GETTY; JONATHAN D. KLEIN; A.D. ALBERS; JAMES N. BAILEY; JEFF

12

BEYLE; M. LEWIS BLACKWELL; RICHARD R. ELLIS; NICK EVANS-

**JURY TRIAL DEMANDED**

13

LOMBE; JOHN Z. FERGUSON; ANDREW S. GARB; JIM GURKE; ELIZABETH J.

14

HUEBNER; SCOTT A. MISKIMENS; WILLIAM O'NEILL; STEPHEN M.

15

POWELL; CHRISTOPHER J. ROLING; CHRISTOPHER H. SPORBORG; SALLY

16

VON BARGEN; and WARWICK K. WOODHOUSE,

17

Defendants,

18

and

19

GETTY IMAGES, INC.,

20

Nominal Defendant.

21

22

Plaintiff Richard B. Edmonds, by the undersigned attorneys, submits this Shareholder

23

Verified Derivative Complaint (the "Complaint") alleging the following, based on his personal

24

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 1 -

knowledge as to his own acts and upon investigation of his counsel as to all other matters.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Getty Images, Inc. ("Getty Images" or the "Company") against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      For several years, a majority of Getty Images directors, together with its top officers, engaged in a secret scheme to grant undisclosed, in-the-money stock options[1] to themselves and others by backdating stock option grants to coincide with historically low closing prices of Getty Images common stock.  In fact, in a striking pattern, 21 out of 25 discretionary grants made from April 1999 to February 2002 coincided with historically low closing prices.

3.      The Individual Defendants knowingly and deliberately engaged in a practice of backdating stock option grants to the Option Recipient Defendants (defined herein) in a manner designed to create immediate and risk-free rewards for such recipients in direct contravention of the Company's shareholder-approved stock option plans and disclosures in Securities and Exchange Commission ("SEC") filings.  By falsifying the date on which options were granted, the Individual Defendants caused the Company to materially understate Getty Images' expenses and overstate its net income.  The Individual Defendants knew, or recklessly disregarded, that

---

[1]      A stock option is a contract that gives the holder the option to purchase a designated quantity of shares of a company's stock at a set price called the exercise or strike price.  When the option is exercised, the holder acquires a restricted number of shares at the stated price, regardless of the stock's contemporaneous market price.  A stock option is "in-the-money" when the exercise price of an option is below the market price of the underlying stock on the date of grant.  An option is "at-the-money" when the exercise price equals the market price and "out-of-

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 2 -

because the Company had not recognized a compensation expense for the backdated options,

Getty Images' reported earnings and expenses were false and misleading and not in compliance

with the Generally Accepted Accounting Principles ("GAAP").

4.      Getty Images has suffered, and will continue to suffer, significant financial and

non-monetary damages and injuries, several of which were identified in a report issued by the

Center for Financial Research and Analysis on May 16, 2006, titled "Options Backdating –

Which Companies Are at Risk?":

- Securities [and] Exchange Commission ("SEC") investigation risk – The SEC has begun information investigations at many companies in recent months and has also begun to call for improved disclosures around all areas of executive compensation.

- Accounting restatement risk – Some companies which have admitted backdating options have accompanied those admissions with financial restatements impacting both the balance sheet and earnings.

- Tax/Cash implications – The change in options from the practice of options backdating may force some companies to restate tax positions for the years in question, which could result in an obligation to pay back taxes.

- Management credibility risk – If a reputable management team is found to have repeatedly backdated options, thereby enriching themselves at the expense of shareholder, the reputation of management (and the related stock premium for superior management) could take a hit.

5.      The Individual Defendants' backdating scheme surreptitiously and illegally lined

their own pockets and caused Getty Images to issue materially false financial statements and also

undermined the key purpose of stock-based executive compensation, i.e., to provide incentive to

improve the Company's performance and increase the Company's stock price and market

capitalization.  By manipulating options such that they carried a strike price lower than the stock

the money" when the exercise price is higher than the market price.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 3 -

price on the date of grant, Getty Images insiders benefit immediately upon the grant of the options without doing anything to improve the Company's business or financial condition – a situation which government officials found clearly improper and illegal.

6.      For instance, former SEC Chairman Harvey L. Pitt was quoted saying "[w]hat's so terrible about backdating options grants?  For one thing, it likely renders a company's proxy materials false and misleading.  Proxies typically indicate that options are granted at fair market value.  But if the grant is backdated, the options value isn't fair – at least not from the vantage point of the company and its shareholders."  Deputy Attorney General Paul J. McNulty has described the practice of stock option backdating "as a brazen abuse of corporate power."  The Chairman of the Banking, Housing Urban Affairs Committee of the United States Senate, Senator Richard Shelby, has also stated that manipulation of options grant dates is a "**black-and-white example of securities fraud.**"

7.      SEC Chairman Christopher Cox was quoted, saying "[Backdating options] isn't a question about 'Whoops, I may have (accidentally) crossed a line here' . . . It's a question of knowingly betting on a race that's already been run."  He has also announced that "[backdating in many cases] makes a hash of (companies') financial statements . . . [and is] poisonous [to efficient markets]. . . . It is securities fraud if you falsify books and records.  It is securities fraud if you present financial statements to the SEC that do not comply with generally accepted accounting principles.  There is no requirement that (the defendant) personally profit [to prove that a crime occurred.]"  He has further stated, "[r]ather obviously, this fact pattern [of backdating options] results in a violation of the SEC's disclosure rules, a violation of accounting rules, and also a violation of the tax laws."  The Commissioner of the Internal Revenue Service ("IRS") Mark Everson agreed and has further stated, "[p]icking a date on which the stock price

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

was low in comparison with the current price gives the employee the largest potential for gain on the option and makes it possible for the employee to benefit from corporate performance that occurred before the option was granted."

8.      In addition, Senator Chuck Grassley has stated: "[options backdating] is behavior that, to put it bluntly, is disgusting and repulsive.  It is behavior that ignores the concept of an 'honest day's work for an honest day's pay' and replaces it with a phrase that we hear all too often today, 'I'm going to get mine.' . . . [S]hareholders and rank-and-file employees were ripped off by senior executives who rigged stock option programs – through a process called 'back-dating' – to further enrich themselves.  And as we have found far too often in corporate scandals of recent years, boards of directors were either asleep at the switch, or in some cases, willing accomplices themselves . . . ."

9.      In addition to the foregoing, a recent academic study revealed that outside directors of companies were also benefiting from backdating and were recipients of manipulated stock option grants, as detailed in *The Wall Street Journal* article published on December 18, 2006 below:

> A new academic study suggests that many outside directors received manipulated stock-option grants, a finding that may help explain why the practice of options backdating wasn't stopped by the boards of some companies.
>
> The statistical study, which names no individuals or firms, estimates that 1,400 outside directors at 460 companies received questionable option grants, suggesting the widespread practice extended well beyond the executive suite.
>
> The study is notable because it suggests that outside, or independent, directors – who are supposed to play a special role safeguarding against cozy board relationships with management -- may have been co-opted in options backdating by receiving manipulated grants themselves. The New York Stock Exchange requires that a majority of board seats, and all compensation- and audit-committee members, be independent . . . .

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 5 -

The evidence "contributes to understanding the possible factors that led to or enabled manipulation to occur," states the unpublished study, which was conducted by professors at Harvard and Cornell universities and the French business school Insead . . . .

10.     As alleged in detail herein, in gross breach of their fiduciary duties as officers and/or directors of Getty Images, the Individual Defendants colluded with one another to:

    a.     improperly backdate dozens of grants of Getty Images stock options to several Company executives, in violation of the Company's shareholder-approved stock option plans;

    b.     improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles ("GAAP");

    c.     improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)"); and

    d.     produce and disseminate to Getty Images shareholders and the market false financial statements and other false SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

11.     As a result of the Individual Defendants' egregious misconduct, Getty Images has sustained millions of dollars in damages, and the recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

13.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 6 -

resides in or maintains executive offices in this district, and defendants have received substantial

compensation in this district by engaging in numerous activities and conducting business here,

which had an effect in this district.

## PARTIES

14.     Plaintiff, Richard B. Edmonds, is, and was at all relevant times, a shareholder of

nominal defendant Getty Images.

15.     Nominal defendant Getty Images is a Delaware corporation with its principal

executive offices located at 601 North 34th Street, Seattle, Washington 98103.  According to its

public filings, Getty Images is a leading creator and distributor of visual content.

## Option Recipient Defendants

16.     Defendant Mark H. Getty ("Getty") is a co-founder of Getty Images and has

served as a director and as Chairman of the Board since February 1998.

17.     Defendant Jonathan D. Klein ("Klein") is a co-founder of Getty Images and has

served as Chief Executive Officer and as a director since February 1998.  Klein has served as the

only member of the Stock Option Committee of the Board, later renamed the Equity

Compensation Committee (the "Stock Option Committee") since its formation in July 2001.

