The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

RICHARD B. EDMONDS, derivatively on behalf of nominal defendant Getty Images, Inc.,

Plaintiff,

v.

MARK H. GETTY, JONATHAN D. KLEIN, A.D. ALBERS, JAMES N. BAILEY, JEFF BEYLE, M. LEWIS BLACKWELL, NICK EVANS-LOMBE, JOHN Z. FERGUSON, ANDREW S. GARB, JIM GURKE, ELIZABETH J.HUEBNER, SCOTT A. MISKIMENS, WILLIAM O'NEILL, STEPHEN M. POWELL, CHRISTOPHER J. ROLING, CHRISTOPHER H. SPORBORG, SALLY VON BARGEN, and WARWICK K. WOODHOUSE,

Defendants,

and

GETTY IMAGES, INC.,

Nominal Defendant.

No. C 07-0317 JLR

**AMENDED SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT**

JURY TRIAL DEMANDED

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

Plaintiff, Richard B. Edmonds, (Plaintiff"), by the undersigned attorneys, derivatively on behalf of Getty Images, Inc. ("Getty Images" or the "Company") allege upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, news reports, press releases, and other publicly available documents regarding Getty Images.

## NATURE OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Getty Images against certain members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law relating to the "backdating" of stock option grants to Getty Images insiders.

2.      From April 1999 to February 2002, a majority of Getty Images directors, together with its top officers, engaged in a secret scheme to grant undisclosed, in-the-money stock options to themselves and others by backdating stock option grants to coincide with historically low prices of Getty Images common stock.  Indeed, in a striking pattern, 21 out of 25 discretionary grants made from April 1999 to February 2002 coincided with historically low prices – eight of the grants were purportedly made at or near the ***lowest price of the fiscal year*** and fourteen were made at or near the ***lowest price of the fiscal quarter***.

3.      This action seeks redress for the harm done to Getty Images, and indirectly to its stockholders, resulting from the self-dealing of certain of the Company's top executives and directors who breached their fiduciary duties of loyalty and good faith to the Company by intentionally manipulating Getty Images stock option grants between April 1999 and February 2002.  As a result of their misconduct, these top executives and directors have secured a huge windfall for themselves at the expense of Getty Images and caused the misstatement of Getty Images' financial results from the Company's fiscal year 1999 through the present.  In fact, the

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 1 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

Company restated its historical financial statements to account for over *$27 million* in additional compensation expenses.

4.     These key executives and directors backdated stock option grants in order to exercise the stock option grants at a lower strike price, thus pocketing more money than they were otherwise entitled to receive.  A stock option granted to an employee or director of the Company allows the employee or director to purchase Company stock at a specified price – referred to as the "exercise price" – for a specified period of time.  Stock options are typically granted as part of an employee's or director's compensation package to create incentives for him or her to boost profitability and the Company's stock value.  When an employee or director exercises an option, he or she purchases the stock from the Company at the exercise price, regardless of the stock price at the time the option is exercised.  Option pricing is based on the price of the Company's common stock on the day of the grant.  If an option is backdated to a day on which the market price was lower than the price on the day the option is granted, as Getty Images has admitted was the case here, then the employee or director pays less for the stock option.  Consequently, the Company gets less money for the stock when the option is exercised.

5.     As demonstrated below, these perfectly-timed option grants could not have been the result of mere coincidence.  They were, in fact, the result of improper and opportunistic option granting practices.  Because the Company failed to comply with the Generally Accepted Accounting Principles ("GAAP") governing the expensing of stock option grants, the backdating scheme had a material effect on Getty Images' financial statements from 1999 through the present. As explained *infra*, to the extent the Company failed to record, as a compensation expense, the difference between the price of Getty Images stock on the date of the actual grant and the "backdated" exercise price of the options, this deliberate omission resulted in the material understatement of the Company's reported compensation expense and a material overstatement of its reported net income throughout the relevant period.

6.     The backdating practices directed by defendants rendered materially false and misleading each of the Company's annual proxy statements to shareholders, which purported to

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   set forth the true amount and type of compensation of its most highly-compensated executives,

2   as required by rules promulgated by the SEC.  The practice of backdating also rendered the

3   defendants' statements regarding the Company's executive and director stock-based

4   compensation, contained in Getty Images' annual reports and annual proxy statements,

5   materially false and misleading.

6         7.   The secret practice of backdating stock options was exposed on March 18, 2006,

7   when *The Wall Street Journal* published an article entitled "The Perfect Payday," which

8   described stock option backdating practices by a number of companies where their executives

9   had achieved extremely fortuitous stock option paydays -- the likelihood of which defied random

10  chance.  *The Wall Street Journal*, together with Erik Lie, a professor at Tippie College of

11  Business at the University of Iowa, David Yermack, a professor at New York University Stern

12  School of Business, and John Emerson, a professor at Yale University, studied patterns of

13  particularly favorable stock grants at certain companies and calculated the probability of such

14  patterns occurring randomly and concluded that the odds were improbable.

15        8.   This practice of backdating stock options, though widespread, remained virtually

16  undetected until such academic research revealed patterns of stock option grants that could not

17  be explained by chance.  These studies noted the frequency with which stock option grants

18  occurred just after a drop in stock price and immediately before a significant increase in stock

19  price, often at the lowest price of the year.  Such timing could not be statistically explained by

20  random selection of grant dates.  One study hypothesized that the dates of the grants had been

21  selected retroactively.  Such retroactive dating, or "backdating," would permit the grantor to

22  select the most advantageous price for the stock option and to effectively grant "in-the-money"

23  stock options (where the exercise price of the option is lower than the stock price on the date of

24  grant) that appeared to be granted when the stock price was at a historical low.  Since companies

25  are required to report in-the-money grants as compensation to the recipient and as a charge to the

26  corporation, the practice of backdating would provide a means to confer additional stock value,

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   or compensation, to officers and employees that was not detectable, thereby permitting Company

2   insiders to conceal the additional compensation and forego reporting or recording the charge.

3        9.    Former SEC Chairman Harvey L. Pitt was quoted saying "[w]hat's so terrible

4   about backdating options grants?  For one thing, it likely renders a company's proxy materials

5   false and misleading.  Proxies typically indicate that options are granted at fair market value.

6   But if the grant is backdated, the options value isn't fair – at least not from the vantage point of

7   the company and its shareholders."  Deputy Attorney General Paul J. McNulty has described the

8   practice of stock option backdating "as a brazen abuse of corporate power."  The Chairman of

9   the Banking, Housing Urban Affairs Committee of the United States Senate, Senator Richard

10  Shelby, has also stated that manipulation of options grant dates is a "***black-and-white example of***

11  ***securities fraud.***"

12       10.    SEC Chairman Christopher Cox was quoted, saying "[Backdating options] isn't a

13  question about 'Whoops, I may have (accidentally) crossed a line here' . . . It's a question of

14  knowingly betting on a race that's already been run."  He has also announced that "[backdating

15  in many cases] makes a hash of (companies') financial statements . . . [and is] poisonous [to

16  efficient markets]. . . . It is securities fraud if you falsify books and records.  It is securities fraud

17  if you present financial statements to the SEC that do not comply with generally accepted

18  accounting principles.  There is no requirement that (the defendant) personally profit [to prove

19  that a crime occurred.]"  He has further stated, "[r]ather obviously, this fact pattern [of

20  backdating options] results in a violation of the SEC's disclosure rules, a violation of accounting

21  rules, and also a violation of the tax laws."  The Commissioner of the Internal Revenue Service

22  ("IRS") Mark Everson agreed and has further stated, "[p]icking a date on which the stock price

23  was low in comparison with the current price gives the employee the largest potential for gain on

24  the option and makes it possible for the employee to benefit from corporate performance that

25  occurred before the option was granted."

26       11.    In addition to the foregoing, a recent academic study revealed that outside

27  directors of companies were also benefiting from backdating and were recipients of manipulated

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 4 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

stock option grants, as detailed in *The Wall Street Journal* article published on December 18, 2006 below:

> A new academic study suggests that many outside directors received manipulated stock-option grants, a finding that may help explain why the practice of options backdating wasn't stopped by the boards of some companies.
>
> The statistical study, which names no individuals or firms, estimates that 1,400 outside directors at 460 companies received questionable option grants, suggesting the widespread practice extended well beyond the executive suite.
>
> The study is notable because it suggests that outside, or independent, directors -- who are supposed to play a special role safeguarding against cozy board relationships with management -- may have been co-opted in options backdating by receiving manipulated grants themselves. The New York Stock Exchange requires that a majority of board seats, and all compensation- and audit-committee members, be independent . . . .
>
> The evidence "contributes to understanding the possible factors that led to or enabled manipulation to occur," states the unpublished study, which was conducted by professors at Harvard and Cornell universities and the French business school Insead . . . .

12.     According to an August 26, 2007 article in the *National Law Journal* entitled "Lawyers Fly Blind on Options Penalties," the stock options backdating scandal has produced 16 criminal prosecutions, 220 companies that have been subject to internal or federal investigations and 100 corporate earnings restatements totaling approximately $12.4 billion.

13.     Getty Images is one of the many companies that have been subject to both an internal investigation and SEC investigation involving options backdating at the Company. After the internal investigation was completed, the Company ***admitted that past option grants were "improperly dated" and that the Company would be required to restate financial data***. Specifically, the Company has determined that "it is necessary to revise the measurement dates for approximately 3,700 . . . grants, covering grants made on approximately 130 occasions." On June 13, 2007, the Company filed its fiscal 2006 financial report and the first and second quarter

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 5 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

amended reports, which were adjusted to account for additional compensation expenses totaling *over $27 million*.

14.    In addition to being unjustly enriched by the receipt of backdated options, from February 25, 1999 to January 20, 2006, Defendants Garb, Getty, Klein and Sporborg, while in possession of materially adverse non-public information regarding the backdating of stock options and the false financial statements resulting therefrom, sold approximately 3.1 million shares of Getty Images stock and collectively realized ***total proceeds of over $169 million***, a significant portion of which was obtained through the exercise of improperly backdated stock options.   Furthermore, Getty Image's executives were also overpaid cash bonuses based on inflated earnings, which created an inflated market capitalization for Getty Images common stock.

15.    As alleged in detail herein, in gross breach of their fiduciary duties as officers and/or directors of Getty Images, defendants intentionally colluded with one another to:

a.    improperly backdate multiple grants of Getty Images stock options to several Getty Images executives and directors, in violation of the Company's shareholder-approved stock option plans;

b.    improperly record and account for the backdated stock options, in violation of GAAP;

c.    improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m) ("Section 162(m)");

d.    produce and disseminate false financial statements and other false SEC filings to Getty Images shareholders and the market that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

e.    improperly cause Getty Images to violate applicable federal and state laws, rules, and regulations requiring the dissemination of accurate financial statements and restricting the misuse of material non-public information.

16.    By engaging in this scheme, defendants were able to conceal that Getty Images was not accounting for its compensation expenses properly and was materially overstating the

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                               - 6 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   Company's net income and earnings for 1999 through the present.  In addition to the serious and

2   adverse tax consequences resulting from the Company's failure to record the appropriate non-

3   cash stock-based compensation expenses, Getty Images faces millions in costs associated with

4   the review by the Special Committee of the Board (the "Special Committee") and the related

5   restatements.

6          17.    This action states derivative claims for the defendants' violations of Sections

7   10(b), 14(a) and 20(a) of the Exchange Act and SEC Rule 10b-5.  This action also seeks

8   disgorgement of bonuses or other incentive-based or equity-based compensation received by the

9   defendants who also received backdated options, and for any profits realized from their sale of

10  Getty Images stock, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002.

11         18.    As a result of defendants' secret scheme to backdate options and issue false and

12  misleading statements to conceal such backdating, Getty Images has sustained millions of dollars

13  in damages, including damage to its reputation and loss of goodwill in general, exposure to an

14  adverse opinion by its outside auditors and considerable financial cost in having to review and

15  restate previously issued financial statements.  Moreover, Getty Images has been exposed to civil

16  liability and potential regulatory fines by the SEC and IRS for failure to pay or withhold taxes.

17  Meanwhile, the recipients of the backdated stock options -- top executives and directors at Getty

18  Images -- have garnered millions of dollars in unlawful profits at the expense of the Company.

19                              **JURISDICTION AND VENUE**

20         19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that

21  this Complaint states a federal question.  This Court also has jurisdiction over this action

22  pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states

23  and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court

24  has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C.

25  §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States

26  which it would not otherwise have.

27         20.    Venue is proper in this district because a substantial portion of the transactions

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                     - 7 -
(No. C 07-0317 JLR)

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    and wrongs complained of herein, including the defendants' primary participation in the

2    wrongful acts detailed herein, occurred in this district. One or more of the defendants either

3    resides in or maintains executive offices in this district, and defendants have received substantial

4    compensation in this district by engaging in numerous activities and conducting business here,

5    which had an effect in this district.

6                                 **PARTIES**

7         21.    Plaintiff Edmonds is a shareholder of Getty Images, was a shareholder of Getty

8    Images at the time of the wrongdoing alleged herein, and has been a shareholder of Getty Images

9    continuously since that time. Plaintiff Edmonds is a citizen of the State of Pennsylvania.

10         22.    Nominal defendant, Getty Images, is a Delaware corporation with its principal

11    executive offices located at 601 North 34th Street, Seattle, WA 98103. According to its public

12    filings, Getty Images is a leading creator and distributor of visual content.

13    **Defendant Getty**

14         23.    Defendant Mark H. Getty ("Getty") is a co-founder of Getty Images and has

15    served as a director and as Chairman of the Board since February 1998.

16         24.    Upon information and belief, Getty received approximately the following as

17    compensation, not including stock option grants:

| Fiscal Year | Compensation |
|---|---|
| 2005 | $123,003 |
| 2004 | $137,099 |
| 2003 | $564,616 |
| 2002 | $482,775 salary |
| 2001 | $460,889 salary |
| 2000 | $481,292 salary and $500,000 bonus |
| 1999 | $343,904 salary and $224,250 bonus |

24         25.    Upon information and belief, Defendant Getty received 915,000 backdated Getty

25    Images stock options, as shown below:

26

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

           - 8 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

| Purported grant date | # of Options | Exercise price |
|:---:|:---:|:---:|
| 10/22/99 | 15,000 | $19.07 |
| 04/28/00 | 400,000 | $30.32 |
| 05/24/00 | 400,000 | $28.63 |
| 03/30/01 | 50,000 | $16.85 |
| 10/15/01 | 50,000 | $12.41 |

26.    From 2003 to 2006, Defendant Getty sold 1,407,635 shares of Getty Images stock with total proceeds of $76,183,332.60, a significant portion of which was obtained through the exercise of improperly backdated stock options.

27.    Upon information and belief, Getty is a citizen of the State of Washington.

**Defendant Klein**

28.    Defendant Jonathan D. Klein ("Klein") is a co-founder of Getty Images and has served as Chief Executive Officer ("CEO") and as a director since February 1998.  Klein has served as the only member of the Stock Option Committee of the Board, later renamed the Equity Compensation Committee (the "Stock Option Committee") since its formation in July 2001 until its dissolution in 2007.

29.    Upon information and belief, Klein received approximately the following as compensation, not including stock option grants:

| Fiscal Year | Compensation |
|:---|:---|
| 2006 | $950,000 |
| 2005 | $950,000 salary and $691,600 bonus |
| 2004 | $962,500 salary and $828,208 bonus |
| 2003 | $1,100,000 salary and $325,000 bonus |
| 2002 | $1,100,000 salary and $420,000 bonus |
| 2001 | $625,000 salary |
| 2000 | $463,177 salary |
| 1999 | $355,976 salary and $224,250 bonus |

30.    Upon information and belief, Klein received 1,317,000 backdated Getty Images stock options, as shown below:

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 9 -

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 10/22/99 | 15,000 | $19.07 |
| 04/28/00 | 400,000 | $30.32 |
| 05/24/00 | 400,000 | $28.63 |
| 03/30/01 | 50,000 | $16.85 |
| 05/07/01 | 232,000 | $25.43 |
| 06/26/01 | 170,000 | $25.43 |
| 10/15/01 | 50,000 | $12.41 |

31.     Upon information and belief, Klein is a citizen of the State of Washington.

**Defendant Sporborg**

32.     Defendant Christopher H. Sporborg ("Sporborg") has served as a director of the Company and as a member of the Compensation Committee of the Board (the "Compensation Committee") since February 1998 and served as a director of Getty Communications Limited from May 1996 to February 1998.  Defendant Sporborg also served as a member of the Audit Committee of the Board (the "Audit Committee") from 1998 to 2004.

33.     Upon information and belief, Sporborg received an option grant dated July 23, 2001 to purchase at least 8,333 shares of Getty Images common stock at the exercise price of $15.80.  Moreover, from 2004 to 2005, Defendant Sporborg sold 9,583 shares of Getty Images stock with total proceeds of $577,309.86, a significant portion of which was obtained through the exercise of improperly backdated stock options.

34.     Upon information and belief, Sporborg is a citizen of the State of Washington.

**Defendant Bailey**

35.     Defendant James N. Bailey ("Bailey") has served as a director of Getty Images and as a member of the Compensation Committee and the Audit Committee since February 1998.  Bailey also served as a director of Getty Communications Limited from September 1996 to February 1998.

36.     Upon information and belief, Bailey is a citizen of the State of Washington.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  **Defendant Garb**

2      37.    Defendant Andrew S. Garb ("Garb") has served as a director of the Company and

3  as a member of the Compensation Committee since February 1998.  Garb also served as a

4  director of Getty Communications Limited from May 1996 to February 1998.  He has also

5  served as a member of the Audit Committee from 1998 to 2002 and since 2005.  Garb is

6  currently of counsel to the law firm of Loeb & Loeb LLP, where he was managing partner from

7  1986 to 1992.

8      38.    Upon information and belief, Garb is a citizen of the State of Washington.

9  **Defendant Albers**

10     39.    Defendant A.D. Albers ("Albers") served as the Company's Senior Vice President

11 and Chief Technology Officer from October 1999 to March 2003.

12     40.    Upon information and belief, Defendant Albers received approximately the

13 following as compensation, not including stock option grants:

| Fiscal Year | Compensation |
|---|---|
| 2002 | $260,000 salary and $100,000 bonus |
| 2001 | $275,000 salary |
| 2000 | $248,542 salary and $137,500 bonus |
| 1999 | $44,128 salary and $17,500 bonus |

18     41.    Upon information and belief, Defendant Albers received 95,000 backdated Getty

19 Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 08/28/00 | 25,000 | $40.41 |
| 10/11/00 | 25,000 | $24.78 |
| 03/30/01 | 25,000 | $16.85 |
| 10/15/01 | 20,000 | $12.41 |

24     42.    From November 1, 2002 to March 4, 2003 Defendant Albers sold 51,771 shares

25 of Getty Images stock with total proceeds of $1,525,407.73, a significant portion of which was

26 obtained through the exercise of improperly backdated stock options.

27     43.    Upon information and belief, Albers is a citizen of the State of Washington.

AMERICAN SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

**Defendant Beyle**

44. Defendant Jeff Beyle ("Beyle") has served as Senior Vice President and General Counsel of Getty Images since November 2000.

45. Upon information and belief, Defendant Beyle received approximately the following as compensation, not including stock option grants:

| Fiscal Year | Compensation |
|---|---|
| 2005 | $290,000 salary and $120,640 bonus |
| 2004 | $290,000 salary and $141,520 bonus |
| 2003 | $282,500 salary and $102,080 bonus |
| 2002 | $260,000 salary and $100,000 bonus |
| 2001 | $248,750 salary |
| 2000 | $22,705 salary and $15,000 bonus |

46. Upon information and belief, Defendant Beyle received 63,500 backdated Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 03/30/01 | 18,500 | $16.85 |
| 07/17/01 | 25,000 | $16.94 |
| 10/15/01 | 20,000 | $12.41 |

47. From October 27, 2003 to October 25, 2005, Defendant Beyle sold 138,500 shares of Getty Images stock with total proceeds of $9,364,596.00, a portion of which was obtained through the exercise of improperly backdated stock options.

48. Upon information and belief, Beyle is a citizen of the State of Washington.

**Defendant Blackwell**

49. Defendant M. Lewis Blackwell ("Blackwell") served as Getty Images' Senior Vice President, Creative Customers from September 2003 to 2006 and as its Senior Vice President, Creative Direction from July 2001 to September 2003.

50. Upon information and belief, Defendant Blackwell received approximately the following as compensation, not including stock option grants:

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| Fiscal Year | Compensation |
|---|---|
| 2004 | $312,913 salary and $147,352 |
| 2003 | $264,468 salary and $105,428 |
| 2002 | $231,000 salary and $75,000 bonus |
| 2001 | $221,760 salary |

51.     Upon information and belief, Defendant Blackwell received an option grant dated October 15, 2001 to purchase 10,000 shares of Getty Images common stock at the exercise price of $12.41.  On May 27, 2003, Defendant Blackwell sold 10,000 shares of Getty Images stock with total proceeds of $376,400.00, a significant portion of which was obtained through the exercise of improperly backdated stock options.

52.     Upon information and belief, Blackwell is a citizen of the State of Washington.

**Defendant Evans-Lombe**

53.     Defendant Nick Evans-Lombe ("Evans-Lombe") has served as the Company's Senior Vice President, Images and Services since August 2004.  Evans-Lombe also served as its Senior Vice President, Editorial Customers from September 2003 to July 2004, its Senior Vice President, Editorial from January 2002 to September 2003, its Senior Vice President, Strategy and Corporate Development from February 1998 to January 2002, and Director of Strategy and Corporate Development of Getty Communications Limited, its predecessor, from February 1996 to February 1998.

