HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD EDMONDS, in his individual capacity and derivatively on behalf of Nominal Defendant GETTY IMAGES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MARK GETTY, et al.,<br><br>Defendants. | CASE NO. C07-0317RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on the motion of Plaintiff Richard Edmonds for preliminary approval of the parties' settlement of this action (Dkt. # 59). Defendants do not oppose the motion. Because the circumstances surrounding the settlement raise concern that the court lacks subject matter jurisdiction, the court orders the parties to SHOW CAUSE why this action should not be dismissed. The court directs the clerk to RENOTE the motion for preliminary approval (Dkt. # 59) to February 13, 2009.

## II. BACKGROUND[1]

This action began as a shareholder derivative action on behalf of Getty Images, Inc. ("Getty Images"). Mr. Edmonds, a Getty Images shareholder at the time he filed his

---

[1] So far as the court is aware, the background facts the court recites are undisputed. Most are taken from the parties' Stipulation of Compromise and Settlement (Dkt. # 59-2).

ORDER – 1

complaint, contended that Defendants, a collection of Getty Images directors and officers, had improperly granted and received "backdated" stock options. A stock option is backdated when it is assigned a granting date that precedes its actual grant date. In this case, Mr. Edmonds contended that the options in question were backdated so that they would appear to have been granted on days on which Getty Images stock was trading at relative lows. Backdated options are a boon to their recipients, because the exercise price of the option is depressed, and (assuming the value of the stock increases) the profit from exercising the option is increased concomitantly. Backdated options are no boon to existing shareholders. Until recently, accounting rules permitted companies to record no compensation expense for options whose exercise price was equal to the stock's price on the date of the grant. Backdated options, whose exercise price is below the stock's price on the date of the grant, must be recorded as an expense. According to Mr. Edmonds, Getty Images backdated stock option grants without recording compensation expenses. After the options backdating was revealed, Getty Images restated numerous quarterly earnings reports, recording an additional $27 million in compensation expenses.

Mr. Edmonds filed this action in March 2007. The court stayed discovery pending the resolution of Defendants' motions to dismiss. Mr. Edmonds successfully opposed Getty Images' motion to dismiss for failure to make a demand upon its board of directors before filing suit. The individual Defendants filed a second motion to dismiss in January 2008.

At about the same time, the media first reported that Getty Images had put itself up for sale. The company confirmed those reports. On February 26, 2008, the company announced that it had reached an agreement with a private equity group for a cash merger. The merger was subject to shareholder approval.

These announcements prompted two motions from Mr. Edmonds. In one, he sought to lift the discovery stay. In the other, he sought to amend his complaint to add

ORDER – 2

two claims for injunctive relief on behalf of a putative class of Getty Images shareholders. In both motions, he acknowledged the possibility that if Getty Images was sold or merged, he would lose standing to assert a derivative claim.

The court resolved none of those motions, because the parties notified the court in May 2008 that they had reached a settlement. The parties informed the court that they wished to resolve not only this action, but a related consolidated action asserting derivative and class claims in King County Superior Court.[2] Because their settlement would require court approval, the parties requested time to perfect their settlement and file the appropriate motion or motions.

Negotiations leading to the settlement took place after the announcement of the proposed merger, but before its consummation. Mr. Edmonds successfully negotiated with Defendants to require Getty Images to make additional disclosures in proxy statements soliciting shareholder votes for the merger. Among those disclosures was that, as a result of the merger, shareholders might lose standing to assert derivative claims in both this action and the state court actions. Mr. Edmonds also negotiated disclosures related to Getty Images' contacts with potential acquirers, the valuation of the company by investment bankers, and the reasonableness of the merger price.

Getty Images shareholders approved the merger, and it closed on July 2, 2008. Getty Images has been extinguished as a legal entity. Mr. Edmonds is no longer a Getty Images shareholder. So far as the record reveals, no one is a Getty Images shareholder.