18.     Defendant Christopher H. Sporborg ("Sporborg") has served as a director of the

Company and as a member of the Compensation Committee of the Board (the "Compensation

Committee") since February 1998 and served as a director of Getty Communications Limited

from May 1996 to February 1998.  He also served as a member of the Audit Committee of the

Board (the "Audit Committee") from 1998 to 2004.

19.     Defendant A.D. Albers ("Albers") served as the Company's Senior Vice

President and Chief Technology Officer from October 1999 to March 2003.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 7 -

20.     Defendant Jeff Beyle ("Beyle") has served as Senior Vice President and General Counsel of Getty Images since November 2000.

21.     Defendant M. Lewis Blackwell ("Blackwell") served as Getty Images' Senior Vice President, Creative Customers from September 2003 to 2006 and as its Senior Vice President, Creative Direction from July 2001 to September 2003.

22.     Defendant Richard R. Ellis ("Ellis") has served as Senior Vice President of Business Development of the Company since November 2004 and previously served as its Vice President of Editorial Development from October 2001 to November 2004 and as its Vice President of News Services from October 1999 to October 2001.

23.     Defendant Nick Evans-Lombe ("Evans-Lombe") has served as the Company's Senior Vice President, Images and Services since August 2004.  Evans-Lombe also served as its Senior Vice President, Editorial Customers from September 2003 to July 2004, its Senior Vice President, Editorial from January 2002 to September 2003, its Senior Vice President, Strategy and Corporate Development from February 1998 to January 2002, and Director of Strategy and Corporate Development of Getty Communications Limited, its predecessor, from February 1996 to February 1998.

24.     Defendant John Z. Ferguson ("Ferguson") served as Getty Images' Senior Vice President, Sales, Americas, and held other senior vice president positions at the Company from at least 1999 to 2005.

25.     Defendant Jim Gurke ("Gurke") has served as the Company's Senior Vice President, Human Resources and Chief of Staff since July 2004 and previously served as its Vice President of New Revenues from December 2003 to July 2004, as its Vice President of Sales, Americas from October 2002 to August 2002, and as its Vice President of Sales and Marketing

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 8 -

from 1999 to 2002.

26.     Defendant Elizabeth J. Huebner ("Huebner") served as Getty Images' Senior Vice President and Chief Financial Officer from October 2000 to early-2006.

27.     Defendant Scott A. Miskimens ("Miskimens") served as the Company's Senior Vice President, Technology and Content from December 2003 to 2004, as its Senior Vice President, Technology, Content and Artist Operations from January 2003 to December 2003, as its Senior Vice President, Content and Artist Operations, from November 2002 to January 2003, and as its Vice President, Technology Services from January 2000 to November 2002.

28.     Defendant William O'Neill ("O'Neill") has been the Senior Vice President of Human Resources of the Company from April 2000 to December 2002.

29.     Defendant Stephen M. Powell ("Powell") served as Getty Images' President of the Press and Editorial Division from 1998 to 2001.

30.     Defendant Christopher J. Roling ("Roling") served as the Company's Senior Vice President, Finance and Chief Financial Officer from January 1999 to May 2000.

31.     Defendant Sally von Bargen ("von Bargen") served as the Company's Senior Vice President and Director of Marketing from February 2001 to December 2001 and as the President of Creative Professional Division of Getty Images from July 1999 to February 2001.

32.     Defendant Warwick K. Woodhouse ("Woodhouse") served as Getty Images' Senior Vice President, Organizational Development from May 2003 to 2004.  He also served as its Senior Vice President, Operations and Logistics from September 2000 to August 2002, as its Senior Vice President, Planning from February 1998 to September 2000, and as the Group Planning Director of Getty Communications Limited from October 1996 to February 1998.

33.     Collectively, defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Ellis,

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 9 -

Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse are referred to herein as the "Option Recipient Defendants."

### Director Defendants

34.     Defendant James N. Bailey ("Bailey) has served as a director of Getty Images and as a member of the Compensation Committee and the Audit Committee since February 1998. Bailey also served as a director of Getty Communications Limited from September 1996 to February 1998.

35.     Defendant Andrew S. Garb ("Garb") has served as a director of the Company and as a member of the Compensation Committee since February 1998.  Garb also served as a director of Getty Communications Limited from May 1996 to February 1998.  He has also served as a member of the Audit Committee from 1998 to 2002 and since 2005.  Garb is currently of counsel to the law firm of Loeb & Loeb LLP, where he was managing partner from 1986 to 1992.

36.     Collectively, Option Recipient Defendants Getty, Klein and Sporborg and defendants Bailey and Garb are referred to herein as the "Director Defendants."

### Individual Defendants

37.     Collectively, the Option Recipient Defendants and Director Defendants are referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

38.      By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

and manage the Company in a fair, just, honest, and equitable manner.  The Individual

Defendants were and are required to act in furtherance of the best interests of the Company and

its shareholders so as to benefit all shareholders equally and not in furtherance of their personal

interest or benefit.  Each director and officer of the Company owes to the Company and its

shareholders the fiduciary duty to exercise good faith and diligence in the administration of the

affairs of the Company and in the use and preservation of its property and assets, and the highest

obligations of fair dealing.

39.     The Individual Defendants, because of their positions of control and authority as

directors and/or officers of the Company, were able to and did, directly and/or indirectly,

exercise control over the wrongful acts complained of herein.

40.     To discharge their duties, the Individual Defendants as officers and directors of

the Company were required to exercise reasonable and prudent supervision over the

management, policies, practices and controls of the Company.  By virtue of such duties, the

Individual Defendants were required to, among other things:

a.     exercise good faith in ensuring that the affairs of the Company
were conducted in an efficient, business-like manner so as to
make it possible to provide the highest quality performance of
its business;

b.     exercise good faith in ensuring that the Company was operated
in a diligent, honest and prudent manner and complied with all
applicable federal and state laws, rules, regulations and
requirements, including acting only within the scope of its legal
authority;

c.     exercise good faith in supervising the preparation, filing and/or
dissemination of financial statements, press releases, audits,
reports or other information required by law, and in examining
and evaluating any reports or examinations, audits, or other
financial information concerning the financial condition of the
Company;

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 11 -

d.  exercise good faith in ensuring  that the Company's financial statements were prepared in accordance with GAAP; and

e.  refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

41.  The Individual Defendants, especially the executive officers and the Audit Committee members, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

(1)  make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)  devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

(a)  transactions are executed in accordance with management's general or specific authorization;

(b)  transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

42.  Getty Images' Audit Committee Charter provides that the Audit Committee shall, among other things,

a.  Discuss with management and the independent auditors the Company's annual audited financial statements and quarterly financial statements, including the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Company's periodic filings and the report of the independent auditor on any audited financial statements.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 12 -

b. Review with management and the independent auditor the type and presentation of information to be included in earnings press releases, and discuss any financial information and earnings guidance provided to analysts, investors and rating agencies. The Committee's responsibility to discuss earnings releases, as well as financial information and earnings guidance, may be done generally (i.e., discussion of the types of information to be disclosed and the type of presentation to be made). The Committee need not discuss in advance each earnings release or each instance in which the Company may provide earnings guidance.

c. Based on the review and discussions referred to in this Section, determine whether to recommend to the Board that the Company's audited financial statements be included in the Company's Annual Report on Form 10-K for the last fiscal year for filing with the Securities and Exchange Commission.

d. Discuss with the independent auditors the matters required to be discussed by Statement of Auditing Standards No. 61 ("SAS No. 61"), Communications with Audit Committees, SAS No. 89, Audit Adjustments, and SAS No. 90, Audit Committee Communications, as each is amended from time to time, together with any other matters as may be required or appropriate under applicable laws, rules and regulations.

e. Review significant reserves, estimates and judgments by management, and the processes that provide the basis for the CEO and CFO to sign their quarterly certifications in the Company's SEC filings.

## GENERAL ALLEGATIONS

### Backdating of Getty Images' Stock Option Grants, 1999 to 2002

43. Pursuant to the terms of the Company's shareholder-approved stock option plans, including the 1998 Stock Incentive Plan, the exercise price of options must be "no less than 100% of the Fair Market Value per share on the date of grant," where fair market value is defined as "the average of the high and low prices of the Common Stock on such exchange or such quotation on the date set for valuation."

44. Pursuant to Accounting Principles Board Opinion No. 25 ("APB 25"), the applicable GAAP provision at the time of the foregoing stock option grants, if the market price

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 13 -

1    on the date of grant exceeds the exercise price of the options, the company must recognize the

2    difference as an expense.

3          45.    Pursuant to Section 162(m), compensation in excess of $1 million per year,

4    including gains on stock options, paid to a corporation's five most highly-compensated officers

5    is tax deductible only if: (i) the compensation is payable solely on account of the attainment of

6    one or more performance goals; (ii) the performance goals are determined by a compensation

7    committee comprised solely of two or more outside directors, (iii) the material terms under

8    which the compensation is to be paid, including the performance goals, are disclosed to

9    shareholders and approved by a majority of the vote in a separate shareholder vote before the

10   payment of the compensation, and (iv) before any payment of such compensation, the

11   compensation committee certifies that the performance goals and any other material terms were

12   in fact satisfied.