54.     Upon information and belief, Defendant Evans-Lombe received approximately the following as compensation, not including stock option grants:

| Fiscal Year | Compensation |
|---|---|
| 2006 | $350,750 committee fees and $30,000 bonus |
| 2004 | $240,000 salary and $119,040 bonus |
| 2003 | $238,750 salary and $89,000 bonus |
| 2002 | $235,000 salary and $66,000 bonus |

55.     Upon information and belief, Defendant Evans-Lombe received 140,000 backdated Getty Images stock options, as shown below:

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 05/04/99 | 30,000 | $26.82 |
| 07/27/99 | 30,000 | $18.44 |
| 10/22/99 | 15,000 | $19.07 |
| 03/30/01 | 20,000 | $16.85 |
| 10/15/01 | 20,000 | $12.41 |
| 02/05/02 | 25,000 | $19.43 |

56. From January 2, 2003 to August 26, 2005, Defendant Evans-Lombe sold 118,355 shares of Getty Images stock with total proceeds of $6,644,231.85, a significant portion of which was obtained through the exercise of improperly backdated stock options.

57. Upon information and belief, Evans-Lombe is a citizen of the State of Washington.

**Defendant Ferguson**

58. Defendant John Z. Ferguson ("Ferguson") served as Getty Images' Senior Vice President, Sales, Americas, and held other senior vice president positions at the Company from at least 1999 to 2005.

59. Upon information and belief, Defendant Ferguson received 31,400 backdated Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 08/03/99 | 3,500 | $18.33 |
| 10/22/99 | 7,500 | $19.07 |
| 02/01/00 | 400 | $38.63 |
| 03/30/01 | 10,000 | $16.85 |
| 10/09/01 | 10,000 | $12.82 |

60. From November 11, 2003 to July 29, 2005, Defendant Ferguson sold 51,500 shares of Getty Images stock with total proceeds of $3,348,535.00, a portion of which was obtained through the exercise of improperly backdated stock options.

61. Upon information and belief, Ferguson is a citizen of the State of Washington.

**Defendant Gurke**

62. Defendant Jim Gurke ("Gurke") has served as the Company's Senior Vice

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 14 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

President, Human Resources and Chief of Staff since July 2004 and previously served as its Vice President of New Revenues from December 2003 to July 2004, as its Vice President of Sales, Americas from October 2002 to August 2002, and as its Vice President of Sales and Marketing from 1999 to 2002.

63.   Upon information and belief, Defendant Gurke received 35,900 backdated Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 08/03/99 | 3,000 | $18.33 |
| 10/22/99 | 7,500 | $19.07 |
| 02/01/00 | 400 | $38.63 |
| 03/30/01 | 15,000 | $16.85 |
| 10/09/01 | 10,000 | $12.82 |

64.   From November 11, 2003 to January 3, 2006, Defendant Gurke sold 1,407,635 shares of Getty Images stock with total proceeds of $76,183,332.60, a portion of which was obtained through the exercise of improperly backdated stock options.

65.   Upon information and belief, Gurke is a citizen of the State of Washington.

**Defendant Huebner**

66.   Defendant Elizabeth J. Huebner ("Huebner") served as Getty Images' Senior Vice President and Chief Financial Officer from October 2000 to early 2006.

67.   Upon information and belief, Defendant Huebner received approximately the following as compensation, not including stock option grants:

| Fiscal Year | Compensation |
|---|---|
| 2006 | $187,500 salary |
| 2005 | $392,500 salary and $208,000 bonus |
| 2004 | $370,000 salary and $229,400 bonus |
| 2003 | $361,250 salary and $181,300 bonus |
| 2002 | $335,000 salary and $185,000 bonus |
| 2001 | $312,500 salary |
| 2000 | $74,178 salary and $41,250 bonus |

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 15 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

68.     Upon information and belief, Defendant Huebner received: (i) an option grant dated March 30, 2001 to purchase 35,000 shares of Getty Images common stock at the exercise price of $16.85, and (ii) an option grant dated October 15, 2001 to purchase 20,000 shares of Getty Images common stock at the exercise price of $12.41.

69.     From October 27, 2003 to May 16, 2006, Defendant Huebner sold 257,917 shares of Getty Images stock with total proceeds of $16,071,192.23, a portion of which was obtained through the exercise of improperly backdated stock options.

70.     Upon information and belief, Huebner is a citizen of the State of Washington.

**Defendant Miskimens**

71.     Defendant Scott A. Miskimens ("Miskimens") served as the Company's Senior Vice President, Technology and Content from December 2003 to 2004, as its Senior Vice President, Technology, Content and Artist Operations from January 2003 to December 2003, as its Senior Vice President, Content and Artist Operations, from November 2002 to January 2003, and as its Vice President, Technology Services from January 2000 to November 2002.

72.     Upon information and belief, Defendant Miskimens received 28,944 backdated Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 05/30/00 | 10,000 | $29.10 |
| 03/30/01 | 9,375 | $16.85 |
| 07/17/01 | 5,569 | $16.94 |
| 10/09/01 | 4,000 | $12.82 |

73.     From May 16, 2003 to February 12, 2004, Defendant Miskimens sold 14,284 shares with total proceeds of $586,154.04, a significant portion of which was obtained through the exercise of improperly backdated stock options.

74.     Upon information and belief, Miskimens is a citizen of the State of Washington.

**Defendant O' Neill**

75.     Defendant William O'Neill ("O'Neill") has been the Senior Vice President of

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 16 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

1 | Human Resources of the Company from April 2000 to December 2002.

2 |       76.    Upon information and belief, Defendant O'Neill received an option grant dated

3 | March 30, 2001 to purchase 30,000 shares of Getty Images common stock at the exercise price

4 | of $16.85.

5 |       77.    Upon information and belief, O'Neill is a citizen of the State of Washington.

6 | **Defendant Powell**

7 |       78.    Defendant Stephen M. Powell ("Powell") served as Getty Images' President of

8 | the Press and Editorial Division from 1998 to 2001.

9 |       79.    Upon information and belief, Defendant Powell received 90,000 backdated Getty

10 | Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 04/09/99 | 50,000 | $23.32 |
| 07/06/99 | 25,000 | $18.32 |
| 10/22/99 | 15,000 | $19.07 |

15 |       80.    Upon information and belief, Powell is a citizen of the State of Washington.

16 | **Defendant Roling**

17 |       81.    Defendant Christopher J. Roling ("Roling") served as the Company's Senior Vice

18 | President, Finance and Chief Financial Officer from January 1999 to May 2000.

19 |       82.    Upon information and belief, Defendant Roling received 28,000 backdated Getty

20 | Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 05/04/99 | 10,000 | $26.82 |
| 08/03/99 | 3,000 | $18.33 |
| 10/22/99 | 15,000 | $19.07 |

25 |       83.    Upon information and belief, Roling is a citizen of the State of Washington.

26 | **Defendant von Bargen**

27 |       84.    Defendant Sally von Bargen ("von Bargen") served as the Company's Senior

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 17 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   Vice President and Director of Marketing from February 2001 to December 2001 and as the

2   President of Creative Professional Division of Getty Images from July 1999 to February 2001.

3       85.   Upon information and belief, Defendant von Bargen received 135,000 backdated

4   Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 04/09/99 | 75,000 | $23.32 |
| 10/22/99 | 40,000 | $19.07 |
| 03/30/01 | 20,000 | $16.85 |

9       86.   Upon information and belief, von Bargen is a citizen of the State of Washington.

10  **Defendant Woodhouse**

11      87.   Defendant Warwick K. Woodhouse ("Woodhouse"), served as Getty Images'

12  Senior Vice President, Organizational Development from May 2003 to 2004.  He also served as

13  its Senior Vice President, Operations and Logistics from September 2000 to August 2002, as its

14  Senior Vice President, Planning from February 1998 to September 2000, and as the Group

15  Planning Director of Getty Communications Limited from October 1996 to February 1998.

16      88.   Upon information and belief, Defendant Woodhouse received 92,000 backdated

17  Getty Images stock options, as shown below:

| Purported grant date | # of options | Exercise price |
|---|---|---|
| 10/25/99 | 2,000 | $19.38 |
| 10/11/00 | 25,000 | $24.78 |
| 03/30/01 | 30,000 | $16.85 |
| 07/17/01 | 25,000 | $16.94 |
| 10/15/01 | 10,000 | $12.41 |

23      89.   From May 15, 2003 to August 31, 2004, Defendant Woodhouse sold 105,500

24  shares of Getty Images stock with total proceeds of $4,909,275.00, a significant portion of which

25  was obtained through the exercise of improperly backdated stock options.

26      90.   Upon information and belief, Woodhouse is a citizen of the State of Washington.

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 18 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1

**Individual Defendants**

2          91.     Collectively, defendants Getty, Klein, Sporborg, Bailey, Garb, Albers, Beyle,

3    Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von

4    Bargen and Woodhouse are referred to herein as the "Individual Defendants."

5                    **DUTIES OF THE INDIVIDUAL DEFENDANTS**

6          92.     By reason of their positions as officers and/or directors of the Company and

7    because of their ability to control the business and corporate affairs of the Company, the

8    Individual Defendants, particularly Getty, Klein and Compensation Committee members Bailey,

9    Garb and Sporborg, owed the Company and its shareholders the fiduciary obligations of good

10   faith, trust, loyalty and due care, and were and are required to use their utmost ability to control

11   and manage the Company in a fair, just, honest and equitable manner.   The Individual

12   Defendants were and are required to act in furtherance of the best interests of the Company and

13   its shareholders so as to benefit all shareholders equally and not in furtherance of their personal

14   interest or benefit.  Each director and officer of the Company owes to the Company and its

15   shareholders the fiduciary duty to exercise good faith and diligence in the administration of the

16   affairs of the Company and in the use and preservation of its property and assets, and the highest

17   obligations of fair dealing.

18         93.     Defendants Getty, Klein, Sporborg, Bailey and Garb, because of their positions of

19   control and authority as directors and/or officers of the Company, were able to and did, directly

20   and/or indirectly, exercise control over the wrongful acts complained of herein.

21         94.     To discharge their duties, Defendants Getty, Klein, Sporborg, Bailey and Garb, as

22   the officers and directors of the Company, were required to exercise reasonable and prudent

23   supervision over the management, policies, practices and controls of the Company.  By virtue of

24   such duties, the officers and directors of the Company were required to, among other things:

25         a.      exercise good faith in ensuring that the affairs of the Company were conducted in
                   an efficient, business-like manner so as to make it possible to provide the highest
26                 quality performance of its business;

27

AMENDED SHAREHOLDER VERIFIED               - 19 -          LAW OFFICES OF
DERIVATIVE COMPLAINT                                   CLIFFORD A. CANTOR, P.C.
(No. C 07-0317 JLR)                                        627 208th Ave. SE
                                                        Sammamish, WA 98074-7033
                                                   Tel: (425) 868-7813 ● Fax: (425) 868-7870

b.   exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c.   exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports, or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

d.   exercise good faith in ensuring that the Company's financial statements were prepared in accordance with GAAP; and

e.   refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

95.   The Individual Defendants, particularly Getty and Klein, and Audit Committee members Sporborg, Bailey and Garb, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information.  According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing and reporting financial data, a corporation must establish an internal accounting control structure.  Among other things, the Individual Defendants were required to:

a.   make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

b.   devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

1.   transactions are executed in accordance with management's general or specific authorization; and

2.   transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                              - 20 -
(No. C 07-0317 JLR)

## DUTIES AND RESPONSIBILITIES OF THE AUDIT, COMPENSATION, AND STOCK OPTION COMMITTEES

96. The standing committees of the Board include: (i) the Audit Committee; (ii) the Compensation Committee; and (iii) Stock Option Committee

97. These Committees set the policies which admittedly permitted the backdating of options to occur.

### *Compensation Committee*

98. The following directors served on the Compensation Committee of the Getty Images Board at certain times during the relevant period:

| Compensation Committee | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
| **Bailey** | M | M | M | M | M | M | M | M | M |
| **Garb** | M | C | C | C | C | C | C | C | C |
| **Sporborg** | M | M | M | M | M | M | M | M | M |
| M=Member; C=Chairman of Committee | | | | | | | | | |

99. According to the Company's Compensation Committee Charter, the Compensation Committee's responsibilities include, among other things:

a. Review and approve corporate goals and objectives relevant to the Chief Executive Officer's compensation, evaluate the Chief Executive Officer's performance in light of those goals and objectives, and, either as a committee or together with the other independent directors (as directed by the Board), determine and approve the Chief Executive Officer's compensation level based on this evaluation;

b. Either as a Committee or together with the other independent directors, as directed by the Board, determine and approve non-Chief Executive Officer Executive Officer compensation and incentive-compensation and equity-based plans that are subject to Board approval, including, but not limited to, base salaries, annual and other incentive awards, stock options and other equity-based compensation, deferred compensation, retirement benefits, special benefits, executive perquisites and employment/severance contracts;

c. Administer the [Option] Plan in a manner that is not inconsistent with the terms and provisions of such plan, construe all terms and provisions, conditions and

AMENDED SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 21 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

limitations to the [Option] Plan, and make all factual determinations required for the administration of the [Option]Plan; . . .

d.   Adopt and periodically review a comprehensive statement of compensation philosophy, strategy and principles for Executive Officers that has the support of management and the Board, and administer the Company's compensation program fairly and consistently within such principles; . . .

e.   The Chair (or other Committee member as designated by the Committee) shall meet annually with the Chief Executive Officer and any other members of management the Board and Committee members deem appropriate to discuss and review the performance criteria and compensation levels of key members of Executive Officers. . . .

f.   The Committee shall prepare a report to be included in the Company's annual proxy statement or Annual Report on Form 10-K, in accordance with applicable rules and regulations of the New York Stock Exchange, the Securities and Exchange Commission and other applicable regulatory bodies.

g.   The Committee also shall review and discuss with management the Company's executive compensation disclosure (including the Company's disclosures under "Compensation Discussion and Analysis") included in reports and registration statements with the Securities and Exchange Commission.

*Audit Committee*

100.   The following directors served on the Audit Committee of the Board at certain times during the relevant period:

| Audit Committee | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
| **Bailey** | M | M | M | M | M | M | M | M | M |
| **Garb** | M | M | M | M | M | | | M | M |
| **Sporborg** | C | C | C | C | C | C | M | | |
| M=Member; C=Chairman of Committee | | | | | | | | | |

101.   Getty Images' Audit Committee Charter provides that the Audit Committee shall, among other things:

a.   Discuss with management and the independent auditors the Company's annual audited financial statements and quarterly financial statements, including the Company's specific disclosures under "Management's Discussion and Analysis of

AMENDED SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT (No. C 07-0317 JLR)

- 22 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    Financial Condition and Results of Operations" in the Company's periodic filings
2    and the report of the independent auditor on any audited financial statements.

3    b.    Review with management and the independent auditor the type and presentation
           of information to be included in earnings press releases, and discuss any financial
4          information and earnings guidance provided to analysts, investors and rating
           agencies. The Committee's responsibility to discuss earnings releases, as well as
5          financial information and earnings guidance, may be done generally (i.e.,
           discussion of the types of information to be disclosed and the type of presentation
6          to be made). The Committee need not discuss in advance each earnings release or
7          each instance in which the Company may provide earnings guidance.

8    c.    Based on the review and discussions referred to in this Section, determine
9          whether to recommend to the Board that the Company's audited financial
           statements be included in the Company's Annual Report on Form 10-K for the
10         last fiscal year for filing with the Securities and Exchange Commission.

11   d.    Discuss with the independent auditors the matters required to be discussed by
12         Statement of Auditing Standards No. 61 ("SAS No. 61"), Communications with
           Audit Committees, SAS No. 89, Audit Adjustments, and SAS No. 90, Audit
13         Committee Communications, as each is amended from time to time, together with
14         any other matters as may be required or appropriate under applicable laws, rules
           and regulations.

15   e.    Review significant reserves, estimates and judgments by management, and the
16         processes that provide the basis for the CEO and CFO to sign their quarterly
17         certifications in the Company's SEC filings.

18   ***Stock Option Committee***

19   102.   The Stock Option Committee was formed in July 2001 and was later renamed the

20   Equity Compensation Committee.  From its formation until its dissolution in 2007, the Stock

21   Option Committee consisted of only one member, Defendant Klein.   The Stock Option

22   Committee was discontinued at the recommendation of the Special Committee in relation to its

23   investigation of the Company's stock option granting practices.  According to Getty Images'

24   proxy statements, the Stock Option Committee "[was] responsible for the administration of the

25   Amended and Restated Getty Images, Inc. 1998 Stock Incentive Plan for those employees who

26   are not executive officers of the Company."  The Committee may act only within limits set by

27   the Board of Directors.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                          - 23 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

# BACKGROUND

## The Stock Option Backdating Scandal

103.    Under accounting rules in effect prior to 2004, public companies in the United States were permitted to grant stock options to employees without recording an expense, as long as the option's strike price was at or above the market's price for the stock on the day the options were granted.  If the option granted was priced below the market price on the date granted (known as an in-the-money option grant), SEC regulations required that any publicly traded company recognize and record the difference as a compensation expense in its financial statements. *See, e.g.*, Accounting Principles Board Opinion No. 25 ("APB 25"), superseded in 2004 by FAS 123(R).[1]  Accounting rules also required that companies recognize the same compensation expense if in-the-money options were granted to non-employees.  Thus, while in-the-money stock options are more valuable to those to whom they are granted, the additional expenses, if disclosed, reduce the total amount of net income reported to shareholders of a publicly traded company.

104.    In addition, pursuant to Section 162(m), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's most highly compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors; (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation; and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were

---

[1] Pursuant to APB 25, the applicable GAAP provision at the time of the stock option grants enumerated herein, if the market price on the date of grant exceeds the exercise price of the options, the Company must recognize the difference as an expense.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 24 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    in fact satisfied.

2        105.    Since the date of *The Wall Street Journal* article which first revealed the unlawful

3    practice of backdating stock options, more than 220 companies have reported internal and/or

4    governmental investigations of their backdating practices.  Additional research by Professor Lie

5    suggests that between 1996 and 2005, 18.9% of unscheduled option grants to top executives

6    were backdated or manipulated by nearly one-third of the companies investigated.

7        106.    As the public scrutiny has intensified, backdating has been revealed not only as a

8    practice to maximize the grant recipients' gain while concealing company expenses, but also as a

9    tax avoidance vehicle for some executives.  Reporting on an analysis written by an economist at

10    the SEC, the *San Jose Mercury News* reported, "[i]n a new wrinkle in the scandal over

11    backdating stock options, an analyst has found evidence that some executives manipulated the

12    exercise dates of their options in order to cheat on their taxes."  Marcy Gordon, SEC: Backdating

13    Done to Avoid Paying More Taxes, *San Jose Mercury News*, December 13, 2006, *available at*

14    http://www.mercurynews.com/search/ci_4831931.

15        107.    Indeed, like the stock option grants examined by *The Wall Street Journal*, the

16    pattern of option grants identified at Getty Images is more than randomly fortuitous, and the

17    more likely reason for the extraordinary pattern is that the stock options were improperly

18    backdated.

19                            **Getty Images' Stock Option Plans**

20        108.    During the relevant period that defendants engaged in their secret scheme to

21    backdate stock options, Getty Images had one stock option plan in effect, the 1998 Stock

22    Incentive Plan (the "1998 Plan"), which has been amended several times since its adoption.

23        109.    Under the 1998 Plan, those eligible to receive stock option awards are "officers or

24    other key employees or consultants of the Company or a Subsidiary with the potential to

25    contribute to the future success of the Company or its Subsidiaries."  Each option grant was

26    evidenced by a stock option agreement between the Company and the employee or consultant to

27    whom such option was granted.

AMERICAN SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                          - 25 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

110.    The Company's proxy statements also stated that the 1998 Plan was administered by the Compensation Committee.

111.    The delegation of the Compensation Committee's authority to administer the 1998 Plan is permitted under the 1998 Plan but is limited as follows:

> The Committee may, but need not, from time to time delegate some or all of its authority under the Plan to an Administrator consisting of one or more members of the Committee or of one or more officers of the Company; provided, however, that the Committee may not delegate its authority (i) to grant Awards to Eligible Individuals (A) who are subject on the date of the grant to the reporting rules under Section 16(a) of the Exchange Act, (B) who are Section 162(m) Participants or (C) who are officers of the Company who are delegated authority by the Committee hereunder, or (ii) under Sections 3(b) and 17 of the Plan . . . . Nothing in the Plan shall be construed as obligating the Committee to delegate authority to an Administrator, and the Committee may at any time rescind the authority delegated to an Administrator appointed hereunder or appoint a new Administrator.

112.    Further, the exercise price of option grants under the 1998 Plan was determined by the Compensation Committee.  Under the 1998 Plan, the exercise price of options must be "no less than 100% of the Fair Market Value per share on the date of grant," where fair market value is defined as "the average of the high and low prices of the Common Stock on such exchange or such quotation on the date set for valuation."

113.    According to the Company's proxy statements, at all times relevant hereto the Compensation Committee "review[ed] the compensation of the senior officers of the Company, including executive bonus plan allocations, and [was] responsible for the administration of the Amended and Restated Getty Images, Inc. 1998 Stock Incentive Plan for the executive officers of the Company."

## SUBSTANTIVE ALLEGATIONS

### Backdating of Getty Images Stock Option Grants

114.    As discussed below, 21 out of 25 discretionary grant dates from April 1999 to February 2002 were backdated, and the pattern of grants was more than fortuitous – eight were made at or near the lowest price of the fiscal year, and fourteen were made at or near the lowest

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 26 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    price of the fiscal quarter.

2    115.    Merrill Lynch & Co., Inc. ("Merrill Lynch") published an analysis of options
3    grants made at various companies in a report dated May 22, 2006 as further evidence that the
4    returns enjoyed by options grantees at many companies were not by mere chance.  The report
5    analyzes the twenty day performance of each option grant reported in a company's proxy
6    statements during the relevant backdating period.  The analysis also calculates the annualized
7    return of the option grants at twenty days after the grant and compares that annualized return
8    with the company's overall annual return.