On October 17, 2008, Mr. Edmonds filed this unopposed motion for preliminary approval of a class action settlement. He asked the court to preliminarily certify a class

---

[2] The consolidated state court actions are *Lopez v. Klein*, No. 07-2-03958-9SEA, and *Devenport v. Getty Images*, No. 08-2-06970-2SEA. After proceedings that the court need not recount, the state court actions were consolidated and stayed in favor of the case pending before this court. So far as the record reveals, the state court actions are still stayed. Although it is not clear from the record, it appears that no class has been certified in the state court actions, and that counsel for Mr. Edmonds intends to dismiss the state court actions without certification or further notice in the event that this court approves the parties' settlement. Nothing in this order should be construed as a comment on the settlement as it applies to the state court actions.

ORDER – 3

of all holders of Getty Images stock between January 29, 2007 and July 2, 2008. The settlement would provide no damages for class members. Instead, the consideration for settling plaintiffs is the additional proxy disclosures that Mr. Edmonds negotiated before the merger. Mr. Edmonds' counsel would also receive $900,000 for attorney fees and expenses. In exchange for this relief, class members would not only release the claims asserted in this action (claims targeting the options backdating and claims for injunctive relief relating to the merger), but also any claims "that arise out of or relate in any way to the Merger or the Merger Agreement." Prop. Fin. Judg. (Dkt. # 59-2, Ex. D).

Neither Mr. Edmonds nor Defendants discussed this court's subject matter jurisdiction, either in the motion for preliminary approval or the stipulation of settlement filed with it. Upon review of these documents, the court contacted counsel for all parties informally to notify them of concerns regarding jurisdiction. Mr. Edmonds submitted a brief statement (Dkt. # 62) asserting that the court had subject matter jurisdiction over both the derivative claims and the class claims. Defendants submitted a two-paragraph statement (Dkt. # 63), citing no authority, but asserting without explanation that "Defendants agree that there is a controversy between the parties with respect to Plaintiff's class and derivative claims, over which this Court has subject matter jurisdiction."

### III. ANALYSIS

For at least two reasons, the parties' stipulation to settle this matter is not itself a sufficient basis for approving the settlement. First, the settlement would require the court to certify a class and dispose of the claims of its members. The court has an independent obligation to protect class members. *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). When parties seek to settle a class action, the court is obliged to ensure that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Shareholder derivative actions are not class actions, but they are subject to similar requirements. *See* Fed. R.

ORDER – 4

Civ. P. 23.1(c) (requiring court approval and notice to shareholders before settlement of a derivative action); *Burks v. Lasker*, 441 U.S. 471, 485 n.16 (1979) (describing purposes of court approval of derivative action settlements). Second, in any action, the court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

The court's concerns regarding subject matter jurisdiction are twofold. As to Mr. Edmonds' derivative claims, it appears that he was stripped of standing to assert them when Getty Images ceased to exist. *See Powers ex rel. B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."). As to his class claims, they sought only injunctive relief related to the merger, and it appears that those claims became moot with the consummation of the merger. In the remainder of this order, the court will address both concerns, and then explain why they necessitate this order to show cause. Finally, the court will make a preliminary analysis of the fairness of the proposed settlement in light of Mr. Edmonds' proposals for salvaging subject matter jurisdiction.

### A. Neither Mr. Edmonds Nor Anyone Else Appears to Have Standing to Pursue Derivative Claims on Behalf of Getty Images.

The parties themselves acknowledged, before they reached a settlement, that only a current shareholder of a company has standing to maintain a derivative action. Mr. Edmonds cited the continuous share ownership rule of *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984), which dictates that when a derivative plaintiff ceases to be a shareholder because of a merger, he "loses standing to continue a derivative suit." The *Lewis v. Anderson* court relied on Delaware law, which likely does not apply in this action. A federal court exercising diversity jurisdiction does not rely on state law in determining derivative standing. *Kona Enters., Inc. v. Estate of Bishop*, 179 F.3d 767,

ORDER – 5

769 (9th Cir. 1999). Although Mr. Edmonds asserts both federal question jurisdiction and diversity jurisdiction, there is no reason to believe that the addition of federal question jurisdiction would require the court to consider state law on this issue. *See Klein v. Landon (In re Mercury Interactive Corp. Deriv. Litig.)*, 487 F. Supp. 2d 1132, 1136 n.8 (N.D. Cal. 2007) (noting that *Kona* rule applies equally when the court exercises pendent jurisdiction over state claims).