13         46.    According to the Company's proxy statements, at all times relevant hereto the

14   Compensation Committee "review[ed] the compensation of the senior officers of the Company,

15   including executive bonus plan allocations, and [was] responsible for the administration of the

16   Amended and Restated Getty Images, Inc. 1998 Stock Incentive Plan for the executive officers

17   of the Company."  The Stock Option Committee formed in July 2001, which consisted of only

18   Klein, "[was] responsible for the administration of the Amended and Restated Getty Images, Inc.

19   1998 Stock Incentive Plan for those employees who are not executive officers of the Company."

20         47.    Klein and the Compensation Committee, with the knowledge and approval of the

21   entire Board, knowingly and deliberately violated the terms of the Company's shareholder-

22   approved stock option plans, APB 25, and Section 162(m) by knowingly and deliberately

23   backdating grants of stock options to make it appear as though the grants were made on dates

24

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

1    when the market price of Getty Images stock was lower than the market price on the actual grant

2    dates, thereby benefiting the recipients of the backdated options.

3        48.    The members of the Board who were not on the Compensation Committee had

4    actual knowledge of the backdating and knew, or recklessly disregarded, that it violated the

5    terms of the Company's shareholder-approved stock option plans, APB 25, and Section 162(m).

6    Klein and Getty, in particular, knew that the option grants to them were not actually granted on

7    those days.  All of the members of the Board knew, or recklessly disregarded, that the publicly

8    reported grant dates and statements that the Company followed APB 25 and granted options with

9    exercise prices equal to the fair market value of Getty Images stock on the date of grant, were all

10   false and misleading because the grants were in fact backdated.  The members of the Board

11   knowingly and deliberately approved the backdating scheme with knowledge, or reckless

12   disregard, of its consequences, e.g., its effects on Getty Images' financial statements.

13       49.    The stock options to defendants Powell and von Bargen purportedly granted on

14   April 9, 1999 were dated when Getty Images average high/low stock price rose $4.815, or

15   20.66%, in the twenty (20) trading days following the purported grant date, as demonstrated

16   below:[2]

17

18

19

20

21

22

23

24   [2]    All charts in the Complaint are measured using the mean of the highest and lowest prices.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
                                    - 15 -



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 04/09/99 | Powell | $23.32 | 50,000 |
| | von Bargen | $23.32 | 75,000 |

50.     Similarly, defendants Evans-Lombe and Roling received stock options purportedly granted on May 4, 1999 after which Getty Images average high/low stock price rose $2.34, or 8.73%, in two trading days, as shown below:



LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options[3] |
|---|---|---|---|
| 05/04/99 | Evans-Lombe | $26.82 | at least 30,000 |
| | Roling | $26.82 | 10,000 |

51.   Furthermore, the Individual Defendants' backdating was particularly egregious as to the stock option grants purportedly dated July 6, 1999, July 27, 1999, August 3, 1999, October 22, 1999, and October 25, 1999.  Each of the grants were dated to coincide with Getty Images' lowest stock prices of the fiscal year, as demonstrated in the following chart:



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 07/06/99 | Powell | $18.32 | 25,000 |
| 07/27/99 | Evans-Lombe | $18.44 | at least 30,000 |
| 08/03/99 | Ferguson | $18.33 | at least 3,500 |
| | Gurke | $18.33 | at least 3,000 |
| | Roling | $18.33 | 15,000 |
| 10/22/99 | Klein | $19.07 | 15,000 |

---

[3]   Where the total number of options is unknown – *i.e.*, where the phrase "at least" is utilized – the stock option grant did not appear in any proxy statements filed by the Company but was first disclosed in Form 4 filings, which only included the number of options pursuant to the grant that were exercised and left unexercised on the transaction date.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 17 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| | | | |
|---|---|---|---|
| | Getty | $19.07 | 15,000 |
| | Roling | $19.07 | 15,000 |
| | Powell | $19.07 | 15,000 |
| | von Bargen | $19.07 | 40,000 |
| | Evans-Lombe | $19.07 | at least 15,000 |
| | Ferguson | $19.07 | at least 7,500 |
| | Gurke | $19.07 | at least 7,500 |
| 10/25/99 | Woodhouse | $19.38 | at least 2,000 |

52.     Furthermore, defendants Ferguson and Gurke were granted options purportedly dated on February 1, 2000 when Getty Images average high/low stock price decreased significantly before February 1, 2000 and rose $20.06, or 51.94%, in the twenty (20) trading days subsequent to the purported grant date, as demonstrated below:



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 02/01/00 | Ferguson | $38.625 | at least 400 |
| | Gurke | $38.625 | at least 400 |

53.     Moreover, Getty and Klein, the co-founders of the Company, were each granted at least 400,000 stock options purportedly dated on April 28, 2000 when Getty Images average high/low stock price rose $4.685, or 15.45%, in the 5 trading days following the purported grant date, as demonstrated below:

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 18 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 04/28/00 | Getty | $30.32 | at least 400,000 |
| | Klein | $30.32 | at least 400,000 |

54.    Moreover, the stock option grants purportedly dated May 24, 2000 and May 30, 2000 were dated to coincide with Getty Images' lowest stock prices of the second fiscal quarter of fiscal 2000, as demonstrated in the chart below.  Getty and Klein once again purportedly received 400,000 options each on May 24, 2000.



LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 • Fax:  (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 05/24/00 | Klein | $28.63 | 400,000 |
| | Getty | $28.63 | 400,000 |
| 05/30/00 | Miskimens | $29.10 | at least 10,000 |

55.     Moreover, the stock options purportedly granted to Albers on August 28, 2000 were dated when Getty Images' average high/low stock price had dropped significantly before August 28, 2000 and rose $2.245, or 5.6%, in the ten trading days subsequent to the purported grant, as demonstrated in the chart:



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 08/28/00 | Albers | $40.41 | 25,000 |

56.     Defendants Woodhouse and Albers received stock option grants purportedly dated on October 11, 2000 when the Company's average high/low price dropped significantly before the purported grant date and rose approximately $7.30, or 29%, in just 20 trading days, as demonstrated in the chart below:

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 20 -



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 10/11/00 | Woodhouse | $24.78 | at least 25,000 |
|  | Albers | $24.78 | 25,000 |

57.    In addition, the purported October 11, 2000 option grant was dated to coincide with one of Getty Images' lowest stock prices of the entire fiscal year, as demonstrated in the following chart:



58.    Moreover, several Option Recipient Defendants, including Klein and Getty, received stock option grants purportedly dated March 30, 2001 to coincide with the Company's

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

second lowest stock price of the first fiscal quarter of fiscal 2001, as demonstrated in the chart below.  Notably, these grants were recorded in Form 4s filed with the SEC on April 6, 2001 with a grant date of March 22, 2001, which is the date of the lowest price of the fiscal quarter, and then was later changed in Amended Form 4s filed with the SEC in late-2002.



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 03/30/01 | Klein | $16.85 | 50,000 |
| | Getty | $16.85 | 50,000 |
| | von Bargen | $16.85 | 20,000 |
| | Huebner | $16.85 | 35,000 |
| | Albers | $16.85 | 25,000 |
| | Beyle | $16.85 | at least 18,500 |
| | Ellis | $16.85 | at least 1,875 |
| | Evans-Lombe | $16.85 | at least 20,000 |
| | Ferguson | $16.85 | at least 10,000 |
| | Gurke | $16.85 | at least 15,000 |
| | Miskimens | $16.85 | at least 9,375 |
| | O'Neill | $16.85 | at least 30,000 |
| | Woodhouse | $16.85 | at least 30,000 |

59.   Furthermore, Klein received 232,000 stock options purportedly on May 7, 2001 when Getty Images average high/low stock price rose $6.785, or 26.68%, in just over 20 trading

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 22 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

days, as demonstrated below:



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 05/07/01 | Klein | $25.43 | 232,000 |

60.     Then, Klein received 170,000 stock options purportedly on June 26, 2001 when Getty Images' average high/low stock price dropped significantly before June 26, 2001 and rose $1.03, or 4.2%, in less than 10 trading days following the purported grant date, as demonstrated below:



SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 23 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 06/26/01 | Klein | $25.43 | 170,000 |

61.    The stock options purportedly granted on July 17, 2001 and July 23, 2001 were dated to coincide with historically low stock prices.  The Company's average high/low stock price dropped significantly before the purported grant dates and rose approximately $3.50, or 8.5%, in 10 trading days, as demonstrated in the chart below.  Remarkably, the July 17, 2001 and July 23, 2001 grants were purportedly made subsequent to the July 10, 2001 earnings release, which reported below expected earnings.