9    116.    An application of the Merrill Lynch analysis for all of the stock grants disclosed
10   in proxy statements from 1999 to 2001 further indicates that the grants were backdated as the
11   vast discrepancies between the annualized management and annualized investors returns can
12   only be explained by a practice of backdating.  For example, the average annualized return to
13   management on the option grants identified in the relevant proxy statements for calendar years
14   1999 to 2001 is 317%, as compared to 38.62% average annualized return to investors – a
15   difference of 278.37%.

16   117.    From 1999 to 2006, the Compensation Committee and certain directors (Getty,
17   Klein, Bailey, Garb and Sporborg) knowingly and deliberately violated the terms of the 1998
18   Plan, APB 25 and Section 162(m) by knowingly and deliberately backdating grants of stock
19   options to make it appear as though the grants were made on dates when the market price of
20   Getty Images stock was lower than the market price on the actual grant dates, thereby unduly
21   benefiting the recipients of the backdated options.  Defendants Getty, Klein, Bailey, Garb and
22   Sporborg knew that the publicly reported grant dates and statements that the Company followed
23   APB 25 and granted options with exercise prices equal to the fair market value of Getty Images
24   stock on the date of grant were false because the grants were in fact backdated.  Defendants
25   Getty, Klein, Bailey, Garb and Sporborg knowingly and deliberately approved the backdating
26   scheme with knowledge of its consequences, *e.g.*, its effects on Getty Images' financial
27   statements, especially because Bailey, Garb and Sporborg were also on the Audit Committee and

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    reviewed and oversaw the filing of Getty Images' financial results.

2        118.    Between 1999 and 2006, the defendants repeated in proxy statements that the

3    stock option grants made during that period carried an exercise price that was equal the fair

4    market value on the date of grant.  However, until 2006, the defendants concealed that the stock

5    option grants were repeatedly and consciously backdated to ensure that the strike price

6    associated with the option grants was below fair market value.  Upon information and belief, the

7    Board members and the Compensation Committee members, including defendants Getty, Klein,

8    Bailey, Garb and Sporborg, who issued the grants would review historical stock prices before

9    issuing stock options to select a grant date when the stock prices was significantly below the

10   current market price.  They would then falsify the relevant documents to make it appear as if the

11   stock options were granted on the earlier date.

12       119.    As a result, the executive to whom the options were granted could realize the gain

13   observed between the historical and actual grant date while the Company's records would appear

14   to show no difference between the option price and the market price on the purported date of the

15   grant, thereby avoiding both the reporting requirement and the additional compensation expense.

16       120.    In addition, in order to maximize remuneration to its officers and employees, and

17   to attract non-employee executives to the Company's ranks without impacting its reported

18   income, the defendants engaged in a practice of backdating the issue date of stock options to

19   certain key personnel and other Getty Images employees as admitted in the Company's April 16,

20   2007 press release and financial statements filed on June 13, 2007.

21       121.    According to the Company's Form 10-K for fiscal year 2006 filed with the SEC

22   on June 13, 2007 (the "2006 Annual Report"), from 1996 to 1998, the Compensation Committee

23   had the authority to, and did, grant options to employees, officers and directors.

24       122.    Then, from August 1998 through 2001, the Compensation Committee continued

25   to grant options to executive officers and created option "pools" from which defendant Klein and

26   unnamed senior vice presidents were authorized to grant options to employees and non-executive

27   officers.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 28 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

123.   According to the 2006 Annual Report, these pools were used by the executive officers to grant options in connection with the hiring and promotion of employees or as incentive awards.

124.   The April 16, 2007 press release and the 2006 Annual Report stated that a total of 7,102 option grants and 1,062 RSUs grants were made on 465 occasions during the Relevant Period, as follows:

- "Pool options" in which "pools" of options were approved by the Compensation Committee for later grant to employees by executive officers (2,277 grants).

- "Acquisition option grants" in which options were granted by the Board of Directors or Compensation Committee to employees and officers in connection with the Company's acquisition of other companies and in which outstanding options held by employees of acquired companies were exchanged for Getty Images options at pre-determined conversion ratios (1,464 grants).

- "Other option grants" which cover all remaining stock option grants during the Relevant Period (3,361 grants).

- "RSU grants" in which RSUs were granted by the Equity Compensation Committee, the Compensation Committee and the Board of Directors to employees, officers and directors (1,062 grants).

**Backdating of Stock Option Grants**

April 9, 1999 Grants

125.   The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted.  For the purported April 9, 1999 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

126.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant date and knowingly used hindsight to select a favorable date.  Defendants Bailey, Garb and

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 29 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

2    127.   Defendants Bailey, Garb and Sporborg granted Powell and von Bargen stock

3    options dated April 9, 1999, knowing that April 9, 1999 was not the date they actually approved

4    the grants.  The April 9, 1999 grants were approved by Bailey, Garb and Sporborg on a later

5    date, occurring between the next trading day on April 10, 1999 and May 5, 1999, the date the

6    grant was disclosed in a Form 4.  Moreover, Defendants Getty and Klein knowingly approved

7    and participated in the backdating of the April 9, 1999 grant because of their positions and

8    knowledge of the Company as they were intimately involved in its management.  Specifically,

9    Getty and Klein are the co-founders of Getty Images, and Klein is the Chief Executive Officer of

10   Getty Images.

11   128.   Defendants Bailey, Garb and Sporborg, with the knowledge of Klein and Getty,

12   granted stock options to defendants Powell and von Bargen purportedly on April 9, 1999.  The

13   grant was disclosed in Form 4s almost a month later, by which point, Getty Images average

14   high/low stock price rose $3.505, or 15.04%, following the purported grant date:[2]



[2] All charts in the Complaint are measured using the mean of the highest and lowest prices.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 30 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 04/09/99 | Powell | $23.32 | 50,000 |
| | von Bargen | $23.32 | 75,000 |

May 4, 1999 Grants

129.   The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted.  For the May 4, 1999 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

130.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant date and knowingly used hindsight to select a favorable date.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

131.   Defendants Bailey, Garb and Sporborg granted Evans-Lombe and Roling stock options purportedly on May 4, 1999, knowing that May 4, 1999 was not the date that they approved the grant.  Moreover, Defendants Getty and Klein approved and participated in the backdating of the May 4, 1999 grants. Defendants Getty, Klein Bailey, Garb and Sporborg knew

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 31 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

that the May 4, 1999 grant was approved by Bailey, Garb and Sporborg on a later date, occurring the next trading day on May 5, 1999 or May 6, 1999 when Getty Images average high/low stock price rose $2.34, or 8.73%, following the purported grant date:





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 32 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options[3] |
|---|---|---|---|
| 05/04/99 | Evans-Lombe | $26.82 | at least 30,000 |
| | Roling | $26.82 | 10,000 |

July 6, 1999, July 27, 1999, and August 3, 1999 Grants

132.    The Compensation Committee had the authority to choose the dates and, in fact, did choose the dates on which these stock options were granted.  For the purported July 6, 1999, July 27, 1999 and August 3, 1999 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

133.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant dates and knowingly used hindsight to select dates when Getty Images' stock was at quarterly or yearly lows.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

134.    Defendants Bailey, Garb and Sporborg granted Powell, Evans-Lombe, Ferguson, Gurke and Roling stock options dated July 6, 1999, July 27, 1999 and August 3, 1999, knowing that these grants were actually approved on the later date.  The actual grant date of the July 6, 1999 grant is estimated to be between July 8, 1999 and the end of the year on December 31, 1999, and the actual grant dates of the July 27, 1999 and August 3, 1999 grants are estimated to be between the next trading day of those grants and December 31, 1999.  Moreover, Defendants Getty and Klein knowingly approved and participated in the backdating of the July 6, 1999, July

---

[3] Where the total number of options is unknown, *i.e.* where the phrase "at least" is utilized, the stock option grant did not appear in any proxy statements filed by the Company but was first disclosed in Form 4 filings, which only included the number of options pursuant to the grant that were exercised and left unexercised on the transaction date.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 33 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

27, 1999 and August 3, 1999 grants because of their positions and knowledge of the Company as they were intimately involved in its management.

135.    Defendants Bailey, Garb and Sporborg, with the knowledge of Klein and Getty, granted stock options to defendants Powell, Evans-Lombe, Ferguson, Gurke and Roling backdated to July 6, 1999, July 27, 1999 and August 3, 1999, which coincided with Getty Images' lowest stock prices of the fiscal quarter and year as shown below:





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 34 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 07/06/99 | Powell | $18.32 | 25,000 |
| 07/27/99 | Evans-Lombe | $18.44 | at least 30,000 |
| 08/03/99 | Ferguson | $18.33 | at least 3,500 |
| | Gurke | $18.33 | at least 3,000 |
| | Roling | $18.33 | 15,000 |

October 22, 1999 and October 25, 1999 Grants

136.    The Compensation Committee had the authority to choose the dates and, in fact, did choose the dates on which these stock options were granted.  For the purported October 22, 1999 and October 25, 1999 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

137.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant dates and knowingly used hindsight to select dates when Getty Images' stock was at quarterly or yearly lows.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

138.    Defendants Bailey, Garb and Sporborg granted stock options to Klein, Getty, Roling, Powell, von Bargen, Evans-Lombe, Ferguson, Gurke and Woodhouse that were backdated to October 22, 1999 and October 25, 1999 with the knowledge that October 22, 1999 and October 25, 1999 were not the dates that they approved the grants.  Furthermore, Defendants Klein and Getty also knew that the grants were backdated.  The actual grant dates of the October 22, 1999 and October 25, 1999 grants are between the next trading day and December 31, 1999.

139.    Defendants Bailey, Garb and Sporborg, with the participation and knowledge of Klein and Getty, granted stock options to defendants Klein, Getty, Roling, Powell, von Bargen, Evans-Lombe, Ferguson, Gurke and Woodhouse backdated to October 22, 1999 and October 25,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 35 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1    1999 when Getty Images' stock price was at or near quarterly and yearly lows, as shown below:





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 10/22/99 | Klein | $19.07 | 15,000 |
| | Getty | $19.07 | 15,000 |
| | Roling | $19.07 | 15,000 |
| | Powell | $19.07 | 15,000 |
| | von Bargen | $19.07 | 40,000 |
| | Evans-Lombe | $19.07 | at least 15,000 |
| | Ferguson | $19.07 | at least 7,500 |
| | Gurke | $19.07 | at least 7,500 |
| 10/25/99 | Woodhouse | $19.38 | at least 2,000 |

February 1, 2000 Grants

140.    The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted. For the February 1, 2000 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

141.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant date and knowingly used hindsight to select a favorable date. Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

142.    Defendants Bailey, Garb and Sporborg granted Ferguson and Gurke stock options purportedly on February 1, 2000, knowing that February 1, 2000 was not the date that they approved the grants. Moreover, Defendants Getty and Klein knowingly approved and participated in the backdating of the February 1, 2000 grants. Defendants Getty, Klein Bailey, Garb and Sporborg knew that the February 1, 2000 grants were approved by Bailey, Garb and Sporborg on a later date, occurring between February 2, 2000 and March 3, 2006 when the Company's stock price was at the highest price of the quarter.

143.    In fact, in a little over a month, Getty Images average high/low stock price rose

$23.185, or 60%, by March 3, 2006 subsequent to the purported grant date. Furthermore, the purported grant date coincides with one of Getty Images' lowest stock price of the entire quarter, as shown below:





| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 02/01/00 | Ferguson | $38.625 | at least 400 |
| | Gurke | $38.625 | at least 400 |

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 38 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   April 28, 2000 Grants

2          144.    The Compensation Committee had the authority to choose the date and, in fact,

3   did choose the date on which these stock options were granted.  For the April 28, 2000 stock

4   option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members,

5   had the authority to administer the stock option plans and grant stock options thereunder.

6          145.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans

7   required that stock options be granted at not less than fair market value on the date of grant.

8   Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant

9   date and knowingly used hindsight to select a favorable date.  Defendants Bailey, Garb and

10  Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

11         146.    Defendants Bailey, Garb and Sporborg granted stock options to Getty and Klein

12  that were backdated to April 28, 2000.  Bailey, Garb and Sporborg knew that April 28, 2000 was

13  not the date that they approved the grant and thus approved the backdating of the April 28, 2000

14  grants.  Defendants Klein and Getty, because of their positions with the Company, also knew that

15  the April 28, 2000 grant was granted at a later date – some time between the next trading day on

16  May 1, 2000 and May 23, 2000, the day before the next grant date.

17         147.    Moreover, Getty and Klein, the co-founders of the Company, were each granted

18  at least 400,000 stock options purportedly dated on April 28, 2000 when Getty Images average

19  high/low stock price rose $4.685, or 15.45%, in the 5 trading days following the purported grant

20  date. Furthermore, the April 28, 2000 grants were dated near the lowest stock price of the fiscal

21  quarter, as shown below:

22

23

24

25

26

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)                            - 39 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870





| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 04/28/00 | Getty | $30.32 | at least 400,000 |
| | Klein | $30.32 | at least 400,000 |

May 24, 2000 and May 30, 2000 Grants

148.   The Compensation Committee had the authority to choose the dates and, in fact, did choose the dates on which these stock options were granted.  For the purported May 24, 2000 and May 30, 2000 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 40 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    Committee members, had the authority to administer the stock option plans and grant stock
2    options thereunder.

3         149.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans
4    required that stock options be granted at not less than fair market value on the date of grant.
5    Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant
6    dates and knowingly used hindsight to select dates when Getty Images' stock was at quarterly or
7    yearly lows.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date
8    with a lower price violated the 1998 Plan.

9         150.   Defendants Bailey, Garb and Sporborg granted stock options to Klein, Getty and
10   Miskimens that were backdated to May 24, 2000 and May 30, 2000 with the knowledge that
11   May 24, 2000 and May 30, 2000 were not the dates that they approved the grants.  Furthermore,
12   Defendants Klein and Getty also knew that the grants were backdated.  The actual grant date of
13   the May 24, 2000 grants is between May 25, 2000 and June 20, 2000, the date that the grant was
14   disclosed in a Form 4, by which point the Getty Images' stock price had increased by $8.875, or
15   31%.  The actual grant date of the May 30, 2000 grant to Miskimens is between the next trading
16   day and December 31, 1999.

17        151.   Defendants Bailey, Garb and Sporborg, with the participation and knowledge of
18   Klein and Getty, granted stock options to defendants Klein, Getty and Miskimens backdated to
19   May 24, 2000 and May 30, 2000  when Getty Images' stock price was at or near a quarterly and
20   yearly low, as shown below:

21
22
23
24
25
26
27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                          - 41 -
(No. C 07-0317 JLR)

1



2

3

4

5

6

7

8

9

10

11



12

13

14

15

16

17

18

19

20

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 05/24/00 | Klein | $28.63 | 400,000 |
| | Getty | $28.63 | 400,000 |
| 05/30/00 | Miskimens | $29.10 | at least 10,000 |

21

22

23

24 <u>August 28, 2000 Grant</u>

25      152.    The Compensation Committee had the authority to choose the date and, in fact,

26 did choose the date on which these stock options were granted.  For the August 28, 2000 stock

27 option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members,

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

1 | had the authority to administer the stock option plans and grant stock options thereunder.

2 |      153.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans

3 | required that stock options be granted at not less than fair market value on the date of grant.

4 | Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant

5 | date and knowingly used hindsight to select a favorable date.  Defendants Bailey, Garb and

6 | Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

7 |      154.    Defendants Bailey, Garb and Sporborg granted stock options to defendant Albers

8 | purportedly on August 28, 2000.  However, Bailey, Garb and Sporborg who approved the grant

9 | knew that August 28, 2000 was not the actual date of their approval of the grant, which actually

10 | took place at a later date — sometime between the next trading day on August 30, 2000 and

11 | September 19, 2000.  Because of their involvement in the running of the Company, defendants

12 | Klein and Getty also knew that the August 28, 2000 grant to Albers was backdated.

13 |      155.    Defendants Klein, Getty, Bailey, Garb and Sporborg approved the stock options

14 | purportedly granted to Albers on August 28, 2000 when Getty Images' average high/low stock

15 | price had dropped significantly before August 28, 2000 and rose $2.245, or 5.6%, in the ten

16 | trading days subsequent to the purported grant:



AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 43 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870



| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 08/28/00 | Albers | $40.41 | 25,000 |

October 11, 2000 Grants

156.   The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted.  For the purported October 11, 2000 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

157.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant date and knowingly used hindsight to select dates when Getty Images' stock was at a quarterly or yearly low.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

158.   Defendants Bailey, Garb and Sporborg, with the participation and knowledge of Klein and Getty, granted stock options to Woodhouse and Albers dated October 11, 2000 knowing that October 11, 2000 was not the date that they approved the grants.  The actual grant

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 44 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

date of the October 11, 2000 grants is between October 13, 2000 and December 31, 2000.

159.   Defendants Woodhouse and Albers received stock option grants purportedly dated on October 11, 2000 when the Company's average high/low price dropped significantly before the purported grant date and rose approximately $7.30, or 29%, in just 20 trading days.  In addition, the purported October 11, 2000 option grant was dated to coincide with one of Getty Images' lowest stock prices of the entire fiscal quarter and year, as demonstrated in the following charts:





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 45 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 10/11/00 | Woodhouse | $24.78 | at least 25,000 |
| | Albers | $24.78 | 25,000 |

March 30, 2001 Grants

160.   The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted.  For the purported March 30, 2001 stock option grants, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

161.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on a date after the reported grant date and knowingly used hindsight to select dates when Getty Images' stock was at a quarterly low.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

162.   Defendants Bailey, Garb and Sporborg, with the knowledge and participation of Klein and Getty, granted stock option to defendants Klein, Getty, von Bargen, Huebner, Albers, Beyle, Evans-Lombe, Ferguson, Gurke, Miskimens, O'Neill and Woodhouse backdated to March 30, 2001, which coincided with the Company's second lowest stock price of the first fiscal quarter of fiscal 2001, as demonstrated in the charts below.  Notably, these grants were recorded in Form 4s filed with the SEC on April 6, 2001 (after the end of the fiscal quarter) with a grant date of March 22, 2001, which is the date of the lowest stock price of the fiscal quarter, and then was later changed in Amended Form 4s filed with the SEC in late-2002.  As such, the actual grant date of the March 30, 2001 stock option some time occurred before April 6, 2001.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 46 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 47 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 03/30/01 | Klein | $16.85 | 50,000 |
| | Getty | $16.85 | 50,000 |
| | von Bargen | $16.85 | 20,000 |
| | Huebner | $16.85 | 35,000 |
| | Albers | $16.85 | 25,000 |
| | Beyle | $16.85 | at least 18,500 |
| | Evans-Lombe | $16.85 | at least 20,000 |
| | Ferguson | $16.85 | at least 10,000 |
| | Gurke | $16.85 | at least 15,000 |
| | Miskimens | $16.85 | at least 9,375 |
| | O'Neill | $16.85 | at least 30,000 |
| | Woodhouse | $16.85 | at least 30,000 |

May 7, 2001 and June 26, 2001 Grants to Klein

163.    The Compensation Committee had the authority to choose the dates and, in fact, did choose the dates on which these stock options were granted. For the purported May 7, 2001 and June 26, 2001 stock option grants to Klein, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

164.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant dates and knowingly used hindsight to select favorable dates. Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

165.    Defendants Bailey, Garb and Sporborg granted stock options to defendant Klein purportedly on May 7, 2001 and June 26, 2001. However, Bailey, Garb and Sporborg who approved the grant, along with Klein and Getty, knew that May 7, 2001 and June 26, 2001 were not the actual dates of their approval of the grants, which actually took place at later dates. The actual grant date of the May 7, 2001 grant is estimated to be between May 18, 2001 and June 25,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 48 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

2001, the day before the next grant date, and the actual grant date of the June 26, 2001 grant is estimated to be between June 29, 2001 and July 9, 2001.

166.   The May 7, 2001 and June 26, 2001 grants to Klein coincided with Getty Images' historical low prices and were dated when the stock price increased significantly afterwards. The purported May 7, 2001 grant was dated when Getty Images average high/low stock price rose $6.785, or 26.68%, in just over 20 trading days. The June 26, 2001 grant was backdated to when Getty Images' average high/low stock price dropped significantly before June 26, 2001 and rose $1.03, or 4.2%, in less than 10 trading days following the purported grant date.





AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 49 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 05/07/01 | Klein | $25.43 | 232,000 |
| 06/26/01 | Klein | $25.43 | 170,000 |

July 17, 2001 and July 23, 2001 Grants

167.   The Compensation Committee had the authority to choose the dates and, in fact, did choose the dates on which these stock options were granted.  For the purported July 17, 2001 and July 23, 2001 stock option grants to Beyle, Miskimens, Woodhouse and Sporborg, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

168.   Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant dates and knowingly used hindsight to select favorable dates.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

169.   Defendants Bailey, Garb and Sporborg granted stock options to defendant Klein purportedly on July 17, 2001 and July 23, 2001.  However, Bailey, Garb and Sporborg who approved the grants, along with Klein and Getty, knew that July 17, 2001 and July 23, 2001 were not the actual dates of their approval of the grants, which actually took place at later dates.  The actual grant date of the July 17, 2001 grant is estimated to be between July 27, 2001 and August 8, 2001, and the actual grant date of the July 23, 2001 grant is estimated to be between July 26, 2001 and September 4, 2001.