Federal Rule of Civil Procedure 23.1 governs derivative actions in federal court. Although it contains no express requirement that a plaintiff "retain ownership of the stock for the duration of the lawsuit," courts have inferred that requirement without exception. *See Lewis v. Chiles*, 719 F.2d 1044, 1047 & n.1 (9th Cir. 1983); *Klein*, 487 F. Supp. 2d at 1135 (N.D. Cal. 2007). Federal courts have extended "equitable standing" in some derivative actions where a plaintiff contends that he lost his stock "due to the same wrongful conduct that was the subject of the derivative suit [he was] trying to bring." *Kona Enters.*, 179 F.3d at 770.

Because he did not acknowledge that federal law governs the standing question, Mr. Edmonds did not attempt to show that he fit within any exception to the federal continuous ownership rule. On the record before the court, it would appear that he cannot do so in good faith. Mr. Edmonds' derivative action targeted options backdating, and he did not lose his Getty Images stock because of wrongful conduct related to the backdating. He lost his stock because of an unrelated merger. *See Klein*, 487 F. Supp. 2d at 1137 (applying federal merger exception). Moreover, courts applying the merger exception have required that the surviving entity in the merger participate in the fraud, *id.*, and Mr. Edmonds makes no such allegations.

Mr. Edmonds did attempt to invoke an exception to Delaware's continuous ownership rule, an exception that applies when "the merger itself is the subject of a claim

ORDER – 6

of fraud." *Lewis v. Anderson*, 477 A.2d at 1046 n.10.[3] This exception, however, is limited. It applies only when "the merger was fraudulent and done merely to eliminate derivative claims." *Lewis v. Ward*, 852 A.2d 896, 905 (Del. 2004) (stating that a plaintiff must show that the defendants entered the merger "solely to eliminate the plaintiff's derivative claims"). Mr. Edmonds' allegations do not satisfy this rule[4], as they do not state that Defendants effected the merger *for the sole purpose* of extinguishing derivative claims. It seems unlikely that he could make such allegations in good faith, because it seems unlikely, at best, that the Defendants concocted a $2.1 billion merger to avoid liability for wrongful conduct that resulted, at most, in a restatement of $27 million in earnings.

**B.    Mr. Edmonds' Class Claims Appear to Seek Only Moot Injunctive Relief.**

When news of the merger first broke, Mr. Edmonds moved quickly to assert new class claims. He added two claims, both of whose titles began "Class Action Claim for Injunctive Relief." (Dkt. # 44-2 at 127-128). In the first, he asserted that certain Defendants had breached their fiduciary duties and thereby failed to obtain the highest merger price for Getty Images. *Id.* ¶¶ 419-22. He claimed that he was "entitled to an injunction of the Merger in order to prevent such harm." *Id.* ¶ 423. In the second, he contended that certain Defendants negotiated the merger in a manner that favored their own interests, including the ability to "cash out all unvested backdated stock options." *Id.* ¶ 425. He requested "an injunction of the participation of these Getty Images options in the Merger." ¶ 427. Although Defendants initially opposed Mr. Edmonds' motion for leave to amend his complaint, they have withdrawn their opposition, and the parties have

---

[3] The court notes that Delaware's merger exception to the continuous ownership rule shares at least some characteristics of the federal merger exception. In responding to this order to show cause, the parties are encouraged to explore whether the exceptions are functionally equivalent.

[4] The court notes, moreover, that allegations of fraud in the merger would likely be subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Lewis v. Ward*, 852 A.2d at 905 (imposing state law equivalent of Rule 9(b) on allegations of merger fraud). Mr. Edmonds' allegations do not appear to meet this standard.

ORDER – 7

consented that the amended complaint should govern consideration of their proposed settlement.