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 07/17/01 | Beyle | $16.94 | at least 25,000 |
| | Miskimens | $16.94 | at least 5,569 |
| | Woodhouse | $16.94 | at least 25,000 |
| 07/23/01 | Sporborg | $15.80 | at least 8,333 |

62.    Moreover, the stock option grants purportedly dated October 9, 2001 and October 15, 2001 were dated to coincide with Getty Images' lowest stock prices of the fourth fiscal quarter of fiscal 2001, as demonstrated in the chart below:

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 24 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 10/09/01 | Ferguson | $12.82 | at least 10,000 |
| | Gurke | $12.82 | at least 10,000 |
| | Miskimens | $12.82 | at least 4,000 |
| 10/15/01 | Klein | $12.41 | 50,000 |
| | Getty | $12.41 | 50,000 |
| | Huebner | $12.41 | 20,000 |
| | Albers | $12.41 | 20,000 |
| | Beyle | $12.41 | at least 20,000 |
| | Blackwell | $12.41 | at least 10,000 |
| | Evans-Lombe | $12.41 | at least 20,000 |
| | Woodhouse | $12.41 | at least 10,000 |

63.    Moreover, Evan-Lombe received the stock option grants purportedly dated

February 5, 2002 to coincide with the second lowest stock price of the first fiscal quarter of fiscal

2002, as demonstrated in the chart below:

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 25 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax: (425) 868-7870

1
2
3
4
5
6
7
8
9
10



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 02/05/02 | Evans-Lombe | $19.43 | at least 25,000 |

64.    Each and every one of the aforementioned stock option grants were dated just

before a significant increase in Getty Images' stock price and/or at or near Getty Images' lowest

closing stock price of the pertinent fiscal year.  The reason for the extraordinary pattern set forth

in the preceding paragraphs is that the purported grant dates set forth therein were not the actual

dates on which the stock option grants were made.  Rather, the Compensation Committee

members, with the knowledge and approval of the Director Defendants, knowingly and

deliberately backdated the stock option grants to make it appear as though the grants were made

on dates when the market price of Getty Images stock was lower than market price on the actual

grant dates for the benefit of the Option Recipient Defendants.  This improper backdating, which

violated the terms of the Company's shareholder-approved stock option plans, resulted in option

grants with lower exercise prices, which improperly increased the value of the options to the

Option Recipient Defendants and improperly reduced the amounts the Option Recipient

Defendants had to pay the Company upon exercise of the options.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 26 -

65.     In addition, prior to the enactment of the Sarbanes-Oxley Act of 2002 ("SOX"), the Individual Defendants were able to engage in backdating of option grants with relative ease because under federal law they were only required to report option grants to the SEC once a year.  In fact, 21 of the 25 discretionary pre-SOX grants coincided with historically low closing prices.

66.     Pursuant to SOX, beginning on August 29, 2002, executives and directors were required to report option grants to the SEC within two days of the grant.  With this new reporting requirement in place, the pattern of backdating options seen previously from 1999 through 2002 came to an end.  This indicates that backdating can be the only explanation for the pattern of the pre-SOX grants.

### The Individual Defendants' Dissemination of False Financial Statements

67.     The Individual Defendants prepared, approved and/or signed Getty Images' annual and quarterly SEC reports from 2000 to 2006.  The Individual Defendants knowingly and deliberately caused the Company to disseminate materially false and misleading statements in the periodic filings that the Individual Defendants prepared, approved, and/or signed.

68.     The Individual Defendants' option backdating scheme caused each of Getty Images' Forms 10-K and 10-Q for the relevant period to materially understate Getty Images' compensation expense and materially overstate the Company's net income, because the Individual Defendants failed to expense the in-the-money portion of Getty Images' stock option grants during the relevant period as required by APB 25.

69.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

a.      violated the terms of the Company's shareholder-approved stock option plans by granting stock options with exercise prices less

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 27 -

than the fair market value of the stock on the actual date of grant;

    b.    violated APB 25 by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

    c.    violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

    d.    produced and disseminated to Getty Images shareholders and the market false financial statements and other false SEC filings that improperly recorded and accounted for the backdated option grants, and thereby understated compensation expenses and overstated net income.

    70.    The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

    a.    Form 10-K for the year ended December 31, 1999, filed with the SEC on March 30, 2000 and signed by defendants Getty, Klein, Roling, Garb, Bailey and Sporborg;

    b.    Form 10-K for the year ended December 31, 2000, filed with the SEC on April 2, 2001 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;

    b.    Form 10-K for the year ended December 31, 2001, filed with the SEC on March 29, 2002 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;

    c.    Form 10-K for the year ended December 31, 2002 filed with the SEC on March 21, 2003 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;

    d.    Form 10-K for the year ended December 31 2003, filed with the SEC on March 12, 2004 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;

    e.    Form 10-K for the year ended Decmeber 31, 2004, filed with the SEC on March 11, 2005 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;and

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 28 -

f.    Form 10-K for the year ended December 31, 2005, filed with the SEC on March 9, 2006 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg.

g.    Form 10-K/A for the year ended December 31, 2005, filed with the SEC on March 10, 2006 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg.

71.    Specifically, in the Company's annual reports on Forms 10-K for fiscal years 1996 to 2002, the Individual Defendants caused Getty Images to falsely state that the Company "applies Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to Employees' and related interpretations in accounting for stock options.  Accordingly, the company recognizes no compensation expense related to employee stock options, as no options are granted below the market price on the date of the grant."  Such statements were materially false and misleading in each of these years because Getty Images had granted stock options at prices that were below fair market value on the date of the grant and failed to account for the in-the-money options as required by APB 25.

72.    As alleged previously, APB 25 required the Individual Defendants to record compensation expenses for options that were in-the-money on the date of grant.  However, they did not do so, thereby materially understating Getty Images' compensation expense and materially overstating its net income.  These statements were designed to conceal, and did in fact conceal, the fact that the Individual Defendants were engaged in a continuous and systematic scheme of backdating stock option grants to Getty Images insiders in violation of state and federal laws.

73.    Additionally, Getty Images' materially false and misleading financial statements for fiscal years 1999 to 2002 were included in its Forms 10-K filed for subsequent fiscal years. For this reason, and to the extent they included financials from earlier periods, Getty Images

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 29 -

annual reports on Forms 10-K for fiscal years 2003 to 2005 were also materially false and misleading.  By participating in the secret backdating scheme, and by reviewing and/or signing these subsequent annual reports, the Individual Defendants knew, or were reckless in not knowing, that the financial statements in these later filings were materially false and misleading.

74.    Moreover, defendants Klein and Huebner filed false Certifications of Chief Executive Officer and Chief Financial Officer Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 ("Certifications"), certifying that the financial reports of Getty Images on 10-Ks "fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, and the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."  Defendants Klein and Huebner signed the following false Certifications:

a.    for the Form 10-K for the fiscal year ended December 31, 2001, filed with the SEC on March 29, 2002;

b.    for the Form 10-K for the fiscal year ended December 21, 2002, filed with the SEC on March 21, 2003;

c.    for the Form 10-K for the fiscal year ended December 31, 2003, filed with the SEC on March 12, 2004;

d.    for the Form 10-K for the fiscal year ended December 31, 2004, filed with the SEC on March 11, 2005; and

e.    for the Form 10-K for the fiscal year ended December 31, 2005, filed with the SEC on March 9, 2006.

f.    for the Form 10-K/A for the fiscal year ended December 31, 2005, filed with the SEC on March 10, 2006.

### The Individual Defendants' Concealment of Their Misconduct

75.    The Individual Defendants caused Getty Images to disseminate to shareholders and to file with the SEC proxy statements in connection with the Company's annual shareholder

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 30 -

meetings and periodically for special shareholder meetings during the relevant period.  The

Individual Defendants prepared and/or reviewed each proxy statement between 2000 and 2003

and knew that the proxies were materially false and misleading.  Each proxy statement sent to

shareholders during this period contained materially false and misleading disclosures or omitted

information about Getty Images stock option practices, as detailed above.

76.    From 2000 to 2003, the Company, with the knowledge, approval, and

participation of each of the Individual Defendants, for the purpose and with the effect of

concealing the improper option backdating, disseminated to shareholders and filed with the SEC

annual proxy statements that falsely reported the dates of stock option grants to the Option

Recipient Defendants and falsely stated that the exercise price of the options granted to the

Option Recipient Defendants was "equal to the average of the high and low prices of the

Common Stock of the Company on the date of grant:"

a.    Getty Images' proxy statement filed with the SEC on April 7, 2000 falsely
reported that options granted to Powell and von Bargen were granted on
April 9, 1999, options granted to Roling were granted on May 4, 1999 and
August 3, 1999, options granted to Powell were granted on July 6, 1999,
and other options granted to Klein, Getty, Roling, Powell and von Bargen
were granted on October 22, 1999;

b.    Getty Images' proxy statement filed with the SEC on April 6, 2001 falsely
reported that options granted to Getty and Klein were granted on May 24,
2000 and options granted to Albers were granted on August 28, 2000 and
October 11, 2000; and

c.    Getty Images' proxy statement filed with the SEC on April 19, 2002
falsely reported that options granted to Klein, Getty, von Bargen, Huebner
and Albers were granted on March 30, 2001, options granted to Klein,
Getty, Huebner and Albers were granted on October 15, 2001, and other
options granted to Klein were granted on May 7, 2001 and June 26, 2001.