170.   The stock options purportedly granted on July 17, 2001 and July 23, 2001 were dated to coincide with historically low stock prices.  The Company's average high/low stock price dropped significantly before the purported grant dates and rose approximately $3.50, or 8.5%, within 10 trading days, as demonstrated in the chart below.  Remarkably, the July 17, 2001 and July 23, 2001 grants were purportedly made subsequent to the July 10, 2001 earnings release, which reported below expected earnings and which, as expected, caused the stock price

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 50 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

to drop significantly, as demonstrated below:





| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 07/17/01 | Beyle | $16.94 | at least 25,000 |
| | Miskimens | $16.94 | at least 5,569 |
| | Woodhouse | $16.94 | at least 25,000 |
| 07/23/01 | Sporborg | $15.80 | at least 8,333 |

October 9, 2001 and October 15, 2001 Grants

171.   The Compensation Committee had the authority to choose the dates and, in fact,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 51 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  ●  Fax: (425) 868-7870

1  did choose the dates on which these stock options were granted.  For the purported October 9,
2  2001 and October 15, 2001 stock option grants, Defendants Bailey, Garb and Sporborg, as
3  Compensation Committee members, had the authority to administer the stock option plans and
4  grant stock options thereunder.

5  172.  Defendants Bailey, Garb and Sporborg were aware that the stock option plans
6  required that stock options be granted at not less than fair market value on the date of grant.
7  Defendants Bailey, Garb and Sporborg approved these grants on dates after the reported grant
8  dates and knowingly used hindsight to select dates when Getty Images' stock was at a quarterly
9  low.  Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a
10  lower price violated the 1998 Plan.

11  173.  Compensation Committee members Bailey, Garb and Sporborg granted stock
12  options to defendants Ferguson, Gurke, Miskimens, Klein, Getty, Huebner, Albers, Beyle,
13  Blackwell, Evans-Lombe and Woodhouse purportedly on October 9, 2001 and October 15, 2001,
14  which Bailey, Garb and Sporborg, as well as Klein and Getty, knew were not the actual grant
15  dates.  The actual dates of the Compensation Committee's approval of the October 9, 2001 and
16  October 15, 2001 grants occurred between October 24, 2001 and December 31, 2001.

17  174.  Defendants Bailey, Garb and Sporborg, with the participation and knowledge of
18  Klein and Getty, backdated the stock option grants purportedly dated October 9, 2001 and
19  October 15, 2001 to coincide with Getty Images' lowest stock prices of the fourth fiscal quarter
20  of 2001, as demonstrated in the chart below:

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)    - 52 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27





LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 10/09/01 | Ferguson | $12.82 | at least 10,000 |
| | Gurke | $12.82 | at least 10,000 |
| | Miskimens | $12.82 | at least 4,000 |
| 10/15/01 | Klein | $12.41 | 50,000 |
| | Getty | $12.41 | 50,000 |
| | Huebner | $12.41 | 20,000 |
| | Albers | $12.41 | 20,000 |
| | Beyle | $12.41 | at least 20,000 |
| | Blackwell | $12.41 | at least 10,000 |
| | Evans-Lombe | $12.41 | at least 20,000 |
| | Woodhouse | $12.41 | at least 10,000 |

February 5, 2002 Grant

175.    The Compensation Committee had the authority to choose the date and, in fact, did choose the date on which these stock options were granted. For the purported February 5, 2002, Defendants Bailey, Garb and Sporborg, as Compensation Committee members, had the authority to administer the stock option plans and grant stock options thereunder.

176.    Defendants Bailey, Garb and Sporborg were aware that the stock option plans required that stock options be granted at not less than fair market value on the date of grant. Defendants Bailey, Garb and Sporborg, with the knowledge and participation of Klein and Getty, approved these grants on a date after the reported grant date and knowingly used hindsight to select dates when Getty Images' stock was at a quarterly low. Defendants Bailey, Garb and Sporborg knew that backdating option grants to a date with a lower price violated the 1998 Plan.

177.    Defendants Bailey, Garb and Sporborg, as Compensation Committee members, granted Defendant Evans-Lombe stock options dated February 5, 2002, knowing that it was not the date they actually approved the grant. With the knowledge Klein and Getty, Defendants Bailey, Garb and Sporborg actually approved the February 5, 2002 grant on a later date, occurring between February 7, 2002 and the end of the fiscal year. The February 5, 2002 grant to Evans-Lombe coincided with Getty Images' lowest stock price of the first fiscal quarter of

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 54 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1  2002, as demonstrated in the chart below:





| Purported Grant Date | Name | Exercise Price | Number of Options |
|---|---|---|---|
| 02/05/02 | Evans-Lombe | $19.43 | at least 25,000 |

178.   Each and every one of the aforementioned stock option grants were dated just before a significant increase in Getty Images' stock price and/or at or near Getty Images' lowest closing stock price of the pertinent fiscal year.  The reason for the extraordinary pattern set forth in the preceding paragraphs is that the purported grant dates set forth therein were not the actual

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 55 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   dates on which the stock option grants were made.  Rather, at the behest of the option recipients
2   (Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner,
3   Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse), Defendants Bailey, Garb and
4   Sporborg as well as Klein and Getty improperly backdated the stock option grants to make it
5   appear as though the grants were made on dates when the market price of Getty Images stock
6   was lower than the market price on the actual grant dates.  This improper backdating, which
7   violated the terms of the 1998 Plan, resulted in option grants with lower exercise prices, which
8   improperly increased the value of the options to defendants Getty, Klein, Sporborg, Albers,
9   Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell,
10  Roling, von Bargen and Woodhouse and improperly reduced the amounts they had to pay the
11  Company upon exercise of the options.

12         179.   In addition, prior to the enactment of the Sarbanes-Oxley Act of 2002 ("SOX"),
13  defendants Klein, Getty, Bailey, Garb and Sporborg were able to engage in backdating of option
14  grants with relative ease because under federal law they were only required to report option
15  grants to the SEC once a year.

16         180.   Pursuant to SOX, beginning on August 29, 2002, executives and directors were
17  required to report option grants to the SEC within two days of the grant.  With this new reporting
18  requirement in place, the pattern of backdating options seen previously from 1999 through 2002
19  came to an end.  As discussed *infra* and as admitted by the Company in its April 16, 2007 press
20  release, most of the backdated grants at Getty Images "were made before 2002."  Indeed, the last
21  backdated stock option grant at Getty Images was February 5, 2002, six months before the
22  reporting requirements of SOX became effective.

23         181.   Indeed, 21 of the 25 discretionary pre-SOX grants made since April 1999
24  coincided with historically low closing prices.  Specifically, 8 of the 25 grants were dated at or
25  near yearly lows, and 14 of the 25 grants were dated at or near quarterly lows.  The odds of
26  hitting that many quarterly and yearly lows are astronomical and thus cannot be the result of
27  "luck."

AMENDED SHAREHOLDER VERIFIED                              - 56 -
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

182.    There were five remaining option grants made during the relevant period that were non-discretionary option grants and thus are not claimed to have been backdated.  The five option grants dated October 4, 1999, April 6, 2000, October 9, 2000, November 27, 2000 and November 12, 2001 were awarded to employees as new hire grants and are dated when those individuals began employment with Getty Images.

**Merrill Lynch Analysis**

183.    The subject of options backdating has been the focus of numerous financial analysts and experts.  One reputable source, Merrill Lynch, has set forth an analytical framework to determine whether options were backdated.  The Merrill Lynch analysis is set forth in a May 22, 2006 report.  The analysis analyzes the twenty day performance of each option grant reported in a company's proxy statements during the relevant backdating period.  The analysis also calculates the annualized return of the option grants at twenty days after the grant and compares that annualized return with the company's overall annual return.

184.    Accordingly, Plaintiff analyzed stock option grants made from 1999 to 2001 that were disclosed in Getty Images' proxy statements using the same analysis as Merrill Lynch. Backdating is indicated under the Merrill Lynch analysis.[4]

185.    Applying the Merrill Lynch analysis, the following result occurs: annualized investor returns were 176.26% in 1999, -34.03% in 2000, and -26.37% in 2001.  Next, a comparison of the twenty day and annualized returns to management on the subject grants was undertaken.

186.    Applying the Merrill Lynch analysis for the option grants in 1999, the average twenty day return is 25.57%, or 460.31% annualized, as compared to 176.26% annualized return to investors in 1999 – a difference of 280.05%.

---

[4] As disclosed in the pertinent proxy statements, there were no options granted to any of the top officers during the year 2002.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 57 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

187.    Applying the Merrill Lynch analysis for the option grants in 2000, the average twenty day return is 10.22%, or 183.91% annualized, as compared to -34.03% annualized return to investors in 2000 – a difference of 217.94%.

188.    Applying the Merrill Lynch analysis for the option grants in 2001, the average twenty day return is 17.04%, or 306.76% annualized, as compared to -26.37% annualized return to investors in 2001 – a difference of 333.13%.

189.    The average annualized return to management on the option grants identified in the relevant proxy statements for calendar years 1999 to 2001 is 317%, as compared to 38.62% average annualized return to investors – a difference of 278.37%.

190.    The vast discrepancies between the annualized management and annualized investors' returns demonstrate that Getty Images stock options were opportunistically granted to Company insiders in order to provide them with greater financial gains on their Getty Images stock options than were achieved in the open market. Such a dramatically beneficial pattern of option grant dates can only reasonably be explained by backdating.

### Getty Images' Admission of Backdating and the Internal Investigation

191.    On April 16, 2007, Getty Images issued a press releasing announcing the completion of its Special Committee investigation and ***admitting that the Special Committee "identified certain awards for which grant dates were selected retroactively."***

> Getty Images, Inc. (NYSE: GYI) (the "Company" or "Getty Images"), the world's leading creator and distributor of visual content, today announced that an independent special committee of its board of directors (the "Special Committee") has completed its internal investigation of the Company's equity compensation grant practices.

> As previously announced on November 9, 2006, the Special Committee was established by Getty Images' Board of Directors to conduct an independent investigation relating to the Company's equity compensation grant practices and related accounting for equity compensation grants. The Special Committee consists of two independent members of Getty Images' Board of Directors, Alan G. Spoon and Michael A. Stein, the chair of the Audit Committee. The Special Committee was assisted in the investigation by independent outside legal counsel Orrick, Herrington & Sutcliffe LLP.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 58 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

Together with its independent counsel, the Special Committee conducted an extensive review of equity compensation grant practices and awards made by the Company, between July 14, 1994 and November 1, 2006 (the "Relevant Period"), which covered 7,102 stock option grants and 1,062 restricted stock unit ("RSU") grants made on 465 occasions. During the investigation, numerous documents were reviewed, and extensive interviews of current and former employees of the Company and other individuals were conducted by the Special Committee's independent counsel.

As also previously announced on November 9, 2006, the Securities and Exchange Commission (the "SEC") had earlier notified the Company that it is conducting an informal inquiry into the Company's equity compensation grant practices. The Company continues to cooperate fully with the SEC in this informal inquiry.

**The Special Committee's Conclusions**

\* \* \*

The Special Committee and the Company's management have determined that incorrect measurement dates for certain equity compensation awards made during the Relevant Period were used for financial accounting purposes and, as a result, the Company will restate its prior financial statements to correct the accounting for those awards. The use of incorrect measurement dates resulted from a number of reasons, including delays in the approval of awards, the absence of definitive documentation and modifications of previously awarded grants. ***The Special Committee also identified certain awards for which grant dates were selected retroactively*** . . . . Nearly all of the grants for which the measurement dates are being changed (approximately 98% of the grants) were awarded in 2001 and earlier years. The Company anticipates that the restatement will involve total pre-tax, non-cash stock-based compensation expense of approximately $28 million to $32 million, of which approximately 95% will be expensed in 2002 and earlier years. Because these estimates are preliminary and we have not quantified all of the tax impacts, the net after tax amounts to be restated have not yet been determined by the Company.

The Company also has decided to implement certain remedial measures recommended by the Special Committee and endorsed by the Board of Directors in order to ensure reliability, transparency and accuracy in its equity compensation grant practices and accounting for its equity compensation program going forward. These remedial measures are described below.

\* \* \*

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 59 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

A total of 7,102 option grants and 1,062 RSUs grants were made on 465 occasions during the Relevant Period . . . . ***The Special Committee and the Company have determined that it is necessary to revise the measurement dates for approximately 3,700 of these grants, covering grants made on approximately 130 occasions.*** Over half of the grants for which the measurement dates are being revised relate to an all-employee award in February of 2000 pursuant to which 400 options were granted to all employees below vice president level.

**Changes in Connection with Equity Compensation Grant Practices**

In addition to the adjustment to the Company's previously filed financial statements as described above, as a result of this review, the Special Committee has recommended, and the Board of Directors has adopted, the following changes to improve the Company's equity compensation grant practices.

- Two additional independent directors will be recruited and appointed to the Company's Board of Directors.

- Membership of the Audit and Compensation Committees of the Board of Directors will be changed.

- The Equity Compensation Committee has been discontinued.

- Enhancements will be made in the oversight of the Company's corporate governance practices with respect to the Company's equity compensation programs.

- Senior management will be charged with ensuring that the equity compensation policies and processes are appropriate and provide effective controls, and that the Company's accounting for equity compensation is appropriate.

- Certain of the Company's equity compensation administrative processes and functions will move from the Company's human resources organization to the finance organization, under the supervision of the Chief Financial Officer.

- The Board of Directors has unanimously adopted an Equity Compensation Grant Policy on April 10, 2007, which provides, among other things, that:

  - All terms of each equity grant must be finalized and approved by the Board of Directors or the Compensation Committee on or prior to the grant date;

  - All stock options must have an exercise price equal to or greater than the average of the high and low prices on the grant date;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 60 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

- All recipients of equity grants must be notified, in writing, of such grants as soon as possible following approval;

- Any equity compensation issues or actions will be reported by senior management on a timely basis to the Board of Directors or the Compensation Committee, no less frequently than quarterly.

192.    On June 13, 2007, the Company filed with the SEC its 2006 Annual Report, which restated its financial reports to account for additional compensation expenses in the amount of **$27 million**.    In addition to the Special Committee's conclusions and recommendations also announced in the April 16, 2007 press release, the 2006 Annual Report also disclosed that:

> The Special Committee and the company have determined that it is necessary to revise the measurement dates for approximately 45% of these awards ("Adjusted Options"). Over half of the awards for which the measurement date is being revised relate to the company's only all employee grant in February of 2000 to employees below the vice president level. In addition, the measurement dates for many awards were revised due to: (i) the use of the date of the approval of a pool of options as the measurement date as opposed to the date that the terms of each grant were finalized; (ii) the use of the date that a Unanimous Written Consent approving equity awards was faxed to Compensation Committee members for their approval, rather than the date when the approvals of the Compensation Committee members had been faxed back, as the measurement date for the associated grants; and (iii) the absence of a detailed list of recipients and associated grants prior to the date certain grants were entered into our equity award tracking system.

> We previously applied Accounting Principles Board ("APB") Opinion No. 25, "Accounting for Stock Issued to Employees," and its related Interpretations and provided the required pro forma disclosures under Statement of Financial Accounting Standards ("SFAS") No. 123, "Accounting for Stock-Based Compensation," through our fiscal year ended December 31, 2005. We have used the accelerated method of expensing stock options provided in Financial Accounting Standards Board Interpretation No. 28, "Accounting for Stock Appreciation Rights and Other Variable Stock Option or Award Plans" for recording expense and for our pro forma disclosures. Under APB Opinion No. 25, a non-cash, stock-based compensation expense was required to be recognized for any option for which the exercise price was below the market price on the measurement date. Because most of the company's Adjusted Options had an exercise price below the market price on the measurement date, there should have

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 61 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

been a non-cash charge for each of these options under APB Opinion No. 25 equal to the number of option shares, multiplied by the difference between the exercise price and the market price on the measurement date. That expense should have been amortized over the service period of the option.

The company also reviewed modifications made to previously granted options and determined that we did not record the appropriate amount of compensation expense for some of the modifications ("Modified Options"). We did not record the appropriate amount of stock-based compensation expense under APB Opinion No. 25 related to Adjusted or Modified Options in our previously issued financial statements, and are recording these expenses in this Annual Report on Form 10-K.

193.   In sum, the Special Committee and the Company have determined that approximately 3,700 grants made on 130 occasions were misdated. In addition, because of the measurement date errors, Company has adjusted its financial results for the material compensation expenses and thus has issued a restatement to account for the additional stock-based compensation expenses.

194.   Although Getty Images admitted to such egregious misconduct, Getty Images claimed that "the Special Committee concluded that the evidence obtained and reviewed in its investigation did not establish any intentional wrongdoing by current employees, officers or directors of the Company." Such a statement cannot be squared with the striking pattern of the 1999-2002 stock option grants set forth above, which demonstrates knowing and intentional backdating to dates when Getty Images stock was at historical lows.

195.   Moreover, the Special Committee's conclusion conflicts with the Company's own admissions that there was backdating of option grants before 2002, when current directors, Defendants Klein, Getty, Bailey, Garb and Sporborg, were on the Board and/or the Compensation Committee. The act of backdating stock options, by its very nature, is a knowing and intentional act. As such, these defendants should be held accountable for participating in the backdating scheme. In addition, the Company failed to provide specific details with respect to those it did find responsible for the backdating of Getty Images stock options. As such, the Special Committee's conclusion that "the evidence [] did not establish any intentional

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 62 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    wrongdoing by current employees, officers or directors of the Company" lacks merit and should
2    be disregarded.

3                    **BACKDATING CAUSED HARM TO THE COMPANY**

4            196.   As a result of the backdating and other manipulation of options issued to
5    Defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke,
6    Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse, they have been
7    unjustly enriched in the amount of millions of dollars at the expense of the Company.   The
8    Company has received and will receive less money from these defendants when they exercise
9    their options at prices substantially lower than they would have if the options had not been
10   backdated.

11                **Restatement of Getty Images' Financial Statements**

12           197.   The practice of backdating stock options not only lined the pockets of the
13   Company's executives at the direct expense of the Company and the shareholders but also
14   resulted in the overstatement of the Company's net income.   This is because options priced
15   below the stock's fair market value when they were awarded brought the recipient an instant
16   paper gain that must be accounted for as additional compensation and treated as an expense to
17   the Company.   Indeed, the Company restated its historical financial results to account for
18   additional stock-based compensation totaling $27 million.

19           198.   The Special Committee concluded that, pursuant to the requirements of APB 25,
20   different accounting measurement dates for the purpose of computing compensation costs for
21   certain stock option grants should have been used.   Furthermore, the additional non-cash stock-
22   based compensation expense under the revised calculations will have the effect of decreasing
23   reported net income or increasing reported net loss, and increasing the reported accumulated
24   deficit contained in the Company's historical financial statements.

25           199.   On June 8, 2007, Getty Images filed its financial results the fiscal year ended
26   December 31, 2006, which included restatements of the following previously filed financial
27   statements and data:

AMENDED SHAREHOLDER VERIFIED                    - 63 -
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

This Annual Report on Form 10-K for our fiscal year ended December 31, 2006 includes restatements of the following previously filed financial statements and data (and related disclosures), which resulted primarily from recording additional compensation expense due to changes in the measurement dates of certain equity award grants that were made as a result of the internal investigation into our historical equity award grant practices and modifications previously made to certain granted equity awards: (1) our consolidated financial statements for our fiscal years ended December 31, 2005 and 2004; (2) our selected consolidated financial data for our fiscal years ended December 31, 2005, 2004, 2003 and 2002, and (3) our unaudited quarterly financial data for each quarter in our fiscal year ended December 31, 2005 and the first and second quarters of fiscal year 2006. We have filed amended Quarterly Reports on Form 10-Q/A for the quarters ended March 31, 2006 and June 30, 2006 to reflect the restatements.

200.   In addition to the serious and adverse tax consequences, which resulted from the Company's failure to record the additional non-cash stock-based compensation, Getty Images faces millions of dollars in costs associated with the Special Committee's internal investigation and the related restatements.  Getty Images also will likely admit to material weakness in its financial controls resulting in a qualified opinion from its outside auditor.

### Dissemination of False and Misleading Financial Statements

201.   As known to defendants Klein and Getty and Compensation Committee members Bailey, Garb, and Sporborg, their secret option backdating scheme caused each of Getty Images' Forms 10-K and Forms 10-Q for the relevant period to materially understate Getty Images' compensation expense and materially overstate the Company's net income or materially understate its net loss, because these defendants failed to expense the in-the-money portion of Getty Images' stock option grants during the relevant period, as required by APB 25.

202.   Particularly, defendants Garb, Bailey and Sporborg also served on the Audit Committee and were well aware of GAAP and other accounting rules.  As such, they were aware of the material effect their backdating scheme had on Getty Images' financial statements. Furthermore, Defendant Klein was the Company's CEO and knowingly made false statements in Getty Image's financial reports.  Defendants Garb, Bailey, Sporborg and Klein knew that, as a

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 64 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   result of their misconduct, the compensation expenses were understated and thus their net

2   income was overstated.

3          203.    As a result of the improper backdating of stock options, the Company, with the

4   knowledge, approval and participation of defendants Klein and Getty and Compensation

5   Committee members Garb, Bailey and Sporborg:

6          a.      violated the terms of the 1998 Plan by granting stock options with exercise prices
                   less than the fair market value of the stock on the actual date of grant;
7
           b.      violated APB 25 by failing to recognize compensation expenses incurred when
8                  the improperly backdated options were granted;

9          c.      violated Section 162(m) by taking tax deductions based on stock option grants
                   that were not payable solely on account of the attainment of one or more
10                 performance goals and violated the terms of the Company's shareholder-approved
                   stock option plans; and
11
           d.      produced and disseminated false financial statements to Getty Images
12                 shareholders and the market that improperly recorded and accounted for the
                   backdated option grants, and thereby understated compensation expenses and
13                 overstated net income.