Mr. Edmonds' class claims seek only injunctive relief, and his other conduct confirms that he does not seek damages on behalf of the class. Although his prayer for relief contains a catchall request for damages "in favor of the Company and/or Plaintiff and the class," *id.* at 129, nothing in the record suggest that Mr. Edmonds has pursued such damages. Indeed, the proposed settlement is premised on the notion that the pre-merger proxy disclosures Mr. Edmonds insisted upon are adequate relief for the putative class. Under the proposed settlement, class members will receive no damages. Moreover, Mr. Edmonds does not request that the court certify a class under Fed. R. Civ. P. 23(b)(3), the typical route for certifying a class whose members seek money damages. Instead, he requests certification under Rule 23(b)(2), which provides solely for injunctive or declaratory relief, "and/or" certification under Rule 23(b)(1).[5] (Dkt. # 59-2 at 2) (defining "Class"). Until the court suggested that it lacked subject matter jurisdiction, there was no indication that Mr. Edmonds sought anything other than injunctive or declaratory relief. Moreover, Mr. Edmonds' decision not to attempt to certify a Rule 23(b)(3) class means that class members will not have the choice to opt out of the class settlement. Fed. R. Civ. P. 23(c)(2) (noting that only Rule 23(b)(3) class members can opt out of a class action). The court is aware of no authority that would permit the court to extinguish class members' damage claims while declining to permit them to opt out of the settlement.

Mr. Edmonds now asserts that he also seeks rescission as a class-wide remedy, although he does not explain what he wishes to rescind. Rescission is an equitable

---

[5] Mr. Edmonds' invocation of Rule 23(b)(1) appears to be pro forma. There is scant evidence suggesting that either Rule 23(b)(1)(A) or Rule 23(b)(1)(B) even potentially applies to this action, and certainly not enough evidence to certify a class under either provision. *See Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 524-25 (W.D. Wash. 2008) (discussing applicability of Rule 23(b)(1)).

ORDER – 8

remedy, but it is not a claim for "final injunctive relief or corresponding declaratory relief," which Rule 23(b)(2) requires. The court is aware of no authority suggesting that it can use Rule 23(b)(2) to certify a rescission class. In *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576-77 (7th Cir. 2008), the court reached the opposite conclusion, declining to certify a Rule 23(b)(2) rescission class. *See also In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004). If Mr. Edmonds has viable class-wide rescission claims, he has not properly asserted them.

Mr. Edmonds' class claims seek only injunctive relief, and that relief is moot. The merger is complete, and any request for injunctive relief to stop the merger or to force pre-merger disclosures is a dead letter. The same is true of a request for injunctive relief to ensure that stock granted through backdated options cannot participate in the merger. The merger has occurred, and the disposition of Getty Images stock options is complete. Injunctive relief is no longer possible.

### D. The Standing and Mootness Concerns Identified Above Call the Court's Subject Matter Jurisdiction into Question.

To pursue a claim in federal court, a plaintiff must have standing, a limitation that arises from the command of Article III, Section 2 of the Constitution that federal courts may only address "Cases" or "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). If a plaintiff lacks constitutional standing, a federal court lacks subject matter jurisdiction to resolve her dispute. *Ar v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002). To meet the "irreducible constitutional minimum" of standing, a plaintiff must have suffered an "injury in fact," which is an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" as opposed to conjectural or hypothetical. *Defenders of Wildlife*, 504 U.S. at 560. A plaintiff's injury must be causally connected to the defendant's unlawful conduct. *Id.* Finally, it must be "likely, as opposed to merely speculative," that a favorable decision from the court will redress

ORDER – 9

the injury. *Id.* at 561. The party invoking federal jurisdiction bears the burden of establishing the Article III "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998).

Mr. Edmonds' lack of standing to continue his derivative claims deprives the court of subject matter jurisdiction. A derivative lawsuit is brought by a shareholder on behalf of a corporation. Where the corporation ceases to exist, the derivative claim disappears as well. Thus, whatever injury Getty Images might have suffered as a result of options backdating, the court can no longer redress that injury in a derivative action. *See Gollust v. Mendell*, 501 U.S. 115, 126 (1991) ("[P]laintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course.") (citation omitted). It would appear that the court no longer has jurisdiction to enter relief on the derivative claims.

As to Mr. Edmonds' claims for injunctive relief, the court lost jurisdiction over them when they became moot. When a case becomes moot, the "case or controversy" underlying it disappears, and so does the court's subject matter jurisdiction. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997).