77.    Moreover, the Reports of the Compensation Committee disclosed in the

Company's proxy statements filed between 2000 and 2003 falsely stated that stock option grants

are intended to "(i) to attract and retain key executives, (ii) to reward performance by the

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax: (425) 868-7870

executives which benefits the Stockholders of Getty Images and (iii) to align the financial

interests of the Company's executive officers directly with those of the Stockholders," when in

fact the backdated stock options provided the officers with immediate profits regardless of the

Company's stock performance.

78.     From 1999 to 2006, the Company, with the knowledge, approval, and

participation of each of the Individual Defendants, for the purpose and with the effect of

concealing the improper option backdating, filed with the SEC Form 4's that falsely reported the

dates of stock option grants to the Option Recipient Defendants, as follows:

a.    von Bargen's Form 4 filed with the SEC on May 5, 1999 falsely reported
that options granted to von Bargen had been granted on April 9, 1999;

b.    Albers' Form 4 filed with the SEC on November 4, 2002 falsely reported
that options granted to Albers had been granted on August 28, 2000,
October 11, 2000, March 30, 2001 and October 15, 2001;

c.    Huebner's Form 4 filed with the SEC on November 7, 2002 falsely
reported that options granted to Huebner had been granted on March 30,
2001 and October 15, 2001;

d.    Getty's Form 4 filed with the SEC on December 19, 2002 falsely reported
that options granted to Getty had been granted on October 22, 1999, April
28, 2000, March 30, 2001 and October 15, 2001;

e.    Klein's Form 4 filed with the SEC on December 19, 2002 falsely reported
that options granted to Klein had been granted on October 22, 1999, April
28, 2000, March 30, 2001, May 7, 2001, June 26, 2001 and October 15,
2001;

f.    Woodhouse's Form 4 filed with the SEC on December 19, 2002 falsely
reported that options granted to Woodhouse had been granted on October
25, 1999, October 11, 2000 and March 30, 2001;

g.    Evans-Lombe's Form 4 filed with the SEC on January 6, 2003 falsely
reported that options granted to Evans-Lombe had been granted on May
04, 1999, July 27, 1999, October 22, 1999, March 30, 2001, October 15,
2001 and February 5, 2002;

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

h.      Miskimens' Form 4 filed with the SEC on January 28, 2003 falsely reported that options granted to Miskimens had been granted on May 30, 2000, March 30, 2001, July 17, 2001 and October 9, 2001;

i.      Albers' Form 4 filed with the SEC on February 11, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, October 11, 2000, March 30, 2001 and October 15, 2001;

j.      Klein's Form 4's filed with the SEC on February 12, 2003, March 25, 2003, April 24, 2003, April 30, 2003, September 8, 2003, September 17, 2003, September 23, 2003, September 30, 2003, October 7, 2003, October 14, 2003, October 21, 2003, October 24, 2003, October 28, 2003, November 4, 2003 and November 12, 2003 falsely reported that options granted to Klein had been granted on October 22, 1999, April 28, 2000, March 30, 2001, May 7, 2001, June 26, 2001 and October 15, 2001;

k.      Albers' Form 4 filed with the SEC on February 12, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, March 30, 2001 and October 15, 2001;

l.      Albers' Form 4 filed with the SEC on March 6, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, October 11, 2000, March 30, 2001 and October 15, 2001;

m.      Evans-Lombe's Form 4 filed with the SEC on May 15, 2003 falsely reported that options granted to Evans-Lombe had been granted on March 30, 2001 and October 15, 2001;

n.      Woodhouse's Form 4 filed with the SEC on May 16, 2003 falsely reported that options granted to Woodhouse had been granted on October 15, 2001;

o.      Miskimens' Form 4 filed with the SEC on May 19, 2003 falsely reported that options granted to Miskimens had been granted on March 30, 2001 and July 17, 2001;

p.      Blackwell's Form 4 filed with the SEC on May 28, 2003 falsely reported that options granted to Blackwell had been granted on October 15, 2001;

q.      Klein's Form 4 filed with the SEC on May 28, 2003 falsely reported that options granted to Klein had been granted on October 15, 2001;

r.      Gurke's Form 4 filed with the SEC on October 22, 2003 falsely reported that options granted to Gurke had been granted on August 3, 1999, October 22, 1999, February 1, 2000, March 30, 2001 and October 9, 2001;

s.      Ferguson's Form 4's filed with the SEC on October 23, 2003 and November 5, 2003 falsely reported that options granted to Ferguson had

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

been granted on August 03, 1999, October 22, 1999, February 1, 2000, March 30, 2001 and October 9, 2001;

t.      Huebner's Form 4 filed with the SEC on October 28, 2003 falsely reported that options granted to Huebner had been granted on March 30, 2001 and October 15, 2001;

u.      Beyle's Form 4's filed with the SEC on October 28, 2003 and November 3, 2003 falsely reported that options granted to Beyle had been granted on March 30, 2001, July 17, 2001 and October 15, 2001;

v.      Woodhouse's Form 4 filed with the SEC on November 14, 2003 falsely reported that options granted to Woodhouse had been granted on March 30, 2001, July 17, 2001 and October 15, 2001;

w.      Beyle's Form 4 filed with the SEC on February 11, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001;

x.      Miskimens' Form 4 filed with the SEC on February 13, 2004 falsely reported that options granted to Miskimens had been granted on October 9, 2001;

y.      Klein's Form 4 filed with the SEC on February 18, 2004, February 24, 2004, March 2, 2004, March 9, 2004 falsely reported that options granted to Klein had been granted on October 15, 2001;

z.      Sporborg's Form 4 filed with the SEC on March 8, 2004 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

aa.     Klein's Form 4 filed with the SEC on March 17, 2004, March 18, 2004, March 23, 2004 and March 30, 2004 falsely reported that options granted to Klein had been granted on March 30, 2001;

bb.     Klein's Form 4 filed with the SEC on April 5, 2004 falsely reported that options granted to Klein had been granted on October 22, 1999 and March 30, 2001;

cc.     Huebner's Form 4 filed with the SEC on April 29, 2004 falsely reported that options granted to Huebner had been granted on March 30, 2001;

dd.     Beyle's Form 4 filed with the SEC on April 29, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

ee.     Klein's Form 4 filed with the SEC on May 5, 2004 and May 12, 2004 falsely reported that options granted to Klein had been granted on May 7, 2001;

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 34 -

ff.   Woodhouse's Form 4 filed with the SEC on May 10, 2004 falsely reported that options granted to Woodhouse had been granted on March 30, 2001 and July 17, 2001;

gg.   Klein's Form 4's filed with the SEC on May 19, 2004, May 26, 2004, June 2, 2004, June 15, 2004, June 22, 2004, June 30, 2004, July 2, 2004 and July 7, 2004  falsely reported that options granted to Klein had been granted on May 7, 2001;

hh.   Ferguson's Form 4 filed with the SEC on May 20, 2004 falsely reported that options granted to Ferguson had been granted on August 3, 1999 and October 22, 1999;

ii.   Klein's Form 4's filed with the SEC on July 7, 2004, July 14, 2004, July 20, 2004, July 21, 2004, December 2, 2004, December 8, 2004, December 14, 2004, December 21, 2004 and December 28, 2004 falsely reported that options granted to Klein had been granted on June 26, 2001.

jj.   Ferguson's Form 4 filed with the SEC on August 31, 2004 falsely reported that options granted to Ferguson had been granted on October 22, 1999 and October 9, 2001.

kk.   Evans-Lombe's Form 4 filed with the SEC on September 1, 2004 falsely reported that options granted to Evans-Lombe had been granted on July 27, 1999 and October 22, 1999;

ll.   Woodhouse's Form 4 filed with the SEC on September 02, 2004 falsely reported that options granted to Woodhouse had been granted on October 25, 1999;

mm.   Beyle's Form 4 filed with the SEC on November 5, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

nn.   Sporborg's Form 4 filed with the SEC on November 5, 2004 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

oo.   Getty's Form 4 filed with the SEC on November 16, 2004 falsely reported that options granted to Getty had been granted on October 22, 1999 and October 15, 2001;

pp.   Ferguson's Form 4 filed with the SEC on November 17, 2004 falsely reported that options granted to Ferguson had been granted on March 30, 2001 and October 9, 2001;

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 35 -

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

qq.    Gurke's Form 4 filed with the SEC on April 26, 2005 falsely reported that options granted to Gurke had been granted on August 3, 1999, October 22, 1999 and February 1, 2000;

rr.    Beyle's Form 4 filed with the SEC on April 26, 2005 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

ss.    Ferguson's Form 4 filed with the SEC on April 27, 2005 falsely reported that options granted to Ferguson had been granted on February 1, 2000 and March 30, 2001;

tt.    Ellis' Form 4 filed with the SEC on May 3, 2005 falsely reported that options granted to Ellis had been granted on March 30, 2001;

uu.    Gurke's Form 4 filed with the SEC on August 1, 2005 falsely reported that options granted to Gurke had been granted on March 30, 2001 and October 9, 2001;

vv.    Huebner's Form 4 filed with the SEC on August 2, 2005 falsely reported that options granted to Huebner had been granted on March 30, 2001;

ww.    Beyle's Form 4 filed with the SEC on August 2, 2005 falsely reported that options granted to Beyle had been granted on July 17, 2001;

xx.    Sporborg's Form 4 filed with the SEC on August 8, 2005 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

yy.    Evans-Lombe's Form 4 filed with the SEC on August 29, 2005 falsely reported that options granted to Evans-Lombe had been granted on May 4, 1999, October 22, 1999 and October 15, 2001; and

zz.    Getty's Form 4 filed with the SEC on January 3, 2006 falsely reported that options granted to Getty had been granted on March 30, 2001 and October 15, 2001.