14         204.    The Company, with the knowledge, approval, and participation of Defendants

15  Klein, Getty, Garb, Bailey and Sporborg, disseminated its false financial statements in, *inter alia*,

16  the following Form 10-K filings:

17         a.      Form 10-K for the year ended December 31, 1999, filed with the SEC on March
18                 30, 2000 and signed by defendants Getty, Klein, Roling, Garb, Bailey and
                   Sporborg;
19
           b.      Form 10-K for the year ended December 31, 2000, filed with the SEC on April 2,
20                 2001 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and
                   Sporborg;
21
           b.      Form 10-K for the year ended December 31, 2001, filed with the SEC on March
22                 29, 2002 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and
23                 Sporborg;

24         c.      Form 10-K for the year ended December 31, 2002 filed with the SEC on March
25                 21, 2003 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and
                   Sporborg;
26
           d.      Form 10-K for the year ended December 31 2003, filed with the SEC on March
27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                              - 65 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

12, 2004 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg;

e.   Form 10-K for the year ended December 31, 2004, filed with the SEC on March 11, 2005 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg; and

f.   Form 10-K for the year ended December 31, 2005, filed with the SEC on March 9, 2006 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg.

g.   Form 10-K/A for the year ended December 31, 2005, filed with the SEC on March 10, 2006 and signed by defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg.

205.   Furthermore, Getty Images' executives, including defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse, were overpaid improper cash bonuses based on the foregoing false and misleading financial information that should be repaid to the Company.

The 1999 Form 10-K

206.   On or about March 30, 2000, Getty Images filed its 1999 Report on Form 10-K with the SEC.  Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the Form 10-K that included Getty Images' 1999 financial statements, which they knew were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As stated above, Audit Committee and Compensation Committee members Garb, Bailey and Sporborg, with the knowledge and participation of defendants Klein and Getty, knowingly approved the April 9, 1999, May 4, 1999, July 6, 1999, July 27, 1999, August 3, 1999, October 22, 1999 and October 25, 1999 grants when they knew that they actually approved these grants on later dates and backdated these grants to when Getty Images' stock price was lower than the actual grant dates. Defendants Klein, Getty, Garb, Bailey and Sporborg granted these improperly priced and dated options for the benefit of the Company insiders to the detriment of the Company. As a result, defendants Klein, Getty, Garb, Bailey and

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 66 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   Sporborg knew that Getty Images' compensation expense was understated and its net earnings

2   were overstated and thus knowingly approved the false Form 10-K for fiscal year 1999 filed on

3   March 30, 2000.

4       207.   In addition, Defendants Klein, Getty, Garb, Bailey and Sporborg made the

5   following misrepresentations about Getty Images' stock option plans in the 1999 Report on Form

6   10-K:

7       Under the Getty Images Plan, the Board has the discretion to grant stock options
8       ("Options") underlying shares of Common Stock at fair market prices, based on
        the average of the high and low prices of the Company's Common Stock on the
9       date of grant. The Options vest 25% on the first anniversary of the date of grant
10      and on a monthly *pro rata* basis over three years thereafter and have a term of ten
        years.
11

12      208.   As detailed above, this statement was knowingly false and misleading because the

13  stock options purportedly dated April 9, 1999, May 4, 1999, July 6, 1999, July 27, 1999, August

14  3, 1999, October 22, 1999 and October 25, 1999 were not granted at fair market value on the

15  date of grant but in fact had exercise prices less than the average high and low prices of the

16  Company's common stock on the actual grant dates.  Defendants Klein, Getty, Garb, Bailey and

17  Sporborg knew the statement was false and misleading when they made the representation in the

18  1999 Form 10-K because they were involved in the backdating of the foregoing 1999 stock

19  option grants.

20      209.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

21  Images to falsely state in the 1999 Form 10-K that, "[t]he Company applies Accounting

22  Principles Board Opinion No. 25 ('APB No. 25'), Accounting for Stock Issued to Employees

23  and related interpretations in accounting for its stock option plans."   This statement was

24  materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly

25  granted stock options at prices that were below fair market value on the date of the grant and

26  failed to account for the in-the-money options as required by APB 25.

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                    - 67 -
(No. C 07-0317 JLR)

210.   The 1999 Form 10-K was signed by defendants Getty, Klein, Roling, Garb, Bailey and Sporborg and because of their involvement in the backdating scheme, defendants Klein, Getty, Garb, Bailey and Sporborg knowingly approved the filing of the false Form 10-K for fiscal year 1999.

The 2000 Form 10-K

211.   On or about April 2, 2001, Getty Images filed its 2000 Report on Form 10-K with the SEC.  Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the Form 10-K that included Getty Images' 2000 financial statements, which they knew were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As stated above, Audit Committee and Compensation Committee members Garb, Bailey and Sporborg, with the knowledge and participation of defendants Klein and Getty, knowingly backdated the stock option grants to February 1, 2000, April 28, 2000, May 24, 2000, May 30, 2000, August 28, 2000 and October 11, 2000 when Getty Images' stock price were lower than the actual grant dates.  Defendants Klein, Getty, Garb, Bailey and Sporborg knew that the grants were approved on later dates than reported.  Furthermore, these defendants granted these improperly priced and dated options for the benefit of Company insiders to the detriment of the Company.  As a result, defendants Klein, Getty, Garb, Bailey and Sporborg knew that Getty Images' compensation expense was understated and its net earnings were overstated and thus knowingly approved the false Form 10-K for fiscal year 2000 filed on April 2, 2001.

212.   In addition, Defendants Getty, Klein, Sporborg, Bailey and Garb made the following misrepresentations about 1998 Plan in the 2000 Report on Form 10-K:

Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of Directors has the discretion to grant stock options underlying shares of common stock at fair market prices, based on the average of the high and low prices of the Company's common stock on the date of grant. The options vest 25% on the first anniversary of the date of grant and on a monthly pro rata basis over three years thereafter and have a term of ten years.  A total of 13 million shares are reserved for issuance under this plan, with shares under options that lapse available for re-

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 68 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

issuance. Options become exercisable when vested and remain exercisable through the remainder of the option term except upon termination of employment, in which case the options terminate 90 days after the employee's termination date.

213.   As detailed above, this statement was knowingly false and misleading because the stock options purportedly dated February 1, 2000, April 28, 2000, May 24, 2000, May 30, 2000, August 28, 2000 and October 11, 2000 were not granted at fair market value on the date of grant but in fact had an exercise price less than the stock price on the actual date of grant. Defendants Getty, Klein, Sporborg, Bailey and Garb knew the statement was false and misleading when they made the representation in the 2000 Form 10-K because they were involved in the backdating of the foregoing 2000 stock option grants.

214.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty Images to falsely state in the 2000 Form 10-K that, "[t]he Company applies Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to Employees' and related interpretations in accounting for its stock option plan. Accordingly, the Company recognizes no compensation expense related to employee stock options as no options are granted below the market price on the date of the grant." This statement was materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly granted stock options at prices that were below fair market value on the date of the grant and failed to account for the in-the-money options as required by APB 25.

215.   The 2000 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg, Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein, Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year 2000.

The 2001 Form 10-K

216.   On or about March 29, 2002, Getty Images filed its 2000 Report on Form 10-K with the SEC. Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the Form 10-K that included Getty Images' 2001 financial statements, which they knew were

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 69 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    materially false and misleading and presented in violation of GAAP, due to improper accounting

2    for the backdated stock options.    As stated above, Audit Committee and Compensation

3    Committee members Garb, Bailey and Sporborg, with the knowledge and participation of

4    defendants Klein and Getty, knowingly backdated the stock option grants to March 30, 2001,

5    May 7, 2001, June 26, 2001, July 17, 2001, July 23, 2001, October 9, 2001 and October 15, 2001

6    when Getty Images' stock price was lower than the actual grant date.    Defendants Klein, Getty,

7    Garb, Bailey and Sporborg knew that the grants were approved on dates after the purported grant

8    dates.    Furthermore, these defendants granted these improperly priced and dated options for the

9    benefit of Company insiders to the detriment of the Company.    As a result, defendants Klein,

10    Getty, Garb, Bailey and Sporborg knew that Getty Images' compensation expense was

11    understated and its net earnings were overstated and thus knowingly approved the false Form 10-

12    K for fiscal year 2001 filed on March 29, 2002.

13        217.    In addition, Defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg made

14    the following misrepresentations about the 1998 Plan in the 2001 Report on Form 10-K:

15        Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of
16        Directors has the discretion to grant stock options underlying shares of common
17        stock at the fair market value of the company's common stock on the date of
         grant. Options generally vest 25% on the first anniversary of the date of grant and
18        on a monthly *pro rata* basis over three years thereafter and have a term of ten
         years.
19
20        A total of 13 million shares are reserved for issuance under the Plan. Shares under
         options that lapse are available for re-issuance. Options become exercisable when
21        vested and remain exercisable through the remainder of the option term except
         upon termination of employment, in which case the options generally terminate 90
22        days after the employee's termination date.

23        The company also issued, during 2001, options for a total of 134,999 shares
24        outside of the Plan to two newly-hired executive officers and to three non-
         executive members of our Board of Directors. The terms of these options are
25        substantially identical to those granted under the Plan.

26        218.    As detailed above, this statement was knowingly false and misleading because the

27    stock options purportedly dated March 30, 2001, May 7, 2001, June 26, 2001, July 17, 2001, July

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 70 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   23, 2001, October 9, 2001 and October 15, 2001 were not granted at fair market value on the

2   date of grant but in fact had an exercise price less than the stock price on the actual date of grant.

3   Defendants Getty, Klein, Sporborg, Bailey and Garb knew the statement was false and

4   misleading when they made the representation in the 2000 Form 10-K because they were

5   involved in the backdating of the foregoing 2001 stock option grants.

6       219.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

7   Images to falsely state in the 2001 Form 10-K that, "[t]he company applies Accounting

8   Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to Employees' and

9   related interpretations in accounting for stock options. Accordingly, the company recognizes no

10  compensation expense related to employee stock options, as no options are granted below the

11  market price on the date of the grant." This statement was materially false and misleading

12  because Klein, Getty, Garb, Bailey and Sporborg knowingly granted stock options at prices that

13  were below fair market value on the date of the grant and failed to account for the in-the-money

14  options as required by APB 25.

15      220.   The 2001 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg,

16  Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein,

17  Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year

18  2001.

19  The 2002 Form 10-K

20      221.   On or about March 21, 2003, Getty Images filed its 2002 Report on Form 10-K

21  with the SEC. Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the

22  Form 10-K that included Getty Images' 2002 financial statements, which they knew were

23  materially false and misleading and presented in violation of GAAP, due to improper accounting

24  for the backdated stock options. As stated above, Audit Committee and Compensation

25  Committee members Garb, Bailey and Sporborg, with the knowledge and participation of

26  defendants Klein and Getty, knowingly backdated the stock option grants to February 5, 2002

27  when Getty Images' stock price was lower than the actual grant date. Defendants Klein, Getty,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 71 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   Garb, Bailey and Sporborg knew that the grant was approved at a later date.  Furthermore, these

2   defendants granted these improperly priced and dated options for the benefit of Company

3   insiders to the detriment of the Company.  As a result, defendants Klein, Getty, Garb, Bailey and

4   Sporborg knew that Getty Images' compensation expense was understated and its net earnings

5   were overstated and thus knowingly approved the false Form 10-K for fiscal year 2002 filed on

6   March 21, 2003.

7          222.   In addition, Defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg made

8   the following false and misleading statements about the 1998 Plan in the 2002 Report on Form

9   10-K:

> Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of
> Directors has the discretion to grant stock options underlying shares of common
> stock at the fair market value of the company's common stock on the grant date.
> Options generally have a 10-year term and a four-year vesting schedule, with 25%
> vesting on the first anniversary of the grant date and a *pro rata* portion vesting
> monthly over the remaining three years.

> A total of 13 million shares are reserved for issuance under the Plan. Shares under
> options that lapse (due to cancellation or expiration) are available for re-issuance.
> Options become exercisable when vested and remain exercisable through the
> remainder of the option term except upon termination of employment, in which
> case the options generally terminate 90 days after the employee's termination
> date.

19         223.   As detailed above, this statement was knowingly false and misleading because the

20   stock options purportedly dated February 5, 2002 were not granted at fair market value on the

21   date of grant but in fact had an exercise price less than the stock price on the actual date of grant.

22   Defendants Getty, Klein, Sporborg, Bailey and Garb knew the statement was false and

23   misleading when they made the representation in the 2002 Form 10-K because they were

24   involved in the backdating of the stock option grants dated February 5, 2002, as detailed above.

25         224.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

26   Images to falsely state in the 2002 Form 10-K that, "[t]he company applies Accounting

27   Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to Employees' and

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 72 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   related interpretations in accounting for stock-based compensation.  Accordingly, the company

2   recognizes no compensation expense related to the granting of employee stock options, as no

3   options are granted below the market price on the date of the grant."  This statement was

4   materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly

5   granted stock options at prices that were below fair market value on the date of the grant and

6   failed to account for the in-the-money options as required by APB 25.

7        225.   The 2002 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg,

8   Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein,

9   Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year

10  2002.

11       226.   Defendant Klein signed a Certification of Chief Executive Officer Pursuant to 18

12  U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002,

13  which attested to the purported accuracy of the financial statements contained in the 2002 annual

14  report, the effectiveness of the internal controls, and compliance with Section 13(a) of the

15  Exchange Act, when he knew that this Certification was false and misleading.  Because of his

16  involvement in the backdating scheme, Defendant Klein knew that the 2002 financial results

17  understated compensation expenses and overstated net income.  In the 2002 Certification, Klein

18  made the following false and misleading certification: "(1) The Report fully complies with the

19  requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and (2) The

20  information contained in the Report fairly presents, in all material respects, the financial

21  condition and results of operations of the Company."

22  The 2003 Form 10-K

23       227.   On or about March 12, 2004, Getty Images filed its 2003 Report on Form 10-K

24  with the SEC.  Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the

25  Form 10-K that included Getty Images' 2003 financial statements as well as the 1999-2002

26  financial statements, which they knew were materially false and misleading and presented in

27  violation of GAAP, due to improper accounting for the backdated stock options.  As stated

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                           - 73 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1    above, Audit Committee and Compensation Committee members Garb, Bailey and Sporborg,

2    with the knowledge and participation of defendants Klein and Getty, knowingly backdated the

3    1999-2002 stock option grants when Getty Images' stock price was lower than the actual grant

4    dates. Defendants Klein, Getty, Garb, Bailey and Sporborg knew that the grants were approved

5    on dates after the purported grant dates. Furthermore, these defendants granted these improperly

6    priced and dated options for the benefit of Company insiders to the detriment of the Company.

7    As a result, defendants Klein, Getty, Garb, Bailey and Sporborg knew that Getty Images'

8    compensation expense was understated and its net earnings were overstated and thus knowingly

9    approved the false Form 10-K for fiscal year 2003 filed on March 12, 2004.

10        228.    In addition, Defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg made

11   the following misrepresentations about the 1998 Plan in the 2003 Report on Form 10-K:

12       Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of
         Directors has the discretion to grant stock options underlying shares of common
13       stock at the fair market value of our common stock on the grant date and other
         stock-based awards. Options generally have a 10-year term and a four-year
14       vesting schedule, with 25% vesting on the first anniversary of the grant date and a
         pro rata portion vesting monthly over the remaining three years. The terms of
15       other stock-based awards, such as restricted stock, vary from grant to grant.
16

17       A total of 13 million shares are reserved for issuance under the Plan. Shares under
         options and other stock-based awards that lapse due to cancellation or expiration
18       are available for re-issuance. Options become exercisable when vested and remain
         exercisable through the remainder of the option term except upon termination of
19       employment, in which case the options generally terminate 90 days after the
20       employee's termination date.

21        229.    As detailed above, this statement was knowingly false and misleading because the

22   1999-2002 stock options were not granted at fair market value on the date of grant but in fact had

23   an exercise price less than the stock price on the actual date of grant. Defendants Getty, Klein,

24   Sporborg, Bailey and Garb knew the statement was false and misleading when they made the

25   representation in the 2003 Form 10-K because they were involved in the backdating of those

26   stock option grants.

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)                                    - 74 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

230.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty Images to falsely state in the 2003 Form 10-K that, "[w]e apply the intrinsic value provisions of Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to Employees' and related interpretations in accounting for employee stock-based compensation. We do not recognize compensation expense when granting employee stock options, as we do not grant options with exercise prices less than the market price of our common stock on the date of the grant." This statement was materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly granted stock options from 1999 to 2002 at prices that were below fair market value on the date of the grant and failed to account for the in-the-money options as required by APB 25.

231.   The 2003 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg, Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein, Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year 2003.

232.   Defendant Klein signed a Certification of Chief Executive Officer Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, which attested to the purported accuracy of the financial statements contained in the 2003 annual report, the effectiveness of the internal controls, and compliance with Section 13(a) of the Exchange Act, when he knew that this Certification was false and misleading. Because of his involvement in the backdating scheme, Defendant Klein knew that the 2003 financial results understated compensation expenses and overstated net income. In the 2003 Certification, Klein made the following false and misleading certification: "(1) The Form 10-K fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m or 78o(d)); and (2) The information contained in the Form 10-K fairly presents, in all material respects, the financial condition and results of operations of the Company."

AMERICAN SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 75 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

The 2004 Form 10-K

233.   On or about March 11, 2005, Getty Images filed its 2004 Report on Form 10-K with the SEC. Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the Form 10-K that included Getty Images' 2004 financial statements as well as the 2000-2002 financial statements, which they knew were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As stated above, Audit Committee and Compensation Committee members Garb, Bailey and Sporborg, with the knowledge and participation of defendants Klein and Getty, knowingly backdated the 2000-2002 stock option grants when Getty Images' stock price was lower than the actual grant dates. Defendants Klein, Getty, Garb, Bailey and Sporborg knew that the grants were approved on later dates that those reported. Furthermore, these defendants granted these improperly priced and dated options for the benefit of Company insiders to the detriment of the Company.  As a result, defendants Klein, Getty, Garb, Bailey and Sporborg knew that Getty Images' compensation expense was understated and its net earnings were overstated and thus knowingly approved the false Form 10-K for fiscal year 2004 filed on March 11, 2005.

234.   In addition, Defendants Getty, Klein, Huebner, Garb, Bailey and Sporborg made the following misrepresentations about the 1998 Plan in the 2004 Report on Form 10-K:

**ITEM 12.  SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT AND RELATED STOCKHOLDER MATTERS**

Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of Directors has the discretion to grant stock options underlying shares of common stock at the fair market value of our common stock on the grant date and other stock-based awards. Options generally have a 10-year term and a four-year vesting schedule, with 25% vesting on the first anniversary of the grant date and a pro rata portion vesting monthly over the remaining three years. The terms of other stock-based awards, such as restricted stock, vary from grant to grant.

\* \* \*

**NOTE 8. STOCK-BASED COMPENSATION**

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 76 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1
2
3
4
5
6
7

Under the Getty Images, Inc. 1998 Stock Incentive Plan (the Plan), the Board of Directors has the discretion to grant stock options underlying shares of common stock at the fair market value of our common stock on the grant date and other stock-based awards. As detailed above, this statement was knowingly false and misleading because the 1999-2002 stock options were not granted at fair market value on the date of grant but in fact had an exercise price less than the stock price on the actual date of grant. Defendants Getty, Klein, Sporborg, Bailey and Garb knew the statement was false and misleading when they made the representation in the 2003 Form 10-K because they were involved in the backdating of those stock option grants, as detailed above.

8   235.   The above statements were materially false and misleading because Defendants

9 Klein, Getty, Garb, Bailey and Sporborg knowingly granted stock options from 1999 to 2002 at

10 prices that were below fair market value on the date of the grant and failed to account for the in-

11 the-money options as required by APB 25.

12   236.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

13 Images to falsely state in the 2004 Form 10-K that, "[w]e apply the intrinsic value provisions of

14 Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to

15 Employees' and related interpretations in accounting for employee stock-based compensation.

16 We do not recognize compensation expense when granting employee stock options, as we do not

17 grant options with exercise prices less than the market price of our common stock on the date of

18 the grant." This statement was materially false and misleading because Klein, Getty, Garb,

19 Bailey and Sporborg knowingly granted stock options from 1999 to 2002 at prices that were

20 below fair market value on the date of the grant and failed to account for the in-the-money

21 options as required by APB 25.

22   237.   The 2004 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg,

23 Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein,

24 Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year

25 2004.

26   238.   Defendant Klein signed a Certification of Chief Executive Officer Pursuant to 18

27 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 77 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   which attested to the purported accuracy of the financial statements contained in the 2004 annual

2   report, the effectiveness of the internal controls, and compliance with Section 13(a) of the

3   Exchange Act, when he knew that this Certification was false and misleading.  Because of his

4   involvement in the backdating scheme, Defendant Klein knew that the 2004 financial results

5   understated compensation expenses and overstated net income.  In the 2004 Certification, Klein

6   made the following false and misleading certification: "(1) The Form 10-K fully complies with

7   the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C.

8   78m or 78o(d)); and   (2) The information contained in the Form 10-K fairly presents, in all

9   material respects, the financial condition and results of operations of the Company."

10  The 2005 Form 10-K

11         239.   On or about March 9, 2006, Getty Images filed its 2005 Report on Form 10-K

12  with the SEC.  Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the

13  Form 10-K that included Getty Images' 2005 financial statements as well as the 2001-2002

14  financial statements, which they knew were materially false and misleading and presented in

15  violation of GAAP, due to improper accounting for the backdated stock options.  As stated

16  above, Audit Committee and Compensation Committee members Garb, Bailey and Sporborg,

17  with the knowledge and participation of defendants Klein and Getty, knowingly backdated the

18  2001-2002 stock option grants when Getty Images' stock price was lower than the actual grant

19  date.  Defendants Klein, Getty, Garb, Bailey and Sporborg knew that the grants were approved at

20  a later date.  Furthermore, these defendants granted these improperly priced and dated options for

21  the benefit of Company insiders to the detriment of the Company.  As a result, defendants Klein,

22  Getty, Garb, Bailey and Sporborg knew that Getty Images' compensation expense was

23  understated and its net earnings were overstated and thus knowingly approved the false Form 10-

24  K for fiscal year 2005 filed on March 9, 2006.

25         240.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

26  Images to falsely state in the 2005 Form 10-K that, "[w]e apply the intrinsic value provisions of

27  Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 78 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   Employees' and related interpretations in accounting for employee stock-based compensation.