### E. Mr. Edmonds' Efforts to Salvage Jurisdiction are Insufficient, and They Raise Concerns About the Fairness of the Settlement.

Mr. Edmonds urges several solutions to the court's jurisdictional dilemma, none of which currently satisfy the court. As to the derivative claims, he appears to implicitly assert that merely by invoking an exception to the continuous ownership rule, he preserves the court's jurisdiction. The court is aware of no authority for this proposition, and it raises grave concerns. To accept it, the court would have to turn a blind eye to the apparent lack of good faith basis to assert any exception to the continuous ownership rule. Those exceptions apply only in extraordinary circumstances that are, on the record before the court, absent here.

ORDER – 10

As to the class claims, Mr. Edmonds asserts that he could continue to seek either damages or rescission, thus preserving a live controversy for the court. As to damages, it appears to be erroneous that Mr. Edmonds could "continue" to seek damages or rescission, as he has not yet done so. As the court noted, his pleadings and moving papers (before the court raised concerns about subject matter jurisdiction) are targeted solely at obtaining pre-merger injunctive relief, not post-merger damages or rescission. Mr. Edmonds could perhaps amend his complaint (and his request for class certification) to create a viable class action for rescission and damages, but he has not done so. If he were to do so, the court is concerned that the proposed settlement of this action provides no relief for the class members' damages or rescission claims. The settlement would give class members nothing more than the injunctive relief Mr. Edmonds is currently seeking. The court queries the propriety of adding new damages or rescission claims to this action for the sole purpose of creating a live controversy. Even if that approach is proper, the court would be left to examine the fairness of a settlement that appears to grant no relief whatsoever on the new damage and rescission claims.

Mr. Edmonds' efforts to establish subject matter jurisdiction raise many concerns about the fairness of the settlement. Under the proposed settlement, class members would give up all rights to assert claims arising from the options backdating or from the merger. Indeed, as the settlement is currently structured, they would have no option to exclude themselves from the class, and thus no option to avoid the loss of their claims. In exchange, however, they would receive no relief on any of their potential claims for damages or rescission. The court acknowledges that the putative class members may have no claims for damages or rescission, but that is precisely the court's point. If they have no damage or rescission claims, then there is no dispute left, and thus no subject matter jurisdiction. If they have damage or rescission claims, then they are receiving nothing in exchange for releasing them.

ORDER – 11

The court cannot ignore the concerns it has highlighted in this order. In raising them, the court does not discount the value of the additional proxy disclosures that Mr. Edmonds obtained. Under the circumstances, those disclosures may well have been the best relief that the putative class members could have obtained. Any individual class member or former Getty Images shareholder who now sued to obtain such disclosures, however, would be turned away at the courthouse door. Under these circumstances, the settlement before the court appears to be nothing more than Mr. Edmonds' counsel receiving attorney fees and costs in exchange for a release of all non-moot claims of the putative class members. In making this observation, the court does not suggest any impropriety on anyone's behalf. It merely suggests that, to the extent class members have viable claims that are not moot, it would be fundamentally unfair to dispose of them without awarding any relief to class members.

In effect, the parties negotiated an injunctive-relief-only settlement and executed it before the merger without court approval. There is nothing inherently wrong with that choice. The difficulty arises because the parties now ask the court to approve their private settlement after the fact, and to dispose of class members' non-injunctive claims in the process.

## IV.  CONCLUSION

For the reasons stated above, the court finds that the parties must show cause why the court should not dismiss this action for lack of subject matter jurisdiction. Given the fairness concerns that the court raised, the parties may also wish to consider restructuring their proposed settlement in addition to addressing the jurisdictional issues.

The parties shall respond to this show cause order in a joint submission of no more than 24 pages by February 13, 2009. If the parties wish, they may stipulate to an extended deadline for providing the joint submission, and may also stipulate to file an

ORDER – 12

1  amended preliminary approval motion. The court directs the clerk to RENOTE
2  Plaintiffs' unopposed motion for preliminary approval (Dkt. # 59) for February 13, 2009.
3  DATED this 12th day of January, 2009.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 13