79.    The Individual Defendants continued to conceal their foregoing misconduct until November 9, 2006 when the Company issued a press release, announcing an internal review of its historical stock option grants resulting from an SEC investigation:

> Getty Images, Inc. (NYSE: GYI), the world's leading creator and distributor of visual content, today announced that its board of directors has established a special committee to conduct an internal investigation relating to the Company's stock option grant practices and related accounting for stock option grants. This review is being conducted with the assistance of outside legal counsel retained by the special committee.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 36 -

The Division of Enforcement of the Securities and Exchange Commission (the "SEC") had earlier notified the Company that it is conducting an informal inquiry into the Company's stock option grant practices, and has requested that the Company provide the SEC with certain information relating to the Company's stock option grant practices. The Company is cooperating fully with the SEC in this informal inquiry.

At this time, the special committee has not completed its review of the Company's stock option grant practices. Until the special committee's review is complete, the Company will be unable to file its Quarterly Report on Form 10-Q for the period ended September 30, 2006, which will not occur within the prescribed time period for the filing of such Form 10-Q (including the extension under Rule 12b-25). The Company intends to file its Form 10-Q as soon as practicable after the completion of the special committee's review.

### **The Individual Defendants' Insider Selling**

80.     During the relevant period, certain of the Individual Defendants (the "Insider Selling Defendants"), while in possession of materially adverse non-public information regarding the backdating of stock options and the false financial statements resulting therefrom, sold almost four (4) million shares of Getty Images stock with a total proceeds of over $217 million, a significant portion of which was obtained through the exercise of improperly backdated stock options, as show in the chart below.  Specifically, Getty, from 2003 to 2006, sold 1,407,635 shares with total proceeds of $76,183,332.60, and Klein, from 1999 to 2006, sold 1,763,585 shares with total proceeds of $92,852,893.80, as shown below:

| Name | Date of Transaction | Shares Sold | Proceeds |
|---|---|---|---|
| Albers | 11/1/02 to 3/4/03 | 51,771 | $1,525,407.73 |
| Beyle | 10/27/03 to 10/25/05 | 138,500 | $9,364,596.00 |
| Blackwell | 05/27/03 | 10000 | $376,400.00 |
| Ellis | 5/2/05 to 11/1/06 | 8,906 | $664,637.89 |
| Evans-Lombe | 1/2/03 to 8/26/05 | 118,355 | $6,644,231.85 |
| Ferguson | 11/04/03 to 7/29/05 | 51,500 | $3,348,535.00 |
| Garb | 06/02/05 | 3,500 | $262,850.00 |
| Getty | 11/11/03 to 1/3/06 | 1,407,635 | $76,183,332.60 |
| Gurke | 2/10/04 to 7/29/05 | 55,900 | $4,149,902.00 |

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

| | | | |
|---|---|---|---|
| Huebner | 10/27/03 to 5/16/06 | 257,917 | $16,071,192.23 |
| Klein | 2/25/99 to 1/20/06 | 1,763,585 | $92,852,893.80 |
| Miskimens | 5/16/03 to 2/12/04 | 14,284 | $586,154.04 |
| Sporborg | 3/4/04 to 8/4/05 | 9,583 | $577,309.86 |
| Woodhouse | 5/15/03 to 8/31/04 | 105,500 | $4,909,275.00 |
| **TOTAL** | **1/2/03 to 11/1/06** | **3,996,936** | **$217,516,718.00** |

## GETTY IMAGES' FALSE FINANCIAL REPORTING
## IN VIOLATION OF GAAP, SEC REGULATIONS, AND IRS RULES

81.    As a result of the Individual Defendants' improper backdating of stock options, the Individual Defendants caused Getty Images to violate GAAP, SEC regulations and IRS rules and regulations.

82.    Getty Images' financial results for 2000 through 2005 were included in reports filed with the SEC and in other shareholder reports.  In these reports, the Individual Defendants represented that Getty Images' financial results were presented in a fair manner and in accordance with GAAP.

83.    The Individual Defendants' representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information "a fair presentation" of the Company's financial condition and operations, causing the financial results to be presented in violation of GAAP and SEC rules.

84.    GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Securities Exchange Act ("Exchange Act"), 17 C.F.R. §210.4-01(a)(1), provides that financial

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

statements filed with the SEC, which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate.

## **Violations of GAAP**

85.     During the relevant period, the Individual Defendants caused the Company to understate its compensation expense by not properly accounting for its stock options under GAAP and thus overstated the Company's net earnings.

86.     Under well-settled accounting principles in effect throughout the relevant period, Getty Images did not need to record an expense for options granted to employees at the current market price (at-the-money). The Company was, however, required to record an expense in its financial statements for any options granted below the current market price (in-the-money).  In order to provide Getty Images executives and employees with far more lucrative in-the-money options, while avoiding having to inform shareholders about millions of dollars incurred by the Company in compensation expenses (and without paying the IRS millions of dollars in employment taxes), the Individual Defendants systematically falsified Company records to create the false appearance that options had been granted at the market price on an earlier date.

87.     Throughout the relevant period, Getty Images accounted for stock options using the intrinsic method described in APB 25.  Under APB 25, employers were required to record as an expense on their financial statements the "intrinsic value" of a fixed stock option on its "measurement date."  An option that is in-the-money on the measurement date has intrinsic value, and the difference between its exercise price and the quoted market price must be recorded as compensation expense to be recognized over the vesting period of the option. Options that are at-the-money or out-of-the-money on the measurement date need not be expensed. Excluding non-employee directors, APB 25 required employers to record

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 39 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 ● Fax:  (425) 868-7870

1  compensation expenses on options granted to non-employees irrespective of whether they were

2  in-the-money or not on the date of grant.

3  **Getty Images' GAAP Violations Were Material**

4  88.    Getty Images' false and misleading relevant period statements and omissions

5  regarding its accounting were material, particularly in light of SEC guidance on materiality.

6  SEC Staff Accounting Bulletin ("SAB") Topic 1M, Materiality, summarizes GAAP definitions

7  of materiality.  Among other items, SAB Topic 1M says: "A matter is 'material' if there is a

8  substantial likelihood that a reasonable person would consider it important."  It also stresses that

9  materiality requires qualitative, as well as quantitative, considerations.  For example, if a known

10  misstatement would cause a significant market reaction, that reaction should be taken into

11  account in determining the materiality of the misstatement.

12  89.    SAB Topic 1M further states:

13          among the considerations that may well render material a quantitatively
        small misstatement of a financial statement item are –

14

                            *        *        *

15          whether the misstatement masks a change in earnings or other trends

16          whether the misstatement hides a failure to meet analysts' consensus
        expectations for the enterprise

17                            *        *        *

18          whether the misstatement concerns a segment or other portion of the
        registrant's business that has been identified as playing a significant role in the
        registrant's operations or profitability.

19

20  90.    SAB Topic 1M also says that an intentional misstatement of even immaterial

items may be illegal and constitute fraudulent financial reporting.

21

22  91.    Getty Images' misstatements satisfy these criteria and thus were material from

both a quantitative and qualitative perspective.

23

24

SHAREHOLDER VERIFIED                                          - 40 -
DERIVATIVE COMPLAINT

**<u>Getty Images' Financial Statements Violated Fundamental Concepts of GAAP</u>**

92.     Due to these accounting improprieties, the Company presented its financial results and statements in a manner that violated GAAP, which are described by the following statements:

(a)     The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements (APB No. 28, ¶10);

(b)     The principle that financial reporting should provide information that is useful to existing and potential investors and creditors and other users in making rational investment, credit and similar decisions Financial Accounting Standards Board ("FASB") Statement of Concepts No. 1, ¶34);

(c)     The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and the effects of transactions, events and circumstances that change resources and claims to those resources (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to stockholders for the use of enterprise resources entrusted to it.  To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)     The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶58-59);

(f)     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2, ¶79); and

(g)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2, ¶¶95, 97).

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 • Fax:  (425) 868-7870

93.     Further, the undisclosed adverse information concealed by the Individual Defendants during the relevant period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

### Getty Images' Financial Statements Violated SEC Regulations

94.     During the relevant period, the Individual Defendants caused Getty Images to violate SEC regulations by failing to disclose that the Company's senior executives had been granted backdated stock options.