2   We do not recognize compensation expense when issuing stock options as, according to the

3   terms of our 2005 Incentive Plan, we are not able issue stock options with exercise prices less

4   than the market price of our common stock on the date of the issuance." This statement was

5   materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly

6   granted stock options from 1999 to 2002 at prices that were below fair market value on the date

7   of the grant and failed to account for the in-the-money options as required by APB 25.

8       241.   The 2005 Form 10-K was signed by defendants Getty, Klein, Huebner, Sporborg,

9   Bailey and Garb and because of their involvement in the backdating scheme, Getty, Klein,

10  Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K for fiscal year

11  2005.

12      242.   Defendant Klein signed a Certification of Chief Executive Officer Pursuant to 18

13  U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002,

14  which attested to the purported accuracy of the financial statements contained in the 2005 annual

15  report, the effectiveness of the internal controls, and compliance with Section 13(a) of the

16  Exchange Act, when he knew that this Certification was false and misleading. Because of his

17  involvement in the backdating scheme, Defendant Klein knew that the 2005 financial results

18  understated compensation expenses and overstated net income. In the 2005 Certification, Klein

19  made the following false and misleading certification: "(1) The Form 10-K fully complies with

20  the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C.

21  78m or 78o(d)); and (2) The information contained in the Form 10-K fairly presents, in all

22  material respects, the financial condition and results of operations of the Company."

23  The 2005 Form 10-K/A

24      243.   On or about March 10, 2006, Getty Images filed its Amended 2005 Report on

25  Form 10-K/A with the SEC where Defendants Klein, Getty, Garb, Bailey and Sporborg

26  knowingly made the same false and misleading statements as those in the initial 2005 Form 10-

27  K. Again, Defendants Klein, Getty, Garb, Bailey and Sporborg approved and signed the Form

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                     - 79 -
(No. C 07-0317 JLR)

1  10-K/A that included Getty Images' 2005 financial statements as well as the 2001-2002 financial

2  statements, which they knew were materially false and misleading and presented in violation of

3  GAAP, due to improper accounting for the backdated stock options.  As stated above, Audit

4  Committee and Compensation Committee members Garb, Bailey and Sporborg, with the

5  knowledge and participation of defendants Klein and Getty, knowingly backdated the 2001-2002

6  stock option grants when Getty Images' stock price was lower than the actual grant date.

7  Defendants Klein, Getty, Garb, Bailey and Sporborg knew that the grants were approved at a

8  later date.  Furthermore, these defendants granted these improperly priced and dated options for

9  the benefit of Company insiders to the detriment of the Company.  As a result, defendants Klein,

10  Getty, Garb, Bailey and Sporborg knew that Getty Images' compensation expense was

11  understated and its net earnings were overstated and thus knowingly approved the false Form 10-

12  K/A for fiscal year 2005 filed on March 10, 2006.

13       244.   Furthermore, Defendants Klein, Getty, Garb, Bailey and Sporborg caused Getty

14  Images to falsely state in the 2005 Form 10-K/A that, "We apply the intrinsic value provisions of

15  Accounting Principles Board (APB) Opinion No. 25, 'Accounting for Stock Issued to

16  Employees' and related interpretations in accounting for employee stock-based compensation.

17  We do not recognize compensation expense when issuing stock options as, according to the

18  terms of our 2005 Incentive Plan, we are not able issue stock options with exercise prices less

19  than the market price of our common stock on the date of the issuance."  This statement was

20  materially false and misleading because Klein, Getty, Garb, Bailey and Sporborg knowingly

21  granted stock options from 1999 to 2002 at prices that were below fair market value on the date

22  of the grant and failed to account for the in-the-money options as required by APB 25.

23       245.   The 2005 Form 10-K/A was signed by defendants Getty, Klein, Huebner,

24  Sporborg, Bailey and Garb and because of their involvement in the backdating scheme, Getty,

25  Klein, Sporborg, Bailey and Garb knowingly approved the filing of the false Form 10-K/A for

26  fiscal year 2005.

27       246.   Defendant Klein signed a Certification of Chief Executive Officer pursuant to 18

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 80 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  U.S.C. Section 1350, as Adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002,

2  which attested to the purported accuracy of the financial statements contained in the Amended

3  2005 annual report, the effectiveness of the internal controls, and compliance with Section 13(a)

4  of the Exchange Act, when he knew that this Certification was false and misleading.  Because of

5  his involvement in the backdating scheme, Defendant Klein knew that the 2005 financial results

6  understated compensation expenses and overstated net income.  In the 2005 Certification, Klein

7  made the following false and misleading certification: "(1) The Form 10-K fully complies with

8  the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C.

9  78m or 78o(d)); and (2) The information contained in the Form 10-K fairly presents, in all

10  material respects, the financial condition and results of operations of the Company."

## Defendants' Concealment of their Misconduct

12      247.    Defendants Bailey, Sporborg and Garb, with the knowledge and participation of

13  Defendants Getty and Klein, caused Getty Images to issue false proxy statements in connection

14  with the Company's annual shareholder meetings and periodically for special shareholder

15  meetings during the relevant period.  These defendants prepared and/or reviewed the 2000-2003

16  proxy statements before the statements were disseminated to shareholders and filed with the

17  SEC.  Moreover, Bailey, Sporborg Garb, Getty and Klein knew that the proxies were materially

18  false and misleading as they participated in the backdating of stock option grants from April

19  1999 to February 2002.

20      248.    Getty Images shareholders routinely relied upon the false and misleading proxy

21  statements issued by the Company and voted for the Company's stock option plans under which

22  these defendants backdated stock option grants in order to benefit Company insiders at the

23  expense of the Company and its shareholders.

24      249.    From 2000 to 2003, the Company, with the knowledge, approval, and

25  participation of Defendants Klein, Getty, Bailey, Garb and Sporborg, for the purpose and with

26  the effect of concealing the improper option backdating, disseminated to shareholders and filed

27  with the SEC annual proxy statements that falsely reported the dates of stock option grants to

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                              - 81 -
(No. C 07-0317 JLR)

1  Defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke,
2  Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse and falsely stated
3  that the exercise price of the options granted to these defendants was "equal to the average of the
4  high and low prices of the Common Stock of the Company on the date of grant."

5  The 2000 Proxy Statement

6      250.   The Company's proxy statement filed with the SEC on April 7, 2000 falsely
7  reported that options granted to Powell and von Bargen were granted on April 9, 1999, options
8  granted to Roling were granted on May 4, 1999 and August 3, 1999, options granted to Powell
9  were granted on July 6, 1999, and other options granted to Klein, Getty, Roling, Powell and von
10  Bargen were granted on October 22, 1999, when in fact these grants were actually approved on
11  later dates by Defendants Bailey, Garb and Sporborg.

12      251.   In the proxy statement filed on April 7, 2000, the Compensation Committee
13  (Defendants Bailey, Sporborg and Garb), made the following representations about Getty
14  Image's stock option grants:

15      All options granted by Getty Images following the consummation of the
16      Transactions have been granted under, and governed by, the Plan, which was
        adopted by the Company in connection with the Transactions. Options granted by
17      the Compensation Committee under the Plan have been made at fair market value
        (based on the average of the high and low prices of the Company's Common
18      Stock on the date of grant), vest over a period of four years, 25% on the first
19      anniversary of the grant date and monthly on a pro rata basis thereafter, and expire
        after ten years from the date of grant (with the exception of certain options granted
20      to executive officers upon the consummation of the Transactions that became
        fully exercisable upon the first anniversary of the date of grant).
21

22      252.   Each of the above statements concerning the 1998 Plan and the value of the stock
23  options on the date of grant was knowingly false and misleading because the option grants to
24  Defendants Powell and von Bargen dated April 9, 1999, options grants to Roling dated May 4,
25  1999 and August 3, 1999, and options granted to Klein, Getty, Roling, Powell and von Bargen
26  dated October 22, 1999 were, in fact, backdated. Thus, these grants were granted at less than fair
27  market value as reported by Compensation Committee members Bailey, Sporborg and Garb and

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                    - 82 -
(No. C 07-0317 JLR)

1   as prohibited by the 1998 Plan.  Contrary to the above representations, none of the backdated

2   options was ever approved by the shareholders, nor were shareholders ever aware of this illicit

3   compensation.

4       253.   Moreover, the Report of the Compensation Committee disclosed in the 2000

5   proxy statement falsely stated "[s]tock options are an integral part of executive officers

6   compensation and are utilized by the Company to provide an incentive to the officer, and to align

7   the interests of the executive with those of the Stockholders by providing him with a financial

8   interest in the company," when in fact the backdated stock options provided the officers with

9   immediate profits regardless of the Company's stock performance.

10  The 2001 Proxy Statement

11      254.   Getty Images' proxy statement filed with the SEC on April 6, 2001 falsely

12  reported that options granted to Getty and Klein were granted on May 24, 2000 and options

13  granted to Albers were granted on August 28, 2000 and October 11, 2000, when in fact these

14  grants were actually approved on later dates by Defendants Bailey, Garb and Sporborg.

15      255.   In the proxy statement filed on April 6, 2001, the Compensation Committee

16  (Defendants Bailey, Sporborg and Garb), made the following representations about Getty

17  Image's stock option grants:

18      All options granted by Getty Images following the consummation of the merger of
        the businesses of Getty Communications plc and PhotoDisc, Inc. (the
19      "Transactions"), have been granted under, and governed by, the Getty Images,
        Inc. 1998 Stock Incentive Plan ("the Stock Incentive Plan"), which was adopted
20      by the Company in connection with the Transactions. Options granted by the
        Compensation Committee under the Stock Incentive Plan have been made at fair
21      market value (based on the average of the high and low prices of the Company's
        Common Stock on the date of grant), vest over a period of four years, 25% on the
22      first anniversary of the grant date and monthly on a *pro rata* basis thereafter, and
23      expire after ten years from the date of grant (with the exception of certain options
        granted to executive officers upon the consummation of the Transactions that
24      became fully exercisable upon the first anniversary of the date of grant and a grant
25      made to Mr. Evans-Lombe in April 2000, which had a two-year vesting schedule).

26

27      256.   Each of the above statements concerning the 1998 Plan and the value of the stock

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                    - 83 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   options on the date of grant was knowingly false and misleading because the option grants to

2   Defendants Getty and Klein dated May 24, 2000 and options granted to Defendants Albers

3   purportedly dated August 28, 2000 and October 11, 2000 were, in fact, backdated. Thus, these

4   grants were granted at less than fair market value as reported by Compensation Committee

5   members Bailey, Sporborg and Garb and as prohibited by the 1998 Plan. Contrary to the above

6   representations, none of the backdated options was ever approved by the shareholders, nor were

7   shareholders ever aware of this illicit compensation.

8       257.   Moreover, the Report of the Compensation Committee disclosed in the 2001

9   proxy statement falsely stated "[s]tock options are an integral part of an executive officer's

10  compensation and are utilized by the Company to provide an incentive to the executive officer,

11  and to align the interests of the executive officer with those of the Stockholders by providing the

12  executive officer with a financial interest in the Company," when in fact the backdated stock

13  options provided the officers with immediate profits regardless of the Company's stock

14  performance.

15  The 2002 Proxy Statement

16      258.   Getty Images' proxy statement filed with the SEC on April 19, 2002, falsely

17  reported that options granted to Klein, Getty, von Bargen, Huebner and Albers were granted on

18  March 30, 2001, options granted to Klein, Getty, Huebner and Albers were granted on October

19  15, 2001, and other options granted to Klein were granted on May 7, 2001 and June 26, 2001,

20  when in fact these grants were actually approved on later dates by Defendants Bailey, Garb and

21  Sporborg.

22      259.   In the proxy statement filed on April 19, 2002, the Compensation Committee

23  (Defendants Bailey, Sporborg and Garb), made the following representations about Getty

24  Image's stock option grants:

25          The Compensation Committee may grant either incentive stock options, which
            comply with Section 422 of the Internal Revenue Code, or nonqualified stock
26          options. The Compensation Committee sets option exercise prices and terms;
            however, the exercise price of an incentive stock option may not be less than
27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                          - 84 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

100% of the fair market value on the date of the grant (for these purposes, "fair market value" means the average of the high and low per share trading prices for the common stock on the date of grant as reported on the Nasdaq National Market). The fair market value on March 1, 2002, was $26.31. Typically, options do not vest unless the recipient remains employed or continues to provide services to us for at least 12 months after grant. The term of a stock option may not be more than ten years.

260.   Each of the above statements concerning the value of the stock options on the date of grant was knowingly false and misleading because the options granted to Defendants Klein, Getty, von Bargen, Huebner and Albers dated March 30, 2001, options granted to Klein, Getty, Huebner and Albers dated October 15, 2001, and options granted to Klein dated May 7, 2001 and June 26, 2001 were, in fact, backdated. Thus, these grants were issued at less than fair market value as reported by Compensation Committee members Bailey, Sporborg and Garb and as prohibited by the 1998 Plan. Contrary to the above representations, none of the backdated options were ever approved by the shareholders, nor were shareholders ever aware of this illicit compensation.

261.   Moreover, the Report of the Compensation Committee disclosed in the 2002 proxy statement falsely stated "[s]tock options are an integral part of an executive officer's compensation. We use stock options to provide an incentive to the executive officer, and to align the interests of the executive officer with those of our stockholders by providing the executive officer with a financial interest in the Company," when in fact the backdated stock options provided the officers with immediate profits regardless of the Company's stock performance.

False Form 4s

262.   From 1999 to 2006, the Company, with the knowledge, approval, and participation of each of Klein, Getty, Bailey, Garb and Sporborg, for the purpose and with the effect of concealing the improper option backdating, filed with the SEC Form 4's that falsely reported the dates of stock option grants to the following defendants:

a.   von Bargen's Form 4 filed with the SEC on May 5, 1999 falsely reported that options granted to von Bargen had been granted on April 9, 1999;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 85 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

b.     Albers' Form 4 filed with the SEC on November 4, 2002 falsely reported that options granted to Albers had been granted on August 28, 2000, October 11, 2000, March 30, 2001 and October 15, 2001;

c.     Huebner's Form 4 filed with the SEC on November 7, 2002 falsely reported that options granted to Huebner had been granted on March 30, 2001 and October 15, 2001;

d.     Getty's Form 4 filed with the SEC on December 19, 2002 falsely reported that options granted to Getty had been granted on October 22, 1999, April 28, 2000, March 30, 2001 and October 15, 2001;

e.     Klein's Form 4 filed with the SEC on December 19, 2002 falsely reported that options granted to Klein had been granted on October 22, 1999, April 28, 2000, March 30, 2001, May 7, 2001, June 26, 2001 and October 15, 2001;

f.     Woodhouse's Form 4 filed with the SEC on December 19, 2002 falsely reported that options granted to Woodhouse had been granted on October 25, 1999, October 11, 2000 and March 30, 2001;

g.     Evans-Lombe's Form 4 filed with the SEC on January 6, 2003 falsely reported that options granted to Evans-Lombe had been granted on May 04, 1999, July 27, 1999, October 22, 1999, March 30, 2001, October 15, 2001 and February 5, 2002;

h.     Miskimens' Form 4 filed with the SEC on January 28, 2003 falsely reported that options granted to Miskimens had been granted on May 30, 2000, March 30, 2001, July 17, 2001 and October 9, 2001;

i.     Albers' Form 4 filed with the SEC on February 11, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, October 11, 2000, March 30, 2001 and October 15, 2001;

j.     Klein's Form 4's filed with the SEC on February 12, 2003, March 25, 2003, April 24, 2003, April 30, 2003, September 8, 2003, September 17, 2003, September 23, 2003, September 30, 2003, October 7, 2003, October 14, 2003, October 21, 2003, October 24, 2003, October 28, 2003, November 4, 2003 and November 12, 2003 falsely reported that options granted to Klein had been granted on October 22, 1999, April 28, 2000, March 30, 2001, May 7, 2001, June 26, 2001 and October 15, 2001;

k.     Albers' Form 4 filed with the SEC on February 12, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, March 30, 2001 and October 15, 2001;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 86 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

l.    Albers' Form 4 filed with the SEC on March 6, 2003 falsely reported that options granted to Albers had been granted on August 28, 2000, October 11, 2000, March 30, 2001 and October 15, 2001;

m.   Evans-Lombe's Form 4 filed with the SEC on May 15, 2003 falsely reported that options granted to Evans-Lombe had been granted on March 30, 2001 and October 15, 2001;

n.    Woodhouse's Form 4 filed with the SEC on May 16, 2003 falsely reported that options granted to Woodhouse had been granted on October 15, 2001;

o.    Miskimens' Form 4 filed with the SEC on May 19, 2003 falsely reported that options granted to Miskimens had been granted on March 30, 2001 and July 17, 2001;

p.    Blackwell's Form 4 filed with the SEC on May 28, 2003 falsely reported that options granted to Blackwell had been granted on October 15, 2001;

q.    Klein's Form 4 filed with the SEC on May 28, 2003 falsely reported that options granted to Klein had been granted on October 15, 2001;

r.    Gurke's Form 4 filed with the SEC on October 22, 2003 falsely reported that options granted to Gurke had been granted on August 3, 1999, October 22, 1999, February 1, 2000, March 30, 2001 and October 9, 2001;

s.    Ferguson's Form 4's filed with the SEC on October 23, 2003 and November 5, 2003 falsely reported that options granted to Ferguson had been granted on August 03, 1999, October 22, 1999, February 1, 2000, March 30, 2001 and October 9, 2001;

t.    Huebner's Form 4 filed with the SEC on October 28, 2003 falsely reported that options granted to Huebner had been granted on March 30, 2001 and October 15, 2001;

u.    Beyle's Form 4's filed with the SEC on October 28, 2003 and November 3, 2003 falsely reported that options granted to Beyle had been granted on March 30, 2001, July 17, 2001 and October 15, 2001;

v.    Woodhouse's Form 4 filed with the SEC on November 14, 2003 falsely reported that options granted to Woodhouse had been granted on March 30, 2001, July 17, 2001 and October 15, 2001;

w.   Beyle's Form 4 filed with the SEC on February 11, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 87 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

x.      Miskimens' Form 4 filed with the SEC on February 13, 2004 falsely reported that options granted to Miskimens had been granted on October 9, 2001;

y.      Klein's Form 4 filed with the SEC on February 18, 2004, February 24, 2004, March 2, 2004, March 9, 2004 falsely reported that options granted to Klein had been granted on October 15, 2001;

z.      Sporborg's Form 4 filed with the SEC on March 8, 2004 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

aa.     Klein's Form 4 filed with the SEC on March 17, 2004, March 18, 2004, March 23, 2004 and March 30, 2004 falsely reported that options granted to Klein had been granted on March 30, 2001;

bb.     Klein's Form 4 filed with the SEC on April 5, 2004 falsely reported that options granted to Klein had been granted on October 22, 1999 and March 30, 2001;

cc.     Huebner's Form 4 filed with the SEC on April 29, 2004 falsely reported that options granted to Huebner had been granted on March 30, 2001;

dd.     Beyle's Form 4 filed with the SEC on April 29, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

ee.     Klein's Form 4 filed with the SEC on May 5, 2004 and May 12, 2004 falsely reported that options granted to Klein had been granted on May 7, 2001;

ff.     Woodhouse's Form 4 filed with the SEC on May 10, 2004 falsely reported that options granted to Woodhouse had been granted on March 30, 2001 and July 17, 2001;

gg.     Klein's Form 4's filed with the SEC on May 19, 2004, May 26, 2004, June 2, 2004, June 15, 2004, June 22, 2004, June 30, 2004, July 2, 2004 and July 7, 2004 falsely reported that options granted to Klein had been granted on May 7, 2001;

hh.     Ferguson's Form 4 filed with the SEC on May 20, 2004 falsely reported that options granted to Ferguson had been granted on August 3, 1999 and October 22, 1999;

ii.     Klein's Form 4's filed with the SEC on July 7, 2004, July 14, 2004, July 20, 2004, July 21, 2004, December 2, 2004, December 8, 2004, December 14, 2004, December 21, 2004 and December 28, 2004 falsely reported that options granted to Klein had been granted on June 26, 2001.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 88 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

jj.   Ferguson's Form 4 filed with the SEC on August 31, 2004 falsely reported that options granted to Ferguson had been granted on October 22, 1999 and October 9, 2001.

kk.   Evans-Lombe's Form 4 filed with the SEC on September 1, 2004 falsely reported that options granted to Evans-Lombe had been granted on July 27, 1999 and October 22, 1999;

ll.   Woodhouse's Form 4 filed with the SEC on September 02, 2004 falsely reported that options granted to Woodhouse had been granted on October 25, 1999;

mm.   Beyle's Form 4 filed with the SEC on November 5, 2004 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

nn.   Sporborg's Form 4 filed with the SEC on November 5, 2004 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

oo.   Getty's Form 4 filed with the SEC on November 16, 2004 falsely reported that options granted to Getty had been granted on October 22, 1999 and October 15, 2001;

pp.   Ferguson's Form 4 filed with the SEC on November 17, 2004 falsely reported that options granted to Ferguson had been granted on March 30, 2001 and October 9, 2001;

qq.   Gurke's Form 4 filed with the SEC on April 26, 2005 falsely reported that options granted to Gurke had been granted on August 3, 1999, October 22, 1999 and February 1, 2000;

rr.   Beyle's Form 4 filed with the SEC on April 26, 2005 falsely reported that options granted to Beyle had been granted on March 30, 2001 and July 17, 2001;

ss.   Ferguson's Form 4 filed with the SEC on April 27, 2005 falsely reported that options granted to Ferguson had been granted on February 1, 2000 and March 30, 2001;

tt.   Gurke's Form 4 filed with the SEC on August 1, 2005 falsely reported that options granted to Gurke had been granted on March 30, 2001 and October 9, 2001;

uu.   Huebner's Form 4 filed with the SEC on August 2, 2005 falsely reported that options granted to Huebner had been granted on March 30, 2001;

vv.   Beyle's Form 4 filed with the SEC on August 2, 2005 falsely reported that options granted to Beyle had been granted on July 17, 2001;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 89 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

ww.   Sporborg's Form 4 filed with the SEC on August 8, 2005 falsely reported that options granted to Sporborg had been granted on July 23, 2001;

xx.   Evans-Lombe's Form 4 filed with the SEC on August 29, 2005 falsely reported that options granted to Evans-Lombe had been granted on May 4, 1999, October 22, 1999 and October 15, 2001; and

yy.   Getty's Form 4 filed with the SEC on January 3, 2006 falsely reported that options granted to Getty had been granted on March 30, 2001 and October 15, 2001.