95.     Under SEC Regulations, Item 8 of Form 14-A and Item 11 of Form 10-K, an issuer must furnish information required by Item 402 of Regulation S-K [17 C.F.R. §229.303]. Item 402(b) and (c) require a company to provide both a Summary Compensation Table and an Option/SAR Grants table identifying the compensation of the named executive officers – the Company's CEO and its next four most highly paid executives.  Item 402 requires particularized disclosures involving a company's stock option grants in the last fiscal year.  In the summary compensation table, the issuer must identify in a column "other annual compensation" received by the named executives that is not properly categorized as salary or bonus, including any "[a]bove market or preferential earnings on restricted stock, options, SARs or deferred compensation" paid to the officer during the period.  Item 402(b)(2)(iii)(C)(2).  In the option grant table, the issuer must identify in a column "[t]he per-share exercise or base price of the options. . . . If such exercise or base price is less than the market price of the underlying security

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 42 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

on the date of grant, a separate, adjoining column shall be added showing market price on the date of grant. . . ."  Item 402(c)(2)(iv).

96.     The Individual Defendants caused Getty Images to violate SEC regulations by failing to disclose that the Company's named executive officers had been granted options with exercise prices below the market value on the date the Board or Compensation Committee approved the grant.

### Violations of IRS Rules and Regulations

97.     During the relevant period, the Individual Defendants further caused Getty Images to violate IRS rules and regulations due to its improper accounting for the backdated stock options.  As a result, the Company's tax liabilities were understated, exposing Getty Images to potential amounts owed for back taxes, penalties and interest to the IRS for improperly reporting compensation.

98.     The Individual Defendants caused the Company to violate Section §162(m), which generally limits a publicly-traded company's tax deductions for compensation paid to each of its named executive officers to $1 million unless the pay is determined to be "performance-based."  In order for compensation to be "performance-based", the Compensation Committee must have set pre-established and objective performance goals.  The goals must then be approved by the shareholders. Section 162(m) defines stock options as "performance-based" provided they are issued at an exercise price that is no less than the fair market value of the stock on the date of the grant.  Accordingly, properly issued stock options do not have to be taken into account in calculating whether an executive's compensation has exceeded the $1 million compensation cap.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 43 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

99.    Section 162(m), known as the $1 million rule, was enacted in 1993 in order to tie top executives' soaring pay packages more closely to a company's performance.  This change in the tax law turned compensation practices for a company's top executives away from straight salary-based compensation to performance-based compensation, including stock options. According to former SEC Chairman Harvey Pitt: "What [162[m]] did was create incentives to find other forms of compensation so people could get over the $1 million threshold without running afoul of the code."

100.    The Individual Defendants caused Getty Images to violate Section § 162(m) by providing backdated options to the Company's named executive officers, which were granted with exercise prices that were less than the fair market value of the stock on the date of the grant. As a result all of the income resulting from the exercise of the options must be included for purposes of calculating whether the named executive's compensation exceeds the $1 million cap for federal tax purposes.

101.    The Individual Defendants further caused the Company to violate IRS rules and regulations in order to avoid having to withhold income and FICA tax from its executives and employees upon the exercise of Getty Images' stock options by improperly accounting for its Nonqualified Stock Options ("NSOs") as Incentive Stock Options ("ISOs").

102.    ISOs are a form of equity compensation that may be provided to a company's employees.  ISOs are required to be granted at an exercise price that is no less than the fair market value of the stock on the date of the grant and are entitled to preferential tax treatment as they are not subject to income tax upon exercise of the options but only upon sale of the stock (except for the possible imposition of alternative minimum tax on the option spread at the time of exercise).  Stock options that do not qualify as ISOs are considered to be NSOs.  NSOs are not

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

entitled to preferential treatment as they are subject to income tax and FICA withholding upon exercise.  As a result, a company that fails to withhold income tax and/or FICA upon the exercise of NSOs by its employees would be liable for the amount of the income tax and FICA that the company failed to withhold upon exercise of the options, in addition to interest and penalties.

103.    By improperly treating its backdated options as ISOs, the Individual Defendants failed to provide proper income tax and FICA withholdings upon the exercise of its options by its executives and employees in violation of IRS rules and regulations.

104.    The chart below illustrates Getty Images' false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings:

| Fiscal Year | Reported Earnings (Loss) | Reported Basic Earnings (Loss) Per Share |
|---|---|---|
| 1999 | ($67.833 million) | ($1.94) |
| 2000 | ($7.901 million) | ($0.32) |
| 2001 | ($95.312 million) | ($1.84) |
| 2002 | $21.468 million | $0.40 |
| 2003 | $64.017 million | $1.16 |
| 2004 | $106.65 million | $1.81 |
| 2005 | $149.703 million | $2.43 |

105.    Meanwhile, the Individual Defendants were causing the Company to grant them hundreds of thousands of stock options, which were backdated or misdated.  As such, the Individual Defendants, in violation of GAAP, did not account for the significant and material amount in compensation expenses as to the aforementioned stock option grants, thereby overstating earnings and earnings per share.

**THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 45 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

106.    In a misguided effort to attract and retain employees in a competitive environment, the Individual Defendants exceeded the bounds of the law and legitimate business judgment by perpetrating their backdating scheme.  The Individual Defendants' misconduct was unjustifiable and constituted a gross breach of their fiduciary duties by:

        a.    colluding with the each other to backdate stock option grants;

        b.    colluding with the each other to violate GAAP and Section 162(m);

        c.    colluding with each other to produce and disseminate to Getty Images shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

        d.    colluding with each other to file false proxy statements, false financial statements, and false Form 4's in order to conceal the improper backdating of stock options.

107.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Option Recipient Defendants at the expense of the Company.

108.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, costs and expenses incurred in connection with the Company's internal review of its past stock options, and costs and expenses incurred in connection with the SEC investigation.

109.    As alleged herein, the Option Recipient Defendants have exercised hundreds of thousands of backdated options at improperly low prices and have then sold the shares for

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

millions in proceeds.  Consequently, the Option Recipient Defendants have been unjustly enriched by garnering millions of dollars in illicit profits and depriving the Company of millions of dollars in payments that the Company should have received upon exercise of the options.

## DERIVATIVE AND DEMAND-EXCUSED ALLEGATIONS

110.   Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties, unjust enrichment, and other violations of law.

111.   Plaintiff is an owner of Getty Images common stock and was an owner of Getty Images common stock at all times relevant hereto.

112.   Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

113.   As a result of the facts set forth herein, Plaintiff has not made any demand on the Getty Images Board to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

114.   At the time this action was commenced, the Board consisted of seven directors: defendants Getty, Klein, Sporborg, Bailey, and Garb and directors Alan G. Spoon and Michael A. Stein.  The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

        a.   Getty, because as an Option Recipient Defendant, he is directly interested in the improperly backdated stock option grants complained of herein. Also, as Chairman of the Board, he knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 ● Fax:  (425) 868-7870

Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the other Option Recipient Defendants and others, as alleged herein, Getty has demonstrated that he is unable or unwilling to act independently of the other Option Recipient Defendants;

b.      Klein, because as an Option Recipient Defendant, he is directly interested in the improperly backdated stock option grants complained of herein. Also, as a director of the Company, he knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and knowingly and deliberately participated in and approved the Company's filing of false financial statements and other false SEC filings, as alleged herein,  and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the other Option Recipient Defendants and others, as alleged herein, Klein has demonstrated that he is unable or unwilling to act independently of the other Option Recipient Defendants.  Also, his principal professional occupation is his position as Chief Executive Officer of the Company.  In his position as Chief Executive Officer of the Company, Klein stands to earn hundreds of thousands of dollars in annual salary, bonuses, and other compensation, all of which must be approved by defendants Bailey, Garb and Sporborg, who currently serve as members of the Compensation Committee.  Accordingly, Klein is incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action against the Individual Defendants;

c.      Sporborg, because as an Option Recipient Defendant, he is directly interested in the improperly backdated stock option grants complained of herein.  Also, as a member of the Compensation Committee as all relevant times hereto, Sporborg knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and as a member of the Audit Committee, he knowingly and deliberately participated in and knowingly approved the filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Sporborg has demonstrated that he is unable or unwilling to act independently of the other Option Recipient Defendants; and

d.      Bailey, because as a member of the Compensation Committee as all relevant times hereto, Bailey knowingly and deliberately participated in

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 48 -

and approved the improper backdating of stock options, as alleged herein, and as a member of the Audit Committee, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Bailey has demonstrated that he is unable or unwilling to act independently of the Option Recipient Defendants;

e.   Garb, because as a member of the Compensation Committee as all relevant times hereto, Garb knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and as a member of the Audit Committee, he knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Option Recipient Defendants and others, as alleged herein, Garb has demonstrated that he is unable or unwilling to act independently of the Option Recipient Defendants;

f.   Getty, Klein, and Sporborg, because they and defendant Evans-Lombe share a long-standing personal and professional relationship, especially with regard to their work at Hambros Bank Limited ("Hambros").  Getty joined Hambros in 1991, prior to founding Getty Images, and Klein served as a director and Manager of the media group.  Moreover, Sporborg served as Hambros's Chairman and CEO prior to joining Getty Images, and Evans-Lombe held various finance related positions at Hambros.  Accordingly, Getty, Klein, and Sporborg are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action against each other and Evans-Lombe.