## **Revelation of Options Backdating at Getty Images**

263.   Defendants Klein, Getty, Bailey, Garb and Sporborg continued to conceal their foregoing misconduct until November 9, 2006, when the Company issued a press release, announcing an internal review of its historical stock option grants resulting from an SEC investigation:

> Getty Images, Inc. (NYSE: GYI), the world's leading creator and distributor of visual content, today announced that its board of directors has established a special committee to conduct an internal investigation relating to the Company's stock option grant practices and related accounting for stock option grants. This review is being conducted with the assistance of outside legal counsel retained by the special committee.
>
> The Division of Enforcement of the Securities and Exchange Commission (the "SEC") had earlier notified the Company that it is conducting an informal inquiry into the Company's stock option grant practices, and has requested that the Company provide the SEC with certain information relating to the Company's stock option grant practices. The Company is cooperating fully with the SEC in this informal inquiry.

264.   As a result of the SEC inquiry, Getty's Board announced the same day that they had established the Special Committee to conduct an investigation relating to the Company's equity compensation grant practices and related accounting for equity compensation grants. The Special Committee consisted of two members of Getty Image's Board of Directors, Alan G. Spoon and Michael A. Stein, the chair of Getty Image's Audit Committee.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                   - 90 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

265.    On April 16, 2007, the Company issued a press release admitting that their stock option grants have incorrect measurement dates that must be adjusted.

266.    On June 13, 2007, the Company filed its restatement of its financial results adjusting for $27 million in additional compensation expenses.

## INSIDER SELLING

267.    During the relevant period, Defendants Klein, Getty, Garb and Sporborg, while in possession of materially adverse non-public information regarding the backdating of stock options and the false financial statements resulting therefrom, sold over $3 million shares of Getty Images stock with a total proceeds of over $169 million, a significant portion of which was obtained through the exercise of improperly backdated stock options, as shown in the chart below.  Specifically, Getty, from 2003 to 2006, sold 1,407,635 shares with total proceeds of $76,183,332.60, and Klein, from 1999 to 2006, sold 1,763,585 shares with total proceeds of $92,852,893.80, as shown below:

| Name | Date of Transaction | Shares Sold | Proceeds |
|---|---|---|---|
| Garb | 6/2/2005 | 3,500 | $262,850.00 |
| Getty | 11/11/03 to 1/3/06 | 1,407,635 | $76,183,332.60 |
| Klein | 2/25/99 to 1/20/06 | 1,763,585 | $92,852,893.80 |
| Sporborg | 3/4/04 to 8/4/05 | 9,583 | $577,309.86 |
| **TOTAL** | **2/25/99 to 1/20/06** | **3,184,303** | **$169,876,386.26** |

## GETTY IMAGES' FALSE FINANCIAL REPORTING
## IN VIOLATION OF GAAP, SEC REGULATIONS AND IRS RULES

268.    As a result of Defendants Klein, Getty, Bailey, Garb and Sporborg's improper backdating of stock options, Defendants Klein, Getty, Bailey, Garb and Sporborg caused Getty Images to violate GAAP, SEC regulations and IRS rules and regulations.

269.    Getty Images' financial results for 1999 through 2005 were included in reports filed with the SEC and in other shareholder reports.  In these reports, Defendants Klein, Getty, Bailey, Garb and Sporborg represented that Getty Images' financial results were presented in a fair manner and in accordance with GAAP.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)
- 91 -
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

270.    Defendants Klein, Getty, Bailey, Garb and Sporborg's representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information "a fair presentation" of the Company's financial condition and operations, causing the financial results to be presented in violation of GAAP and SEC rules.

271.    GAAP consists of those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at the particular time. Regulation S-X, to which the Company is subject as a registrant under the Exchange Act, 17 C.F.R. §210.4-01(a)(1), provides that financial statements filed with the SEC, which are not prepared in compliance with GAAP, are presumed to be misleading and inaccurate.

## Violations of GAAP

272.    During the relevant period, Defendants Getty, Klein, Sporborg, Bailey and Garb caused the Company to understate its compensation expense by not properly accounting for its stock options under GAAP and thus overstated the Company's net earnings.

273.    Under well-settled accounting principles in effect throughout the relevant period, Getty Images did not need to record an expense for options granted to employees at the current market price (at-the-money). The Company was, however, required to record an expense in its financial statements for any options granted below the current market price (in-the-money).  In order to provide Getty Images executives and employees with far more lucrative in-the-money options, while avoiding having to inform shareholders about millions of dollars incurred by the Company in compensation expenses (and without paying the IRS millions of dollars in employment taxes), Defendants Getty, Klein, Sporborg, Bailey and Garb systematically falsified Company records to create the false appearance that options had been granted at the market price on an earlier date.

274.    Throughout the relevant period, Getty Images accounted for stock options using the intrinsic method described in APB 25, "Accounting for Stock Issued to Employees."  Under

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 92 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

APB 25, employers were required to record as an expense on their financial statements the "intrinsic value" of a fixed stock option on its "measurement date."  An option that is in-the-money on the measurement date has intrinsic value, and the difference between its exercise price and the quoted market price must be recorded as compensation expense to be recognized over the vesting period of the option.  Options that are at-the-money or out-of-the-money on the measurement date need not be expensed.  Excluding non-employee directors, APB 25 required employers to record compensation expenses on options granted to non-employees irrespective of whether they were in-the-money or not on the date of grant.

### Getty Images' GAAP Violations Were Material

275.    Getty Images' false and misleading relevant period statements and omissions regarding its accounting were material, particularly in light of SEC guidance on materiality. SEC Staff Accounting Bulletin ("SAB") Topic 1M, Materiality, summarizes GAAP definitions of materiality.  Among other items, SAB Topic 1M says: "A matter is 'material' if there is a substantial likelihood that a reasonable person would consider it important."  It also stresses that materiality requires qualitative, as well as quantitative, considerations.  For example, if a known misstatement would cause a significant market reaction, that reaction should be taken into account in determining the materiality of the misstatement.

276.    SAB Topic 1M further states:

> among the considerations that may well render material a quantitatively small misstatement of a financial statement item are –
>
> *        *        *
>
> whether the misstatement masks a change in earnings or other trends
>
> whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise
>
> *        *        *

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 93 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA  98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability.

277.   SAB Topic 1M also says that an intentional misstatement of even immaterial items may be illegal and constitute fraudulent financial reporting.

278.   Getty Images' misstatements satisfy these criteria and thus were material from both a quantitative and qualitative perspective.

**Getty Images' Financial Statements Violated Fundamental Concepts of GAAP**

279.   Due to these accounting improprieties, the Company presented its financial results and statements in a manner that violated GAAP, which are described by the following statements:

(a)   The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements (APB No. 28, ¶10);

(b)   The principle that financial reporting should provide information that is useful to existing and potential investors and creditors and other users in making rational investment, credit and similar decisions (FASB Statement of Concepts No. 1, ¶34);

(c)   The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and the effects of transactions, events and circumstances that change resources and claims to those resources (Financial Accounting Standards Board ("FASB") Statement of Concepts No. 1, ¶40);

(d)   The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to stockholders for the use of enterprise resources entrusted to it.  To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e)   The principle that financial reporting should be reliable in that it represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶58-59);

(f)     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions (FASB Statement of Concepts No. 2, ¶79); and

(g)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered (FASB Statement of Concepts No. 2, ¶¶95, 97).

280.    Further, the undisclosed adverse information concealed by Defendants Getty, Klein, Sporborg, Bailey and Garb during the relevant period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

**Getty Images' Financial Statements Violated SEC Regulations**

281.    During the relevant period, Defendants Getty, Klein, Sporborg, Bailey and Garb caused Getty Images to violate SEC regulations by failing to disclose that the Company's senior executives had been granted backdated stock options.

282.    Under SEC Regulations, Item 8 of Form 14-A and Item 11 of Form 10-K, an issuer must furnish information required by Item 402 of Regulation S-K [17 C.F.R. §229.303]. Item 402(b) and (c) require a company to provide both a Summary Compensation Table and an Option/SAR Grants table identifying the compensation of the named executive officers – the Company's CEO and its next four most highly paid executives. Item 402 requires particularized disclosures involving a company's stock option grants in the last fiscal year. In the summary compensation table, the issuer must identify in a column "other annual compensation" received by the named executives that is not properly categorized as salary or bonus, including any "[a]bove market or preferential earnings on restricted stock, options, SARs or deferred compensation" paid to the officer during the period. Item 402(b)(2)(iii)(C)(2). In the option grant table, the issuer must identify in a column "[t]he per-share exercise or base price of the options. . . . If such exercise or base price is less than the market price of the underlying security

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 95 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   on the date of grant, a separate, adjoining column shall be added showing market price on the
2   date of grant. . . ." Item 402(c)(2)(iv).

3       283.    Defendants Getty, Klein, Sporborg, Bailey and Garb caused Getty Images to
4   violate SEC regulations by failing to disclose that the Company's named executive officers had
5   been granted options with exercise prices below the market value on the date the Board or
6   Compensation Committee approved the grant.

7                           **Violations of IRS Rules and Regulations**

8       284.    During the relevant period, Defendants Getty, Klein, Sporborg, Bailey and Garb
9   further caused Getty Images to violate IRS rules and regulations due to its improper accounting
10  for the backdated stock options.  As a result, the Company's tax liabilities were understated,
11  exposing Getty Images to potential amounts owed for back taxes, penalties and interest to the
12  IRS for improperly reporting compensation.

13      285.    Defendants Getty, Klein, Sporborg, Bailey and Garb caused the Company to
14  violate Section 162(m), which generally limits a publicly traded company's tax deductions for
15  compensation paid to each of its named executive officers to $1 million unless the pay is
16  determined to be "performance-based."  In order for compensation to be performance-based, the
17  Compensation Committee must have set pre-established and objective performance goals.  The
18  goals must then be approved by the shareholders. Section 162(m) defines stock options as
19  performance-based provided they are issued at an exercise price that is no less than the fair
20  market value of the stock on the date of the grant. Accordingly, properly issued stock options do
21  not have to be taken into account in calculating whether an executive's compensation has
22  exceeded the $1 million compensation cap.

23      286.    Section 162(m), known as the $1 million rule, was enacted in 1993 in order to tie
24  top executives' soaring pay packages more closely to a company's performance.  This change in
25  the tax law turned compensation practices for a company's top executives away from straight
26  salary-based compensation to performance-based compensation, including stock options.
27  According to former SEC Chairman Harvey Pitt: "What [162[m]] did was create incentives to

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 96 -

1   find other forms of compensation so people could get over the $1 million threshold without
2   running afoul of the code."

3       287.    Defendants Getty, Klein, Sporborg, Bailey and Garb caused Getty Images to
4   violate Section 162(m) by providing backdated options to the Company's named executive
5   officers, which were granted with exercise prices that were less than the fair market value of the
6   stock on the date of the grant. As a result, all of the income resulting from the exercise of the
7   options must be included for purposes of calculating whether the named executive's
8   compensation exceeds the $1 million cap for federal tax purposes.

9       288.    Defendants Getty, Klein, Sporborg, Bailey and Garb further caused the Company
10  to violate IRS rules and regulations in order to avoid having to withhold income and FICA tax
11  from its executives and employees upon the exercise of Getty Images' stock options by
12  improperly accounting for its Nonqualified Stock Options ("NSOs") as Incentive Stock Options
13  ("ISOs").

14      289.    ISOs are a form of equity compensation that may be provided to a company's
15  employees. ISOs are required to be granted at an exercise price that is no less than the fair
16  market value of the stock on the date of the grant and are entitled to preferential tax treatment as
17  they are not subject to income tax upon exercise of the options but only upon sale of the stock
18  (except for the possible imposition of alternative minimum tax on the option spread at the time of
19  exercise). Stock options that do not qualify as ISOs are considered to be NSOs. NSOs are not
20  entitled to preferential treatment as they are subject to income tax and FICA withholding upon
21  exercise. As a result, a company that fails to withhold income tax and/or FICA upon the exercise
22  of NSOs by its employees would be liable for the amount of the income tax and FICA that the
23  company failed to withhold upon exercise of the options, in addition to interest and penalties.

24      290.    By improperly treating its backdated options as ISOs, Defendants Getty, Klein,
25  Sporborg, Bailey and Garb failed to provide proper income tax and FICA withholdings upon the
26  exercise of its options by its executives and employees in violation of IRS rules and regulations.

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                         - 97 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

291.   The chart below illustrates Getty Images' false and misleading fiscal and quarterly financial results which materially understated its compensation expenses and thus overstated its earnings:

| Fiscal Year | Reported Earnings (Loss) | Reported Basic Earnings (Loss) Per Share |
|---|---|---|
| 1999 | ($67.833 million) | ($1.94) |
| 2000 | ($7.901 million) | ($0.32) |
| 2001 | ($95.312 million) | ($1.84) |
| 2002 | $21.468 million | $0.40 |
| 2003 | $64.017 million | $1.16 |
| 2004 | $106.65 million | $1.81 |
| 2005 | $149.703 million | $2.43 |

292.   Meanwhile, Defendants Getty, Klein, Sporborg, Bailey and Garb were causing the Company to grant them hundreds of thousands of stock options, which were backdated or misdated. As such, Defendants Getty, Klein, Sporborg, Bailey and Garb, in violation of GAAP, did not account for the significant and material amount in compensation expenses as to the aforementioned stock option grants, thereby overstating earnings and earnings per share.

**DEFENDANTS' BREACHES OF FIDUCIARY DUTIES**

293.   In a misguided effort to attract and retain employees in a competitive environment, Defendants Getty, Klein, Sporborg, Bailey and Garb exceeded the bounds of the law and legitimate business judgment by perpetrating their backdating scheme. Their misconduct was unjustifiable and constituted a gross breach of their fiduciary duties as officers and/or directors of the Company. Specifically, Defendants Getty, Klein, Sporborg, Bailey and Garb breached their fiduciary duties by:

a.   colluding with each other to backdate stock option grants;

b.   colluding with each other to violate GAAP and Section 162(m);

c.   colluding with each other to produce and disseminate false financial statements to Getty Images shareholders and the market that improperly recorded and accounted

AMENDED SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT (No. C 07-0317 JLR)   - 98 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    for the backdated option grants and concealed the improper backdating of stock
2    options; and

3    d.    colluding with each other to file false proxy statements, false financial statements,
     and false Form 4s in order to conceal the improper backdating of stock options.

4

5    294.   Defendants Getty, Klein, Sporborg, Bailey and Garb's foregoing misconduct was

6    not, and could not have been, an exercise of good faith business judgment.  Rather, it was

7    intended to, and did, unduly benefit defendants Getty, Klein, Sporborg, Albers, Beyle,

8    Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von

9    Bargen and Woodhouse at the expense of the Company.

10   295.   As a direct and proximate result of Defendants Getty, Klein, Sporborg, Bailey and

11   Garb's foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in

12   damages, including, but not limited to, the additional compensation expenses and tax liabilities

13   the Company will be required to incur, the loss of funds paid to the Company upon the exercise

14   of stock options resulting from the difference between the fair market value of the stock option

15   on the true date of grant and the price that was actually paid as a result of the backdated stock

16   option grant, the costs associated with the Company's internal investigation, costs and expenses

17   incurred in connection with the Company's restatement of historical financial results, and costs

18   and expenses incurred in connection with the SEC investigation of the Company.

19   296.   Defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe,

20   Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse

21   have exercised numerous backdated options at improperly low prices and have then sold the

22   shares for substantial profits.  Consequently, these defendants have been unjustly enriched by

23   garnering millions of dollars in illicit profits and depriving the Company of millions of dollars in

24   payments that the Company should have received upon exercise of the options.

25   **DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS**

26   297.   Plaintiff brings this action derivatively in the right and for the benefit of the

27   Company to redress the Individual Defendants' breaches of fiduciary duties, unjust enrichment,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 99 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1  statutory violations, and/or other violations.

2  298.  Plaintiff is an owner of Getty Images common stock and was an owner of Getty

3  Images common stock at times relevant hereto.

4  299.  Plaintiff will adequately and fairly represent the interests of the Company and its

5  shareholders in enforcing and prosecuting its rights.

6  300.  As a result of the facts set forth herein, Plaintiff has not made any demand on

7  Getty Images' Board of Directors to institute this action against the Individual Defendants.  Such

8  demand would be a futile and useless act because the Board is incapable of making an

9  independent and disinterested decision to institute and vigorously prosecute this action.

10  301.  At the time this action was commenced, the Board consisted of seven directors:

11  defendants Getty, Klein, Sporborg, Bailey and Garb and directors Alan G. Spoon and Michael A.

12  Stein.  Five out of the seven directors -- a majority of the board -- received and/or approved

13  backdated options.  Thus, the Board is incapable of making an independent and disinterested

14  decision to institute and vigorously prosecute this action.

15  302.  The following chart summarizes the positions of certain directors during the

16  relevant period:

17
18
19
20
21
22

| Director | Recipient of Backdated Options | Compensation Committee Member During relevant period | Stock Option Committee Member During relevant period | Audit Committee Member During the relevant period |
|---|---|---|---|---|
| Getty | x | | | |
| Klein | x | | x | |
| Sporborg | x | x | | x |
| Bailey | | x | | x |
| Garb | | x | | x |

23

24  303.  The following directors are incapable of independently and disinterestedly

25  considering a demand to commence and vigorously prosecute this action:

26  **Getty**

27  304.  During the relevant period, Defendant Getty received 915,000 backdated options.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)                                     - 100 -                        LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1    Thus, Defendant Getty is directly interested in the improperly backdated stock option grants

2    complained of herein.  Also, as a co-founder of the Company and Chairman of the Board,

3    Defendant Getty knowingly and deliberately participated in and approved the improper

4    backdating of stock options, as alleged herein, and therefore is substantially likely to be held

5    liable for the misconduct complained of herein.

6        305.    Because of his knowing participation in the backdating scheme, Getty knowingly

7    and deliberately participated in and approved the Company's filing of false financial statements

8    and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and

9    approved the Company's violations of GAAP and Section 162(m), as alleged herein, and

10   therefore is substantially likely to be held liable for the misconduct complained of herein.

11   Moreover, by colluding with the other defendants who received backdated options, as alleged

12   herein, Getty has demonstrated that he is unable or unwilling to act independently of these other

13   defendants.

14       306.    Moreover, in connection with the proxy statements dated April 7, 2000, April 6,

15   2001 and April 19, 2002, Getty knowingly and intentionally misrepresented Getty Images'

16   compensation practices while simultaneously seeking shareholder approval of the stock option

17   plans under which Getty and others backdated stock options and seeking shareholder approval to

18   increase the authorized number of Company shares allowed under the stock incentive plans in

19   order to continue the backdating scheme.

20       307.    Defendant Getty is also directly interested in the stock option backdating scheme

21   because he received $76,183,332.60 in illegal proceeds from his sale of Getty Images stock, a

22   significant portion of which was obtained through the exercise of improperly backdated stock

23   options.

24                                          **Klein**

25       308.    Defendant Klein is a recipient of 1,317,000 backdated options.  Thus, he is

26   directly interested in the improperly backdated stock option grants complained of herein.  Also,

27   as a director and CEO of the Company, Klein knowingly and deliberately participated in and

AMERICAN SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                                - 101 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   approved the improper backdating of stock options, as alleged herein, and therefore is

2   substantially likely to be held liable for the misconduct complained of herein.

3        309.   Because of his knowing participation in the backdating scheme, Klein knowingly

4   and deliberately participated in and approved the Company's filing of false financial statements

5   and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and

6   approved the Company's violations of GAAP and Section 162(m), as alleged herein, and

7   therefore is substantially likely to be held liable for the misconduct complained of herein.

8   Moreover, by colluding with the other defendants who received backdated options and others, as

9   alleged herein, Klein has demonstrated that he is unable or unwilling to act independently of

10  those Defendants.

11       310.   Furthermore, Klein's principal professional occupation is his position as CEO of

12  the Company.   In his position as CEO of the Company, Klein stands to earn hundreds of

13  thousands of dollars in annual salary, bonuses, and other compensation, all of which must be

14  approved by defendants Bailey, Garb and Sporborg, who currently serve as members of the

15  Compensation Committee.  In 2005, for his service as CEO, Klein received a salary of $950,000,

16  a bonus of $691,600 and a grant of 350,000 stock options.  Accordingly, Klein is incapable of

17  independently and disinterestedly considering a demand to commence and vigorously prosecute

18  this action against defendants Bailey, Garb and Sporborg.