115.   The following chart summarizes the positions of the Director Defendants during the relevant period:

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 49 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

| Director Defendants | Recipient of Backdated Options | Compensation Committee Member During relevant period | Stock Option Committee Member During relevant period | Audit Committee Member During the relevant period |
|---|---|---|---|---|
| Getty | x | | | |
| Klein | x | | x | |
| Sporborg | x | x | | x |
| Bailey | | x | | x |
| Garb | | x | | x |

116.    Demand is also excused because the misconduct complained of herein was not, and could not have been, an exercise of good-faith business judgment.  As represented in Getty Images' proxy statements, the stated purpose of the Company's shareholder-approved stock option plans is to attract and retain employees by providing compensation that reflects the Company's stock performance and "align[s] the interests of executive[s] with those of the Stockholders by providing . . . [them] with a financial interest in the Company."

117.    However, by granting options with backdated exercise prices, the Individual Defendants undermined the purpose of the Company's shareholder-approved stock option plans by awarding employees compensation that had intrinsic value regardless of Getty Images' stock performance.  In effect, this practice was nothing more than secret handouts to executives and employees at the expense of unsuspecting shareholders and the Company.

118.    The Individual Defendants could have achieved the stated purpose of attracting and retaining "key executives" by granting them additional options under its incentive plans, or by granting options at a price less than the fair market value on the date of grant and simply disclosing and expensing these grants.  Instead, the Individual Defendants backdated option grants in violation of the Company's shareholder-approved stock option plans and improperly reported these grants in the Company's and their own financial disclosures.

## COUNT I

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 50 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

**Against the Individual Defendants for**
**Violations of § 10(b) and Rule 10b-5 of the Securities Exchange Act**

119.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

120.    Throughout the relevant period, the Individual Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

121.    The Individual Defendants, as top executive officers and/or directors of the Company, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority as officers and/or directors of the Company, each of the Individual Defendants was able to and did control the conduct complained of herein.

122.    The Individual Defendants acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were among the senior management and directors of the Company and were therefore directly responsible for the fraud alleged herein.

123.    The Company relied upon the Individual Defendants' fraud in granting the Option Recipient Defendants options to purchase shares of the Company's common stock, as alleged herein.

124.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages,

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

including, but not limited to, the additional compensation expenses and tax liabilities the

Company will be required to incur, the loss of funds paid to the Company upon the exercise of

stock options resulting from the difference between the fair market value of the stock option on

the true date of grant and the price that was actually paid as a result of the backdated stock

option grant, costs and expenses incurred in connection with the Company's internal review of

its past stock options, and costs and expenses incurred in connection with the SEC investigation.

## COUNT II

### Against the Individual Defendants for
### Violations of § 14(a) of the Securities Exchange Act

125.    Plaintiff incorporates by reference and realleges each and every allegation set

forth above, as though fully set forth herein.

126.    Rule 14-A-9, promulgated pursuant to §14(a) of the Exchange Act, provides that

no proxy statement shall contain "any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or

which omits to state any material fact necessary in order to make the statements therein not false

or misleading."  17 C.F.R. § 240.14-A-9.

127.    The proxy statements described herein violated § 14(a) and Rule 14-A-9 because

they omitted material facts, including the fact that the Individual Defendants were causing the

Company to engage in an option backdating scheme, a fact which the Individual Defendants

were aware of and participated in from 1999 to 2002.

128.    In the exercise of reasonable care, the Individual Defendants should have known

that the proxy statements were materially false and misleading.

129.    The misrepresentation and omissions in the proxy statements were material.  The

proxy statements were an essential link in the accomplishment of the continuation of the

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 52 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 ● Fax:  (425) 868-7870

Individual Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

130.   The Company was damaged as a result of the material misrepresentations and omissions in the proxy statements.

**COUNT III**

**Against Huebner and the Director Defendants for
Violations of § 20(a) of the Securities Exchange Act**

131.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

132.   Huebner and the Director Defendants, by virtue of their positions with the Company and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of the Company within the meaning of § 20(a) of the Exchange Act.  They had the power and influence and exercised the same to cause the Company to engage in the illegal conduct and practices complained of herein.

**COUNT IV**

**Against the Individual Defendants for
an accounting**

133.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

134.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 53 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  ●  Fax:  (425) 868-7870

135.    As alleged in detail herein, the Individual Defendants breached their fiduciary duties by, among other things, engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct.

136.    The Individual Defendants possess complete and unfettered control over the improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants.

137.    As a result of the Individual Defendants' misconduct, the Company has been damaged financially and is entitled to a recovery as a result thereof.

138.    Plaintiff demand an accounting be made of all stock option grants made to any of the Option Recipient Defendants, including, but not limited to, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the dates the options were exercised, as well as the disposition of any proceeds received by any of the Option Recipient Defendants via sale or other exercise of the grants.

## COUNT V

### Against the Individual Defendants for
### Breach of fiduciary duty and/or aiding and abetting

139.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

140.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

141.    As alleged in detail herein, the Individual Defendants breached their fiduciary duties by, among other things, engaging in a scheme to grant backdated stock options to

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813 • Fax:  (425) 868-7870

themselves and/or certain other officers and directors of the Company and cover up their misconduct.

142.    In breach of their fiduciary duties of loyalty and good faith, the Individual Defendants agreed to and did participate with and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets to themselves and/or other Company insiders.

143.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Option Recipient Defendants at the expense of the Company.

144.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company will be required to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from the difference between the fair market value of the stock option on the true date of grant and the price that was actually paid as a result of the backdated stock option grant, costs and expenses incurred in connection with the Company's internal review of its past stock options, and costs and expenses incurred in connection with the SEC investigation.

### COUNT VI

**Against the Option Recipient Defendants for
Unjust enrichment**

145.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146.    The Option Recipient Defendants were unjustly enriched by their receipt and retention of backdated stock option grants and the proceeds they received through exercising

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 55 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

backdated stock options, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

147.    To remedy the Option Recipient Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

## COUNT VII

### Against the Option Recipient Defendants for Rescission

148.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

149.    As a result of the acts alleged herein, the stock option contracts between Option Recipient Defendants and the Company entered into during the relevant period were obtained through the Individual Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the Company's shareholder-approved stock option plans.

150.    All contracts which provide for stock option grants to the Option Recipient Defendants and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 56 -

## COUNT VIII

### Against the Insider Selling Defendants for
### Insider selling and misappropriation of information

151.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

152.    At the time of their stock sales, the Insider Selling Defendants knew that the Company's financial results were false and misleading.  These Defendants' sales of Getty Images common stock while in possession and control of this material adverse nonpublic information was a breach of their fiduciary duties of good faith, honesty, and loyalty.

153.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the fiduciary owed by the Insider Selling Defendants to the Company, Plaintiff, on behalf of the Company, are entitled to the imposition of a trust on any profits these Defendants obtained thereby.

154.    Plaintiff, as shareholder of Getty Images, seeks damages and other relief for Getty Images.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' misconduct;

B.    Ordering the Option Recipient Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized, and imposing a constructive trust thereover;

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

C.      Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties;

D.      Directing the Company to take all necessary actions to reform and improve its corporate governance and internal control procedures to comply with applicable law, including, but not limited to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote adoption of the following Corporate Governance policies:

        (a)      a proposal requiring that the office of CEO of the Company and Chairman of the Board be permanently held by separate individuals and that the Chairman of the Board meets rigorous "independent" standards;

        (b)      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

        (c)      appropriately test and then strengthen the internal audit and control functions;

        (d)      rotate independent auditing firms every five years;

        (e)      control and limit insider stock selling and the terms and timing of stock option grants; and

        (f)      reform executive compensation;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT

- 58 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel:  (425) 868-7813  •  Fax:  (425) 868-7870

F.      Granting such other and further relief as the Court deems just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

Dated March 1, 2007                    Respectfully submitted,

                                      /s  Clifford A. Cantor  (WSBA # 17893)
                                      LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
                                      627 208th Ave. SE
                                      Sammamish, WA 98074
                                      Tel: (425) 868-7813
                                      Fax: (425) 868-7870

                                      SCHIFFRIN & BARROWAY LLP
                                      Lee D. Rudy
                                      Michael J. Hynes
                                      Tara P. Kao
                                      280 King of Prussia Road
                                      Radnor, PA 19087
                                      Tel: (610) 667-7706

                                      *Attorneys for Plaintiff*

SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                        - 59 -

**VERIFICATION**

I, **Richard B. Edmonds**, hereby verify that I have authorized the filing of the attached Complaint, that I have reviewed the Complaint, and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

DATE: _2·28-07_

_RICHARD B. EDMONDS_

281561.1