19       311.   Moreover, in connection with the proxy statements dated April 7, 2000, April 6,

20  2001 and April 19, 2002, Klein knowingly and intentionally misrepresented Getty Images'

21  compensation practices while simultaneously seeking shareholder approval of the stock option

22  plans under which Klein and others backdated stock options and seeking shareholder approval to

23  increase the authorized number of Company shares allowed under the stock incentive plans in

24  order to continue the backdating scheme.

25       312.   Defendant Klein is also directly interested in the stock option backdating scheme

26  because he received $92,852,893.80 in illegal proceeds from his sale of Getty Images stock, a

27  significant portion of which was obtained through the exercise of improperly backdated stock

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 102 -

1  options.

2  ## Sporborg

3      313.  Sporborg is a recipient of at least 8,333 backdated stock options. Thus, he is
4  directly interested in the improperly backdated stock option grants complained of herein.  Also,
5  as a member of the Compensation Committee as all relevant times hereto, Sporborg knowingly
6  and deliberately participated in and approved the improper backdating of stock options, as
7  alleged herein, and therefore is substantially likely to be held liable for the misconduct
8  complained of herein

9      314.  Also, as a member of the Audit Committee, Sporborg knowingly and deliberately
10  participated in and knowingly approved the filing of false financial statements and other false
11  SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the
12  Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is
13  substantially likely to be held liable for the misconduct complained of herein.  Moreover, by
14  colluding with the Defendants who received backdated options and others, as alleged herein,
15  Sporborg has demonstrated that he is unable or unwilling to act independently of those
16  Defendants.

17      315.  Moreover, in connection with the proxy statements dated April 7, 2000, April 6,
18  2001 and April 19, 2002, Sporborg knowingly and intentionally misrepresented Getty Images'
19  compensation practices while simultaneously seeking shareholder approval of the stock option
20  plans under which Sporborg and others backdated stock options and seeking shareholder
21  approval to increase the authorized number of Company shares allowed under the stock incentive
22  plans in order to continue the backdating scheme.

23      316.  Defendant Sporborg is also directly interested in the stock option backdating
24  scheme because he received $577,309.86 in illegal proceeds from his sale of Getty Images stock,
25  a significant portion of which was obtained through the exercise of improperly backdated stock
26  options.

27

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 103 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

**Bailey**

317.    Bailey, as a member of the Compensation Committee as all relevant times hereto, knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and as a member of the Audit Committee, Bailey knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Defendants who received backdated options and others, as alleged herein, Bailey has demonstrated that he is unable or unwilling to act independently of those Defendants.

318.    Moreover, in connection with the proxy statements dated April 7, 2000, April 6, 2001 and April 19, 2002, Bailey knowingly and intentionally misrepresented Getty Images' compensation practices while simultaneously seeking shareholder approval of the stock option plans under Bailey and others backdated stock options and seeking shareholder approval to increase the authorized number of Company shares allowed under the stock incentive plans in order to continue the backdating scheme.

**Garb**

319.    Garb, as a member of the Compensation Committee as all relevant times hereto, knowingly and deliberately participated in and approved the improper backdating of stock options, as alleged herein, and as a member of the Audit Committee, Garb knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings, as alleged herein, and knowingly and deliberately participated in and approved the Company's violations of GAAP and Section 162(m), as alleged herein, and therefore is substantially likely to be held liable for the misconduct complained of herein.  Moreover, by colluding with the Defendants who received backdated options and others, as alleged herein, Garb has demonstrated that he is unable or unwilling to act independently of those Defendants.

320.    Moreover, in connection with the proxy statements dated April 7, 2000, April 6,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                                     - 104 -
(No. C 07-0317 JLR)

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 868-7870

1    2001 and April 19, 2002, Garb knowingly and intentionally misrepresented Getty Images'

2    compensation practices while simultaneously seeking shareholder approval of the stock option

3    plans under Garb and others backdated stock options and seeking shareholder approval to

4    increase the authorized number of Company shares allowed under the stock incentive plans in

5    order to continue the backdating scheme.

6                                         **Other Conflicts**

7        321.    Getty, Klein, Sporborg and defendant Evans-Lombe share a long-standing

8    personal and professional relationship, especially with regard to their work at Hambros Bank

9    Limited ("Hambros"). Getty joined Hambros in 1991, prior to founding Getty Images, and Klein

10   served as a director and Manager of the media group. Moreover, Sporborg served as Hambros'

11   Chairman and CEO prior to joining Getty Images, and Evans-Lombe held various finance related

12   positions at Hambros. Accordingly, Getty, Klein, and Sporborg are incapable of independently

13   and disinterestedly considering a demand to commence and vigorously prosecute this action

14   against each other and Evans-Lombe.

15             **Backdating Is Not an Exercise of Valid Business Judgment**

16       322.    Demand is also excused because the misconduct complained of herein was not,

17   and could not have been, an exercise of good faith business judgment. As represented in Getty

18   Images' proxy statements, the stated purpose of the Company's shareholder-approved stock

19   option plan is to attract and retain employees by providing compensation that reflects the

20   Company's stock performance and "align[s] the interests of executive[s] with those of the

21   Stockholders by providing . . . [them] with a financial interest in the Company."

22       323.    However, by granting options with backdated exercise prices, Defendants Klein,

23   Getty, Bailey, Garb and Sporborg undermined the purpose of the Company's shareholder-

24   approved stock option plan by awarding employees compensation that had intrinsic value

25   regardless of Getty Images' stock performance. In effect, this practice was nothing more than

26   secret handouts to executives and employees at the expense of unsuspecting shareholders and the

27   Company.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT                        - 105 -
(No. C 07-0317 JLR)

LAW OFFICES OF
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

324.   Defendants Klein, Getty, Bailey, Garb and Sporborg could have achieved the stated purpose of attracting and retaining "key executives" by granting them additional options under its incentive plan, or by granting options at a price less than the fair market value on the date of grant and simply disclosing and expensing these grants.  Instead, Defendants Klein, Getty, Bailey, Garb and Sporborg backdated option grants in violation of the Company's shareholder-approved stock option plan and improperly reported these grants in the Company's and their own financial disclosures.

325.   The practice of backdating stock options cannot be a valid exercise of business judgment because it has subjected Getty Images to potentially massive liability.  Getty Images conducted an internal investigation concerning the historical backdating of option grants and admitted to backdating stock option grants.  The SEC has also initiated its own investigation into the Company's prior option grants.  The Company also restated its previously issued financial statements due to errors in accounting for compensation expenses.  Furthermore, Getty Images will likely suffer tax liabilities for the additional compensation they will have to expense as the result of backdated options, and it has tarnished its reputation in the investment community through this deliberate and calculated conduct.

## COUNT I

### Against Defendants Getty, Klein, Sporborg, Bailey and Garb for

### Violations of §10(b) and Rule 10b-5 of the Securities and Exchange Act

326.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

327.   Throughout the relevant period, defendants Getty, Klein, Sporborg, Bailey and Garb individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, intentionally or recklessly employed devices, schemes and artifices to defraud and engaged in acts, practices and a course of business which operated as a fraud and deceit upon the Company.

328.   Defendants Getty, Klein, Sporborg, Bailey and Garb, as top executive officers

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 106 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1  and/or directors of the Company, are liable as direct participants in the wrongs complained of

2  herein.  Through their positions of control and authority as officers and/or directors of the

3  Company, defendants Getty, Klein, Sporborg, Bailey and Garb were able to and did control the

4  conduct complained of herein.

5        329.   Defendants Getty, Klein, Sporborg, Bailey and Garb acted with scienter in that

6  they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard

7  for the truth in that they failed to ascertain and to disclose the true facts, even though such facts

8  were available to them.  Defendants Getty, Klein, Sporborg, Bailey and Garb were among the

9  senior management and/or directors of the Company and were therefore directly responsible for

10  the fraud alleged herein.

11        330.   The Company relied upon defendants Getty, Klein, Sporborg, Bailey and Garb's

12  fraud in granting defendants Getty, Klein, Sporborg, Bailey and Garb options to purchase shares

13  of the Company's common stock, as alleged herein.

14        331.   As a direct and proximate result of defendants Getty, Klein, Sporborg, Bailey and

15  Garb's fraud, the Company has sustained millions of dollars in damages, including, but not

16  limited to, the additional compensation expenses and tax liabilities the Company will be required

17  to incur, the loss of funds paid to the Company upon the exercise of stock options resulting from

18  the difference between the fair market value of the stock option on the true date of grant and the

19  price that was actually paid as a result of the backdated stock option grant, the costs associated

20  with the Company's internal investigation, costs and expenses incurred in connection with the

21  Company's restatement of historical financial results, and costs and expenses incurred in

22  connection with the SEC investigation of the Company.

23  **COUNT II**

24  **Against Defendants Getty, Klein, Sporborg, Bailey and Garb**

25  **for Violations of §14(a) of the Securities Exchange Act**

26        332.   Plaintiff incorporates by reference and realleges each and every allegation set

27  forth above, as though fully set forth herein.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 107 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

333.   Rule 14-A-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14-A-9.

334.   The proxy statements described herein violated §14(a) and Rule 14-A-9 because defendants Getty, Klein, Sporborg, Bailey and Garb omitted material facts, including the fact that they were causing Getty Images to engage in a secret options backdating scheme, a fact which defendants Getty, Klein, Sporborg, Bailey and Garb were aware of and participated in from at least 1994.

335.   Defendants Getty, Klein, Sporborg, Bailey and Garb knew that the proxy statements were materially false and misleading.

336.   The misrepresentations and omissions in the proxy statements were material.  The proxy statements were an essential link in the accomplishment of the continuation of Defendants Getty, Klein, Sporborg, Bailey and Garb's unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of the shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

337.   The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT III

### Against Defendants Getty, Klein, Sporborg, Bailey and Garb

### For Violations of §20(a) of the Securities Exchange Act

338.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

339.   Defendants Getty, Klein, Sporborg, Bailey and Garb, by virtue of their positions with Getty Images and their specific acts, were, at the time of the wrongs alleged herein,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 108 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1   controlling persons of Getty Images within the meaning of §20(a) of the Exchange Act. They

2   had the power and influence and exercised the same to cause Getty Images to engage in the

3   illegal conduct and practices complained of herein.

### COUNT IV

**Against Defendants Getty, Klein, Sporborg, Bailey and Garb**

**for Breach of Fiduciary Duty and/or Aiding and Abetting**

7   340.   Plaintiff incorporates by reference and realleges each and every allegation set

8   forth above, as though fully set forth herein.

9   341.   As alleged in detail herein, Defendants Getty, Klein, Sporborg, Bailey and Garb

10  had a fiduciary duty to, among other things, refrain from unduly benefiting themselves and other

11  Company insiders at the expense of the Company.

12  342.   As alleged in detail herein, Defendants Getty, Klein, Sporborg, Bailey and Garb

13  breached their fiduciary duties by, among other things, engaging in a scheme to grant backdated

14  stock options to themselves and/or certain other officers and directors of the Company and cover

15  up their misconduct.

16  343.   In breach of their fiduciary duties of loyalty and good faith, Defendants Getty,

17  Klein, Sporborg, Bailey and Garb agreed to and did participate with and/or aided and abetted one

18  another in a deliberate course of action designed to divert corporate assets to themselves and/or

19  other Company insiders.

20  344.   Defendants Getty, Klein, Sporborg, Bailey and Garb's foregoing misconduct was

21  not, and could not have been, an exercise of good faith business judgment. Rather, it was

22  intended to and did, unduly benefit Defendants Getty, Klein, Sporborg, Albers, Beyle,

23  Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von

24  Bargen and Woodhouse at the expense of the Company.

25  345.   As a direct and proximate result of Defendants Getty, Klein, Sporborg, Bailey and

26  Garb's foregoing breaches of their fiduciary duties, the Company has sustained millions of

27  dollars in damages, including, but not limited to, the additional compensation expenses and tax

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 109 -

1  liabilities the Company will be required to incur, the loss of funds paid to the Company upon the

2  exercise of stock options resulting from the difference between the fair market value of the stock

3  option on the true date of grant and the price that was actually paid as a result of the backdated

4  stock option grant, the costs associated with the Company's internal investigation, costs and

5  expenses incurred in connection with the Company's restatement of historical financial results,

6  and costs and expenses incurred in connection with the SEC investigation of the Company.

7  **COUNT V**

8  **Against Defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe,**

9  **Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and**

10  **Woodhouse for Unjust Enrichment**

11  346.   Plaintiff incorporates by reference and realleges each and every allegation set

12  forth above, as though fully set forth herein.

13  347.   Defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe,

14  Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse

15  were unjustly enriched by their receipt and retention of backdated stock option grants and the

16  proceeds they received through exercising backdated stock options, as alleged herein and it

17  would be unconscionable to allow them to retain the benefits thereof.

18  348.   To remedy defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-

19  Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and

20  Woodhouse's unjust enrichment, the Court should order them to disgorge to the Company all of

21  the backdated stock options they received, including the proceeds of any such options that have

22  been exercised, sold, pledged, or otherwise monetized.

23  **COUNT VI**

24  **Against Defendants Getty, Klein, Sporborg, Bailey and Garb for Constructive Fraud**

25  349.   Plaintiff incorporates by reference and realleges each and every allegation set

26  forth above, as though fully set forth herein.

27  350.   As corporate fiduciaries, Defendants Getty, Klein, Sporborg, Bailey and Garb

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 110 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

owed to Getty Images and its shareholders a duty of candor and full accurate disclosure regarding the true state of Getty Images' business and assets and their conduct with regard thereto.

351.   As a result of the conduct complained of, Defendants Getty, Klein, Sporborg, Bailey and Garb made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Getty Images' shareholders despite their duties to, *inter alia*, disclose the true facts regarding their stewardship of Getty Images.   Thus they have committed constructive fraud and violated their duty of candor.

352.   By reason of the foregoing, Getty Images has been damaged.

## COUNT VII

### Against the Individual Defendants for Corporate Waste

353.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

354.   As a result of the conduct described above, the Individual Defendants will be and have been unjustly enriched at the expense of Getty Images, in the form of unjustified salaries, benefits, bonuses, stock option grants, and other emoluments of office.

355.   All the payments and benefits provided to the Individual Defendants were at the expense of Getty Images.   The Company received no benefit from these payments, and Getty Images was damaged by such payments.

356.   Certain defendants sold Getty Images stock for a profit during the period of deception, misusing confidential non-public corporate information.   These defendants should be required to disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Getty Images.   A constructive trust for the benefit of the Company should be imposed thereon.

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 111 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

## COUNT VIII

### Against the Klein, Getty, Garb and Sporborg

### for Insider Selling and Misappropriation of Information

357.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

358.   At the time of their stock sales, defendants Klein, Getty, Garb and Sporborg knew that the Company's financial results were false and misleading.   These Defendants' sales of Getty Images common stock while in possession and control of this material adverse nonpublic information was a breach of their fiduciary duties of good faith, honesty and loyalty.

359.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the fiduciary owed by defendants Klein, Getty, Garb and Sporborg to the Company, Plaintiff, on behalf of the Company, are entitled to the imposition of a trust on any profits these Defendants obtained thereby.

360.   Plaintiff, as shareholder of Getty Images, seeks damages and other relief for Getty Images.

WHEREFORE, Plaintiff demands judgment as follows:

A.   Against Defendants Getty, Klein, Sporborg, Bailey and Garb and in favor of the Company for the amount of damages sustained by the Company as a result of their misconduct;

B.   Ordering defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized and imposing a constructive trust thereon;

C.   Granting appropriate equitable relief to remedy Defendants Getty, Klein, Sporborg, Bailey and Garb's breaches of fiduciary duties;

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 112 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1       D.    Directing the Company to take all necessary actions to reform and improve its

2  corporate governance and internal control procedures to comply with applicable law, including,

3  but not limited to, putting forward for a shareholder vote resolutions for amendments to the

4  Company's By-Laws or Articles of Incorporation and taking such other action as may be

5  necessary to place before shareholders for a vote adoption of the following Corporate

6  Governance policies:

7       (a)    a proposal requiring that the office of CEO of the Company and Chairman

8  of the Board be permanently held by separate individuals and that the Chairman of the Board

9  meets rigorous "independent" standards;

10       (b)    a proposal to strengthen the Board's supervision of operations and develop

11  and implement procedures for greater shareholder input into the policies and guidelines of the

12  Board;

13       (c)    appropriately test and then strengthen the internal audit and control

14  functions;

15       (d)    rotate independent auditing firms every five years;

16       (e)    control and limit insider stock selling and the terms and timing of stock

17  option grants; and

18       (f)    reform executive compensation;

19       E.    Ordering an accounting of all stock option grants made to defendants Getty,

20  Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner,

21  Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse, including, but not limited to,

22  the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the

23  grants, the dates the stock options were exercised, as well as the disposition of any proceeds

24  received by defendants Getty, Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe,

25  Ferguson, Gurke, Huebner, Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse via

26  sale or other exercise of the grants;

27       F.    Ordering all contracts which provide for stock option grants to defendants Getty,

AMENDED SHAREHOLDER VERIFIED
DERIVATIVE COMPLAINT
(No. C 07-0317 JLR)

- 113 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 868-7870

1   Klein, Sporborg, Albers, Beyle, Blackwell, Evans-Lombe, Ferguson, Gurke, Huebner,

2   Miskimens, O'Neill, Powell, Roling, von Bargen and Woodhouse and were entered into during

3   the relevant period should, therefore, be rescinded, with all sums paid under such contracts

4   returned to the Company, and all such executory contracts cancelled and declared void;

5        G.   Awarding to Plaintiff the costs and disbursements of the action, including

6   reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

7        H.   Granting such other and further relief as the Court deems just and proper.

8                              **JURY TRIAL DEMANDED**

9        Plaintiff demands a trial by jury.

10

11  Dated: August 27, 2007                    Respectfully submitted,

12                                            LAW OFFICES OF CLIFFORD A. CANTOR, P.C.

13                                              s/   Clifford A. Cantor, WSBA # 893
                                              627 208th Avenue SE
14                                            Sammamish, WA 98074
15                                            Tel: (425) 868-7813
                                              Fax: (425) 868-7870
16                                            cacantor@comcast.net

17                                            SCHIFFRIN & BARROWAY LLP
18                                              s/   Lee D. Rudy
19                                            Lee D. Rudy
                                              Nichole Browning
20                                            Tara P. Kao
                                              280 King of Prussia Road
21                                            Radnor, PA 19087
                                              Tel: (610) 667-7706
22                                            Fax: (610) 667-7056
23                                            lrudy@sbtklaw.com
                                              nbrowning@sbtklaw.com
24                                            tkao@sbtklaw.com

25

26

27

## VERIFICATION

I, TARA KAO, hereby declare as follows:

1.      I am an associate of the law firm of Schiffrin Barroway Topaz & Kessler, LLP, counsel for plaintiff Richard B. Edmonds in the above-entitled action.  I have read the foregoing Amended Shareholder Verified Derivative Complaint and know the contents thereof.  I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.      I make this Verification because plaintiff Richard B. Edmonds is absent from the County of Delaware, Pennsylvania where I maintain my office.

Executed this 27 day of August, 2007.


_____/s/ Tara Kao_____
                                        TARA P. KAO

## DECLARATION OF SERVICE

I, TARA KAO, the undersigned, declare:

1.       That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of Delaware, Pennsylvania, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 280 King of Prussia Road, Radnor, Pennsylvania 19087.

2.       That on August 27, 2007, declarant served the following AMENDED SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT via the CM/ECF System to the parties listed on the attached service list.

3.       That there is regular communication between the parties.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 27th day of August 2007, at Radnor, Pennsylvania.


                                        ___/s/_____
                                        TARA KAO

GETTY IMAGES, INC.
Service List – August 27, 2007
Page 1 of 1

| **COUNSEL FOR PLAINTIFF** | **COUNSEL FOR DEFENDANTS** |
|---|---|

**COUNSEL FOR PLAINTIFF**

SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
Lee D. Rudy
Nichole Browning
Tara P. Kao
280 King of Prussia Road
Radnor, PA  19087
610/667-7706
610/667-7056 (fax)
ezagar@sbtklaw.com
nbrownging@sbtklaw.com
tkao@sbtklaw.com

LAW OFFICES OF CLIFFORD A.
CANTOR, P.C.
Clifford A Cantor
627 208TH AVE SE
Sammamish, WA 98074-7033
425/868-7813
425/868-7870 (fax)
cacantor@comcast.net

*Counsel for Plaintiff Richard B. Edmonds*

**COUNSEL FOR DEFENDANTS**

HELLER EHRMAN LLP
George E. Greer
Lori Lynn Phillips
701 5th Avenue, Suite 6100
Seattle, WA 98104-7098
206/447-0900
206/447-0849 (fax)
george.greer@hellerehrman.com
lori.phillips@hellerehrman.com
&
Howard S. Caro
333 Bush Street
San Francisco, CA 94104-2878
415/772-6000
howard.caro@hellerehrman.com

*Counsel for Defendants Mark H. Getty,
Jonathan D. Klein, A.D. Albers, James N.
Bailey, Jeff Beyle, M. Lewis Blackwell,
Richard R. Ellis, Nick Evans-Lombe, John Z.
Ferguson, Andrew S. Garb, Jim Gurke,
Elizabeth J. Huebner, Scott A. Miskimens,
William O'Neill, Christopher H. Sporborg,
Sally Von Bargen, and Warwick K.
Woodhouse*

SIRIANNI YOUTZ MEIER &
SPOONEMORE
Richard E. Spoonemore
Stephen John Sirianni
719 2ND AVE
1100 MILLENNIUM TOWER
SEATTLE, WA 98104
206/223-0303
206/223-0246 (fax)
rspoonemore@sylaw.com
ssirianni@sylaw.com

*Counsel for Nominal Defendant Getty
Images, Inc.*